**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | ) |
| | ) Chapter 11 |
| MAXUS ENERGY CORPORATION, *et al.*,[1] | ) |
| | ) Case No. 16-11501(___) |
| Debtors. | ) |
| | ) Joint Administration Pending |

**DECLARATION OF SCOTT W. WINN IN SUPPORT OF DEBTORS'
MOTION FOR INTERIM AND FINAL ORDERS (A) APPROVING
POST-PETITION FINANCING; (B) GRANTING LIENS AND
PROVIDING SUPERPRIORITY ADMINISTRATIVE EXPENSE
CLAIMS; (C) MODIFYING THE AUTOMATIC STAY; (D) SCHEDULING
INTERIM AND FINAL HEARINGS; AND (E) GRANTING RELATED RELIEF**

I, Scott W. Winn, declare under penalty of perjury:

1. I am a senior managing director of the firm Zolfo Cooper, LLC ("Zolfo"), which has its principal office at 1114 Avenue of the Americas, New York, New York 10036. I am authorized to make this declaration on behalf of Zolfo[2] and in support of the *Debtors' Motion For Interim and Final Orders (A) Approving Post-Petition Financing; (B) Granting Liens and Providing Superpriority Administrative Expense Claims; (C) Modifying the Automatic Stay; (D) Scheduling Interim and Final Hearings; and (E) Granting Related Relief* (the "Motion").[3]

**QUALIFICATIONS**

**General**

2. Zolfo is a leading provider of corporate advisory and restructuring services. Since 1985, Zolfo's professionals have played leadership roles in more than 1,000 restructuring

---

[1] The Debtors in the above-captioned chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Maxus Energy Corporation (1531), Tierra Solutions, Inc. (0498), Maxus International Energy Company (7260), Maxus (U.S.) Exploration Company (2439), and Gateway Coal Company (7425). The address of each of the Debtors is 10333 Richmond Avenue, Suite 1050, Houston, Texas 77042.

[2] Certain disclosures herein relate to matters within the personal knowledge of other professionals at Zolfo and are based on information provided by them.

[3] Capitalized terms used but not otherwise defined herein shall the meanings ascribed to them in the Motion.

situations, helping clients successfully manage their most complex, high-stakes business challenges.

3. The current managing directors, directors, and associates of Zolfo have extensive experience working with financially troubled companies in complex financial restructurings out-of-court and in Chapter 11 proceedings. Zolfo and its principals have been involved as advisor to debtor, creditor, and equity constituencies.

4. Throughout my career and since joining Zolfo, I have advised debtors and creditors on a number of complex restructurings, including those involving the energy, restaurant, health care, retail, telecommunications, financial services, manufacturing, and other service sectors. I have recently advised or served as chief restructuring officer in several cases, including Pacific Exploration and Production, Milagro Exploration, Pacific Energy Resources Ltd., and SemGroup Energy Partners.

**Case Specific**

5. On or around April 6, 2016, Morrison & Foerster LLP ("Morrison & Foerster") retained Zolfo to assist Morrison & Foerster in its representation of the special independent committee of the board of directors (the "SIC") of Debtor Maxus Energy Corporation ("Maxus"). Specifically, Morrison & Foerster retained Zolfo to assist in the investigation of potential claims that Maxus and/or Occidental Chemical Corporation might have against YPF S.A., among others. Under my supervision, and at the direction of Morrison & Foerster LLP, Zolfo undertook an in-depth review of the financial affairs of Maxus and the other Debtors. In the process Zolfo became familiar with the Debtors' historical relationship with the Lender. Based upon the investigation, I am intimately familiar with the Debtors' history, finances, and operations.

6. On or around May 18, 2016, the Debtors retained Zolfo to assist with the bankruptcy planning process. At my direction, Zolfo evaluated the Debtors' options for obtaining financing and ultimately concluded that the only party willing to lend to the Debtors was the Lender. I, along with my colleagues, have worked with the Debtors to prepare the DIP Budget and negotiated the DIP Budget with the Lender's counsel. I believe that the DIP Facility presents the best available financing option for the Debtors.

## ANALYSIS

### I. The Debtors Were Unable to Obtain Necessary Postpetition Financing on an Unsecured Basis

7. Based on my familiarity with the credit markets and the Debtors' financial situation in the months leading up to the filing of the chapter 11 cases, including the state of the Debtors' operations and the lack of material unencumbered assets to serve as collateral for a loan, I, along with my colleagues at Zolfo, determined that the open market would not provide the Debtors with financing from a third-party lender on a secured, administrative, or unsecured basis. The Debtors have limited assets to be pledged as collateral and rely on its ultimate parent's financial support to address it obligations. I believe that, except for the DIP Facility from the Lender, another party would not be willing to provide the Debtors with any post-petition financing, let alone financing on an unsecured basis. Accordingly, in light of the Debtors' imminent liquidity needs, I believe that the DIP Facility is the only viable financing option available at this time.

### II. The Terms of the DIP Facility are Fair, Reasonable and Appropriate Under the Circumstances

8. Based on my restructuring experience and review of the Debtors' current financial situation, I believe that the terms of the DIP Agreement represent the best possible financing

package available under the circumstances. One of the most favorable elements of the DIP Facility is the Lender's agreement to provide over $30 million in financing on a subordinated and unsecured basis. The DIP Facility does not include any fees or original issue discount that would reduce the amount of funds actually available to the Debtors. Moreover, the interest rate under the DIP Facility is typical for a loan of this type and size. Finally, it is my belief that the milestones set forth in the DIP Agreement provide a sufficient timeframe during which the Debtors must formulate a plan of reorganization that incorporates the terms of the Settlement Agreement.

9. It is my belief that the terms and conditions of the DIP Facility are entirely fair under the circumstances and could not be replicated in the marketplace. In the absence of immediate access to the DIP Facility from the Lender, the Debtors will be unable to bear the costs of the chapter 11 cases or complete the contemplated reorganization.

10. In addition, I do not believe that the DIP Facility directly or indirectly deprives the Debtors or other parties in interest of possible rights and powers by restricting the services for which professionals may be paid in the chapter 11 cases. Instead, the proposed DIP Facility and the proposed Interim Order provide that the security interests and superpriority administrative expense claims granted to the Lender are subject to payment of the Carve-Out, which provides for payment of (a) all fees of the Clerk of the Court and the Office of the United States Trustee, (b) fees and expenses up to $50,000 incurred by a trustee under section 726(b) of the Bankruptcy Code, and (c) fees and expenses for any professional retained pursuant to sections 327, 328 or 1103 of the Bankruptcy Code by the Debtors and any statutory committee of unsecured creditors, subject to a cap of $1.8 million in the aggregate subsequent to the delivery of a Carve-Out Trigger Notice (as defined in the DIP Agreement).

## CONCLUSION

11. For all of the foregoing reasons, I believe that the terms of the DIP Agreement—the only source of available funding—are entirely fair and reasonable in light of the circumstances of the Debtors' chapter 11 cases, and will prevent the immediate and irreparable harm that would result from the Debtors' inability to continue its operations and pursue the proposed sale of the Debtors' assets.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Dated: June 17, 2016/s/ Scott Winn
New York, New York**Scott W. Winn**
**Senior Managing Director**
**Zolfo Cooper LLC**