**IN THE UNITED STATES BANKRUPTCY COURT**

**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re | ) | Chapter 11 |
| | ) | Case No. 16-11501 (CSS) |
| MAXUS ENERGY CORPORATION, | ) | |
| et al., | ) | Jointly Administered |
| | ) | |
| Debtors. | ) | |
| _____ | ) | |
| NEW JERSEY DEPARTMENT OF | ) | |
| ENVIRONMENTAL PROTECTION, | ) | |
| et al., | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Adv. Pro. No.: 16-51025 (CSS) |
| | ) | |
| OCCIDENTAL CHEMICAL | ) | |
| CORPORATION, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

<u>**OPINION**</u>

RICHARDS LAYTON & FINGER, P.A.
Mark D. Collins
Robert C. Maddox
Brendan J., Schlauch
One Rodney Square
920 North King Street
Wilmington, DE  19801

MORRIS, NICHOLS, ARSHT
& TUNNELL LLP
Robert J. Dehney
Curtis S. Miller
Erin R. Fay
1201 North Market Street
Wilmington, Delaware 19899

| | |
|---|---|
| -and- | -and- |
| GIBBS & BRUNS LLP<br>Kathy D. Patrick<br>1100 Louisiana Street, Suite 5300<br>Houston, TX  77002 | WEIL, GOTSHAL & MANGES LLP<br>Robert Lemons<br>767 Fifth Avenue<br>New York, New York 101053 |
| -and- | -and- |
| WHITE & CASE LLP<br>J. Christopher Shore<br>Harrison L. Denman<br>1155 Avenue of the Americas<br>New York, New York | Edward Soto<br>1395 Brickell Avenue, Suite 1200<br>Miami, Florida 33131<br><br>Counsel for Repsol, S.A. |
| -and- | |
| MUNGER, TOLLES & OLSON LLP<br>Jerome C. Roth<br>560 Mission Street, 27th Floor<br>San Francisco, CA  94105<br><br>Counsel for Occidental Chemical<br>Corporation | YOUNG CONAWAY STARGATT<br>& TAYLOR LLP<br>M. Blake Cleary<br>Joseph M. Barry<br>Justin P. Duda<br>Rodney Square<br>1000 North King Street<br>Wilmington, DE  19801 |
| | -and- |
| | MORRISON & FOERSTER LLP<br>James M. Peck<br>Lorenzo Marinuzzi<br>Jennifer L. Marines<br>Jordan A. Wishnew<br>250 West 55th Street<br>New York, New York 10019<br><br>Counsel for Debtors and<br>Debtors-in-Possession |

Dated:  November 15, 2016

Sontchi, J._____

## INTRODUCTION

Before the Court is a motion for remand of several claims in the instant adversary proceeding.  Repsol, S.A. ("Repsol"), the movant, is a named defendant in a civil action (the "NJ Environmental Litigation") that was removed to this Court by Occidental Chemical Corporation ("OCC"), another named defendant in the NJ Environmental Litigation, as well as the Debtors' largest unsecured creditor.  The instant adversary proceeding consists of the NJ Environmental Litigation, a civil action previously pending before the Superior Court of New Jersey (the "New Jersey Court") for 11 years before its removal.

The NJ Environmental Litigation arose as an action by the State of New Jersey and the Administrator of the New Jersey Spill Compensation Fund against certain defendants including OCC, Debtor Tierra Solutions, Inc. ("Tierra"), Debtor Maxus Energy Corporation ("Maxus"), Maxus's parent company YPF, Inc. ("YPF"), and YPF's former parent company, Repsol, relating to environmental liability stemming from pollution of the Passaic River in New Jersey.

The NJ Environmental Litigation, as it currently stands before this Court, can be summarized as follows: claims brought by OCC alleging YPF is the alter ego of Maxus, (the "YPF Claims"), alter-ego-based claims brought by OCC against Repsol based on different facts (the "OCC Claims"), and a Counter-Claim brought by Repsol against OCC under the New Jersey Spill Act (the "Repsol Counter-Claim").  The claims removed by OCC to this Court (the "Removed Claims") are therefore comprised of the YPF Claims,

the OCC Claims, and the Repsol Counter-Claim.  Repsol requests that this Court remand the OCC Claims and Repsol Counter-Claim (the "Claims") to the New Jersey Court.  The YPF Claims are not at issue in the motion to remand.

Repsol argues that this Court should abstain from hearing the OCC Claims and Repsol Counter-Claim and remand those proceedings to the New Jersey Court under 28 U.S.C. §§ 1334(c)(1), (c)(2), and 1452(b).  OCC argues in opposition that Repsol's motion for remand must be denied for two primary reasons: (i) the OCC Claims constitute property of the bankruptcy estate, resulting in subject matter jurisdiction over those claims and no basis upon which the Court should abstain from hearing them; and (ii) retaining jurisdiction over the Claims would inure to the benefit of the estate by enabling its efficient administration.

The Court finds that the OCC Claims are, in fact, property of the bankruptcy estate and the proper party to bring them is the Debtors.  However, the fact that the OCC Claims are property of the estate is not dispositive with respect to the questions of abstention and remand.  Because abstention is not only mandated, but could be exercised permissively by this Court as well, the Court grants Repsol's motion to remand both the OCC Claims and Repsol Counter-Claim to New Jersey Court.

## BACKGROUND

### A. Procedural Background

On June 17, 2016 (the "Petition Date"), Maxus and certain of its affiliates and subsidiaries (collectively, the "Debtors")[1] filed voluntary petitions under chapter 11 of title 11 of the Bankruptcy Code (the "Bankruptcy Code") in this Court.[2]

On June 20, 2016, OCC, the Debtors' largest unsecured creditor,[3] commenced an adversary proceeding by removing the NJ Environmental Litigation[4] that had been pending before the New Jersey Court to the United States Bankruptcy Court for the District of New Jersey (the "New Jersey Bankruptcy Court").[5]  On June 20, 2016, OCC moved in the New Jersey Bankruptcy Court to transfer the venue of the NJ Environmental Litigation to this Court.[6]  On June 28, 2016, the New Jersey Bankruptcy Court granted OCC's motion.

The NJ Environmental Litigation consists of (i) the YPF Claims, brought by OCC, alleging mainly that YPF is an alter ego of Maxus; (ii) the OCC Claims, alter-ego-based claims against Repsol, and (iii) the Repsol Counter-Claim, a counter-claim brought by

---

[1] Del. Bankr. No. 16-11501, D.I. 1.  The Maxus Debtors in the above-referenced chapter 11 cases are: Maxus Energy Corporation; Tierra Solutions, Inc.; Maxus International Energy Company; Maxus (U.S.) Exploration Company; and Gateway Coal Company.

[2] *Id*.

[3] Del. Bankr. No. 16-11501, D.I. 2, ¶ 20.

[4] *See* Statement of Facts, *infra* for a more thorough discussion of the NJ Environmental Litigation.

[5] Adv. Pro. No. 16-51025, D.I. 1. Hereafter, references to the Adversary Proceeding will follow the format of "Adv. Pro., D.I. __" and references to the main bankruptcy proceeding will be signified by the format of "D.I. __".

[6] Adv. Pro., D.I. 2 ("Gonzalez Decl.").

Repsol against OCC under the New Jersey Spill Act.  The Removed Claims are thus comprised of the YPF Claims, the OCC Claims, and the Repsol Counter-Claim.  On July 20, 2016 Repsol moved to remand the OCC Claims and Repsol Counter-Claim to the New Jersey Court.[7]  The YPF Claims are not at issue in the motion to remand.[8]

### B.  The Parties

Maxus is a Delaware corporation, and is a wholly-owned subsidiary of non-Debtor YPF Holdings, Inc. ("YPF Holdings"), with its principal place of business at 10333 Richmond Avenue, Suite 1050, Houston, Texas 77042.[9]  Maxus owns three additional Delaware corporations: Maxus International Energy Company, Maxus (US) Exploration Company, and Gateway Coal Company.[10]  Additionally, Tierra Solutions, Inc. is a Delaware corporation that is directly owned by non-Debtor CLH Holdings, Inc. (which is in turn owned by YPF Holdings).[11]  Tierra manages environmental remediation obligations owed by Maxus, principally acting on behalf of third parties such as OCC.[12]

In 1986, pursuant to a Stock Purchase Agreement ("SPA"), Maxus sold its chemicals business to OCC "in order to focus its business on the petroleum industry,

---

[7] *Id.*

[8] *See id.* at ¶ 9.

[9] D.I. 1, 1 at note 1.

[10] *See* Gonzaelz Decl.

[11] *Id.*

[12] *Id.*

becoming an active exploration and production ("E&P") company with both domestic and foreign assets."[13]

The 1986 SPA – by and among Diamond Shamrock Corporation ("DSC," which subsequently changed its name to Maxus), Occidental Petroleum Corporation, Occidental Chemical Holding Corporation, and Oxy-Diamond Alkali Corporation – provided for OCC's acquisition of Diamond Shamrock Chemicals Company ("DSCC") and its active, ongoing "Chemicals Business" from DSC.  Pursuant to the SPA, DSC sold all of the outstanding stock of DSCC to Oxy-Diamond Alkali Corporation, which then merged into OCC in November 1987, following which DSCC merged into OCC.[14]

Importantly, as part of the SPA, Maxus agreed to indemnify OCC from and against certain liabilities relating to DSCC's business or activities prior to September 4, 1986 (the "Closing Date").   The indemnification specifically included certain environmental liabilities relating to chemical plants and waste disposal sites utilized by DSCC and its affiliated business units.[15]   The aforementioned environmental liabilities, and their agreed upon indemnification, serve as one of the causes of not only the chapter 11 filings

---

[13] *Id*. at ¶ 5.

[14] *Id*. at ¶ 22.

[15] *Id*. at note 6.  "Section 9.03(a)(iii) and (iv) and the associated schedules of the SPA required Maxus to "indemnify, defend, and hold harmless" OCC, from and against, among other things, "any and all claims, demands, or suits . . . relating to, resulting from, or arising out of" certain Superfund Sites and Inactive Sites, including the Lister Site. Section 9.03(a)(viii) of the SPA also required Maxus to indemnify OCC for Historical Obligations, which generally includes "those obligations, liabilities, guarantees and contingent liabilities of the DSCC Companies, or any of them, which arose prior to or in connection with the Reorganization and which relate to any business, asset or property other than those of the Chemicals Business." (collectively, the "OCC Indemnification Obligations")."

before this Court, but also serve as the reason for the continued NJ Environmental Litigation, and the current adversary proceeding.[16]

In 1995, YPF S.A. ("YPF"), parent of YPF Holdings, utilized a leveraged buyout in order to obtain control of Maxus through the acquisition of its common stock. Following the leveraged buyout, a significant amount of Maxus' foreign assets were transferred to YPF, allowing Maxus to both develerage and focus its business more on U.S. operations.[17] Despite YPF's "global restructuring of Maxus" resulting in a positive impact on Maxus' outstanding senior debt obligations, the various transactions undertaken by YPF to achieve the aforementioned result came at a cost: Maxus' assets were significantly diminished compared to pre-merger standards, and were essentially reduced to domestic exploration and production ("E&P") working and overriding interests in oil exploration wells.[18]

In June 1999, Repsol acquired YPF, thereby granting Repsol an indirect ownership interest in Maxus. Repsol was YPF's controlling shareholder from 1999-2012.[19] However, upon expropriation of Repsol's interest by the Argentine government in 2012, both the ownership relationship between Repsol and YPF and Repsol's indirect affiliation with Maxus were severed.[20]

---

[16] *Id*. at ¶¶ 19-23, 32-38.

[17] *Id*. at ¶ 28-31.

[18] *Id*. at ¶¶ 30.

[19] *Id*. at ¶ 32, note 9.

[20] Adv. Pro., D.I. 28, ¶ 2.

### C. The Passaic River Litigation

### i. 2005 Litigation Commences

In December 2005, the State of New Jersey (the "State") filed a civil action against Maxus, Tierra, CLH Holdings, YPF, YPF Holdings, Repsol, and OCC (the "Defendants") alleging they were liable for environmental damage and pollution of the Passaic River in New Jersey – the NJ Environmental Litigation.[21]  Specifically, the State alleged that the pollution stemmed from 80 Lister Avenue in Newark, New Jersey (the "Lister Site"), a former site of DSCC, now owned by Debtor Tierra - expressly covered as part of Maxus's defense and indemnity obligation to OCC in the SPA[22] - and that the Defendants were responsible for environmental remediation of the Passaic River arising out of the Lister Site.[23]

In November 2006, the State amended its complaint to include "alter ego allegations that YPF and Repsol, the corporate parents of Maxus from 1995 to 1999 (YPF), 1999 to 2012 (YPF and Repsol), and 2012 to the present (YPF), had improperly dominated Maxus and stripped it of its assets."[24]

In June 2007, OCC filed cross-claims against Tierra, Maxus, Maxus International Energy Company, YPH, YPF Holdings, YPF International, and Repsol, asserting 12 causes of action relating to contractual indemnity claims predicated on an alter ego theory

---

[21] *Id.* at ¶ 11.

[22] Adv. Pro., D.I. 32 ("Roth Decl.") Ex. 1 at 3-5.

[23] *Id.*

[24] Adv. Pro., D.I. 30, ¶ 9.

of liability, among others.[25]    Additionally, Maxus impleaded over 250 third parties, arguing that the parties shared liability for the Passaic River pollution.[26]  On October 18, 2010, OCC filed its First Amended Cross-Claims adding YPF International as a cross-claim defendant and asserting claims against the YPF Defendants for alter ego liability.[27]

In August 2011, an order was entered by the New Jersey Court against Maxus affirming its contractual indemnification obligations, providing in part, that "Maxus Energy Corporation is required to indemnify Occidental Chemical Corporation for any costs, losses and liabilities that may be incurred by Occidental Chemical Corporation in the above-captioned action as a result of Occidental Chemical Corporation's acquisition of Diamond Shamrock Chemicals Company."[28]

The following year, in May 2012, the New Jersey Court held that "Maxus was the alter ego of Tierra, and that both entities were strictly, jointly, and severally liable under the Spill Act for any 'cleanup and removal costs' later shown to be associated with the Lister Site discharges, based solely on Tierra having acquired title to the Lister Site in 1986."[29]  The New Jersey Court then proceeded to refer the NJ Environmental Litigation to Special Master Marina Corodemus.[30]

---

[25] *See* Soto Decl., Exs. B, C, and D.

[26] *See* Soto Decl. at Exs. E, F, G, H.

[27] *See* Gonzalez Decl. at ¶ 34, note 10.  The "YPF Defendants" include YPF, YPF Holdings, YPF International, and CLH Holdings.

[28] Gonzalez Decl. at ¶ 36.

[29] *Id*. at ¶ 37.

[30]  Adv. Pro., D.I. 28, ¶ 14.

On September 26, 2012, OCC filed its Second Amended Cross-Claims Complaint, adding claims for civil conspiracy and aiding and abetting against all Cross-Claim Defendants,[31] as well as breach of fiduciary duty and aiding and abetting breach of fiduciary duty against the YPF Defendants and Repsol (the "Second Amended Cross-Claims").[32]

### ii.    The 2013 and 2014: Settlements

In December 2013, the New Jersey Court approved a settlement between the State and non-OCC defendants (the "RYM Settlement").  Pursuant to the RYM Settlement, "all claims that the State had asserted against Repsol, YPF, YPF International, YPF Holdings, CLH Holdings, Maxus, Tierra, and Maxus International were dismissed in exchange for a $130 million payment to the State."[33]  The RYM Settlement was broken down with Repsol funding $65 million, and the remaining $65 million being funded by Maxus, Tierra, and YPF.  Additionally, as part of the RYM Settlement, certain claims against OCC were released by the State.[34]

A year later, in December 2014, the New Jersey Court approved a settlement reached between the State and OCC (the "OCC Consent Judgment"), pursuant to which the State would release certain of its remaining claims against OCC in exchange for a

---

[31] See Soto Decl. at ¶ 38, note 11.  The "Cross-Claim Defendants" means, collectively, Maxus, Maxus International, Tierra, Repsol, YPF, YPF Holdings, YPF International, and CLH Holdings.

[32] See Gonzalez Decl., ¶¶ 32-38.

[33] Adv. Pro., D.I. 28 at ¶ 39.

[34] Id.

payment of $190 million to the State.  The OCC Consent Judgment resolved all remaining claims between OCC and the State.[35]

### iii.    Remaining Causes of Action

Following a move by Maxus, Repsol, and YPF to dismiss OCC's Second Amended Cross-Claims, in January 2015, the Special Master issued a report and recommendation that all of OCC's non-alter-ego claims against Repsol be dismissed, which was subsequently adopted by the New Jersey Court.[36]

After all of the parties settled with the State, the only remaining claims in the NJ Environmental Litigation were that of OCC's Second Amended Cross-Claims against the Cross-Claim Defendants,[37] and Repsol's Counter-Claims against OCC.  Repsol's Counter-Claims, asserted against OCC in February 2015, sought to recover from OCC the $65 million paid by Repsol pursuant to the RYM Settlement.  In response, and based upon previous holdings of the New Jersey Court, OCC then submitted an indemnity claim to Maxus for any amount for which OCC may be held liable to Repsol, in addition to the $190 million that OCC paid pursuant to the OCC Consent Judgment.[38]

In November 2015, the parties filed five separate summary judgment motions, and after oral argument, the Special Master issued a report in January 2016 recommending that all of the OCC Claims be dismissed.[39]  The New Jersey Court adopted the entire

---

[35] *Id*. at ¶ 40.

[36] *See* Soto Decl. Ex. R.

[37] *See id*. at ¶ 38.

[38] *See id*. at ¶ 41.

[39] Adv. Pro., D.I. 28, ¶ 17.

recommendation and granted summary judgment in Repsol's favor on the OCC Claims.[40]

Repsol was the only party to be granted summary judgment.

At the same time, Repsol proceeded against OCC with the Repsol Counter-Claim, and moved for summary judgment against OCC. The Special Master issued a Recommendation on June 14, 2016 that summary judgment be granted in favor of Repsol on the Repsol Counter-Claim.[41] The New Jersey Court had not yet entered an order, either rejecting or adopting the Recommendation with respect to the Repsol Counter-Claim, at the time the chapter 11 cases commenced.

## DISCUSSION

### A. The OCC Claims are Property of the Bankruptcy Estate

There are questions both to the ownership of the OCC Claims as well as the importance of ownership in the overall determination whether to remand.[42] Both Repsol and OCC, in their respective Memorandum, predicate their arguments, to an extent, for or against remand upon ownership of the OCC Claims, and what parties, specifically, are bringing the OCC Claims in front of this Court.

Repsol approaches its argument for remand from the position that OCC is the party bringing the OCC Claims. A significant portion of Repsol's arguments for remand flows from this point of view – specifically, that of remand based on jurisdictional

---

[40] *Id.* at ¶ 2.

[41] *Id.* at ¶ 18.

[42] There is no dispute with respect to the ownership or party bringing the Repsol Counter-Claim before this Court. As such, arguments both for and against abstention and remand are not predicated upon the Repsol Counter-Claim being property of the bankruptcy estate of the Debtors.

grounds.[43]   Alternatively, OCC and the Debtors assert that the OCC Claims constitute property of the estate, and as such, there is no basis for remand – jurisdictional or otherwise – as the Debtor is the party bringing the OCC Claims.[44]

As defined in the Bankruptcy Code, the "estate" includes "'all legal or equitable interests of the debtor in property as of the commencement of the case'…[t]his includes causes of action, which are considered property of the bankruptcy estate 'if the claim existed at the commencement of the filing and the debtor could have asserted the claim on his own behalf under state law.'"[45]   There is no doubt that the OCC Claims existed at the commencement of the filing.   Furthermore, although originally brought by OCC, the Debtors *could* have asserted the OCC Claims on their own behalf under New Jersey law. The OCC Claims clearly appear to fall within what is considered to be property of the bankruptcy estate, and for purposes of further analysis, should be viewed as such.

OCC argues that if the OCC Claims are, in fact, property of the bankruptcy estate, the Debtors would then own the OCC Claims, resulting in the Debtors' exclusive authority to pursue the OCC Claims in this Court.   Despite the fact that the OCC Claims are considered property of the bankruptcy estate, the question remains as to whether the Debtors possess exclusive standing to pursue the aforementioned claims.

---

[43] *Id*. at ¶ 24.

[44] Adv. Pro., D.I. 30, ¶ 1.

[45] *In re Emoral, Inc.*, 740 F.3d 875, 879 (3d Cir. 2014).

The Third Circuit has held that "[a]fter a company files for bankruptcy, creditors lack standing to assert claims that are property of the estate."[46]  After determining that a cause of action is in fact property of the estate, as defined by the Bankruptcy Code, the Third Circuit further held that such "[a] cause of action […] is property pursued by the bankruptcy trustee because it inures to the benefit of all creditors."[47]  Notably, when the cause of action in question is based upon an alter ego theory of liability, and is "a general one, with no particularized injury arising from it, and if that claim could be brought by any creditor of the debtor, the trustee is the proper person to assert the claim."[48]

The OCC Claims are in fact property of the estate, and as such, the proper party to bring the Claims is the Debtor, not OCC.  However, it is worth nothing that the Debtors themselves have *not yet* brought these claims – OCC is simply the party which has asserted and removed the claims in question.   While the Debtors *could* have asserted the OCC Claims on their own behalf under New Jersey law, they have only stated that the OCC Claims are property of the estate, and therefore, argue that they possess exclusive standing to assert any claims that are predicated upon alter ego conduct of their current or former parents.[49]  The Debtors' aforementioned assertion is not equal to the Debtors in fact affirmatively bringing the OCC Claims before this Court.  As such, the fact that the OCC Claims are property of the estate is not determinative in and of itself whether the

---

[46] *Id*. (internal citations omitted).

[47] *Id*.

[48] *Id*. (quoting *St. Paul Fire & Marines Ins. Co. v. PepsiCo, Inc.*, 884 F. 2d 688, 701 (2d Cir. 1989)).

[49] Adv. Pro., D.I. 31, ¶ 2.

OCC Claims should be remanded to New Jersey Court.  Even if the OCC Claims are the exclusive property of the Debtors, remand may still be appropriate.

**B.  Standards for Mandatory or Permissive Abstention**

Repsol argues that this Court should abstain from hearing the OCC Claims and Repsol Counter-Claim and remand those proceedings to the New Jersey Court under 28 U.S.C. §§ 1334(c)(1), (c)(2), and 1452(b).[50]

**i.    Mandatory Abstention Pursuant to 28 U.S.C. § 1334(c)(2)**

A federal court is required to abstain from hearing a non-core bankruptcy matter concerning state law issues under certain circumstances.  Specifically, 28 U.S.C. § 1334(c)(2) provides:

> Upon timely motion of a party in a proceeding based upon a State law claim or a State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction.

Mandatory abstention under section § 1334(c)(2) requires that *each* of six separate elements be satisfied: (1) the motion to abstain was timely brought; (2) the underlying action or proceeding pending in federal court is based upon a state law claim or cause of action; (3) the matter is non-core, such that it is related to a bankruptcy proceeding, but neither arises under title 11 nor in a case under title 11; (4) section 1334 is the sole basis

---

[50] *See* Adv. Pro., D.I. 28.

for federal jurisdiction; (5) an action is commenced in state court; and (6) the action can be timely adjudicated in state court.[51]

### a.  A Party Has Timely Submitted a Motion to Abstain

There is no disagreement with respect to this element; a motion was timely submitted.[52]

### b.  The Cause of Action is Based Upon a State Law Claim

There is no disagreement that the Claims arise under state law: "[n]o party disputed that Delaware law applied to OCC's alter ego claims, and the [New Jersey] Court applied Delaware law."[53]  Additionally, the Repsol Counter-Claim was asserted under the New Jersey Spill Act, an environmental law unique to the State of New Jersey.[54] Thus, this element of mandatory abstention is satisfied.

### c.  The Action is a Non-Core Proceeding

As a threshold matter, "[b]ankruptcy jurisdiction extends to four types of proceedings: (1) cases "under" title 11, that is, the bankruptcy petition; (2) proceedings "arising under title 11"; (3) proceedings "arising in" a bankruptcy case; and (4) proceedings "related to" a bankruptcy case."[55]  The first three categories are deemed to

---

[51] *See In re Longview Power, LLC,* 516 B.R. 282, 293-94 (Bankr. D. Del. 2014); *In re Mobile Tool Int'l,* 320 B.R. 552, 556 (Bankr. D. Del. 2005); *In re Residential Capital, LLC,* 519 B.R. 890, 902 (Bankr. S.D.N.Y. 2014).

[52] Adv. Pro., D.I. 27.

[53] Adv. Pro., D.I. 30, ¶ 12.

[54] Adv. Pro., D.I. 28, ¶ 22.

[55] *In re Exide Technologies,* 544 F. 3d 196, 205 (3d Cir. 2008).

be "core" proceedings, and the fourth category, or "related to" proceedings, are considered "non-core" proceedings.

In determining whether a claim is "core," the Third Circuit has instructed courts to consult two sources.  First, § 157(b)(2) provides an "illustrative list of 'core' proceedings."[56]  OCC argues that the Claims should fit into the catch-all provision in 28 U.S.C. § 157(b)(2)(A) ("matters concerning the administration of the estate").  Second, to the extent a proceeding does not fall under any enumerated in § 157(b)(2), a proceeding is still core

> if (1) it invokes a substantive right provided by title 11 or (2) if it is a proceeding, that by its nature, could arise only in the context of a bankruptcy case.  Each claim within the same cause of action must be analyzed claim by claim and each alone must satisfy this test in order to be considered a core proceeding.  A single cause of action may include both core and non-core claims.[57]

With respect to the first step of the core vs. non-core analysis outlined by the Third Circuit, it has been cautioned that § 157(b)(2)(A) should not be applied in a way that would render it overly-broad.  Judge Walsh held that finding environmental claims fell under § 157(b)(2)(A), even when they might ultimately impact the value of the estate, would "stretch [the meaning of the statute] too far."[58]  Additionally, "courts generally

---

[56] *Id.* at 206.

[57] *Id.*  Of course, although a claim that falls within any of the enumerated core proceedings under § 157(b)(2) provides the Bankruptcy Court with the requisite statutory authority, the Court may still lack the constitutional authority to enter judgment, resulting in such claims' removal from core bankruptcy jurisdiction.  *See Stern v. Marshall*, 564 U.S. 462, 473-502 (2011); *Wellness Int'l Network, Ltd. v. Sharif*, ––– U.S. ––––, 135 S.Ct. 1932, 1946, 191 L.Ed.2d 911 (2015).

[58] *In re NEC Holdings Corp.*, No. 10-11890 PJW, 2011 WL 1740414, at *2 (Bankr. D. Del. May 4, 2011), as amended (May 18, 2011).

find that state law causes of action brought by or on behalf of the debtor, which do not fall within the provisions of 28 U.S.C. § 157(b)(2)(B)-(N), are non-core matters."[59]

The Claims in question do not invoke a substantive right provided by title 11, nor are they part of a proceeding—even when analyzed separately from the NJ Environmental Litigation—that could only arise in the context of a bankruptcy case. As Judge Walsh aptly stated, "[t]he claims under […] the New Jersey Spill Act […] do not involve any substantive rights arising under the Bankruptcy Code. In addition, these claims could arise outside of the bankruptcy contest. Thus, even if these claims could be shoe-horned into § 157(b)(2)(A) […] they do not satisfy the two-step test for core proceedings."[60]

Alternatively, "related-to" jurisdiction exists if "the outcome of [a] proceeding could conceivably have any effect on the estate being administered in bankruptcy." This includes a proceeding "whose outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate."[61] Despite the fact that the Claims will have an impact upon the administration of the estate, and are therefore "related-to" the main proceeding, just because the Claims "may provide economic benefit to the estate does not factor into the determination of whether a claim is core or non-

---

[59] *In re Stone & Webster, Inc.*, 367 B.R. 523, 526 (Bankr. D. Del. 2007).

[60] *In re NEC Holdings Corp.* at *2.

[61] *In re Longview Power, LLC, supra.*

core."[62]   The OCC Claims and Repsol Counter-Claim should be viewed, at most, "related to" the associated chapter 11 proceeding, "but not arising under title 11 or arising in a case under title 11."[63]   Thus, the Court finds that the Claims are non-core proceedings.

d. The Bankruptcy Court Would Not Otherwise Have Jurisdiction Over the Action Outside of Section 1334

Both Repsol and OCC agree, correctly, that a requirement for mandatory abstention is that an action on the claim for which a party seeks abstention "could not have been commenced in a court of the United States absent jurisdiction [under section 1334]."[64]   The only possible avenue for federal jurisdiction other than section 1334 in this case is diversity jurisdiction under 28 U.S.C. § 1332(a).   As such, there are questions as to whether there exists complete diversity of the parties and at what point in time that diversity should be measured.

Repsol argues that there is not complete diversity, due to the fact that "OCC and Maxus are both citizens of Delaware, and Repsol is a citizen of Spain."[65]   Alternatively, OCC argues that there is complete diversity due to the fact that either 1) the Claims are property of the bankruptcy estate, and therefore only the estate has standing, or 2) to the extent that the Debtors do not have exclusive standing predicated upon their ownership

---

[62] *Id.*

[63] 28 U.S.C. § 1334(c)(2).

[64] *See id.*

[65] Adv. Pro., D.I. 28, ¶ 24.

of the Claims, there would still be complete diversity as OCC is a citizen of New York, and OCC's alter ego claim is solely against Maxus.[66]

First, it is important to note that both Repsol and OCC's diversity jurisdiction analyses are predicated upon contrasting views as to when diversity of the parties is to be determined. Repsol argues diversity is to be determined at the time the state-action was commenced.[67] Alternatively, OCC argues—without citing any authority, and solely based upon an analysis of statutory construction—that diversity analysis should be conducted based upon how the Claims are presented to the Court currently, without considering the involvement of other parties in the proceedings as a whole.[68]

OCC first asks the Court to measure diversity by viewing the Debtors as the party bringing the Claims, such that the parties to the Claims are the estates (citizens of Delaware) and Repsol (a citizen of Spain).[69] To the extent the Court would not be willing to view the Debtors as the party bringing the Claims, OCC argues that it is "in fact a citizen of New York" and "OCC's alter ego claim is against Repsol, not Repsol *and* Maxus, so, regardless, complete diversity exists and the action could have been brought in federal court absent bankruptcy jurisdiction."[70]

OCC claims that it is a citizen of New York, to the extent its citizenship is relevant to the diversity analysis, therefore achieving complete diversity. However, OCC is *also* a

---

[66] Adv. Pro., D.I. 30, ¶¶ 20-21.

[67] *See* Adv. Pro., D.I. 28, ¶ 24.; Adv. Pro., D.I. 35, ¶¶ 9-11.

[68] *See* Adv. Pro., D.I. 30, ¶¶ 20-28.

[69] *Id.*

[70] *Id.* at ¶ 21.

citizen of Texas, as "a corporation shall be deemed to be a citizen of any State by which it has been incorporated *and of the State where it has its principal place of business*."[71]  OCC, Maxus, and YPF Holdings are all citizens of Texas, which would destroy complete diversity.  In looking to the proceeding in question, it is important to note that the alter-ego-based claims were asserted against *all* cross-claim defendants, which includes Maxus and YPF Holdings.  Thus, based upon the time the state-court proceeding was both filed in the state court and removed to this Court, there is no diversity of the parties.

Repsol asserts that the determination of diversity jurisdiction is to be conducted at the time the state-court action is commenced, based upon the parties to the proceedings at that time.[72]  OCC, however, predicates its jurisdictional analysis upon an approach that would have the Court look at each claim individually, instead of at the proceeding in which the Claims arose as a whole.

Some courts have "rejected argument on removal that 'the Court must analyze diversity jurisdiction as it pertains to each claim,'"[73] and held analysis, when serving as the basis for removal, is properly conducted by looking at the removed claims both at time the state-court action was filed *and* removed.  However, regardless of the time or manner in which diversity analysis is conducted with respect to the Claims, this Court is met with the same result: there is no complete diversity of the parties.  As such, there is

---

[71] *Hertz Corp. v. Friend*, 559 U.S. 77, 80-81 (2010) (emphasis in the original).

[72] *Id.* at ¶ 24, note 5. (*Swindell-Filiaggi v. CSX Corp.*, 922 F.Supp. 2d. 514, 523 n.7 (E.D. Pa. 2013) ("[W]hen diversity of citizenship is the basis of removal, diversity must exist not only at the time the action was filed in the state court, but also at the time the case is removed to federal court." (internal citation omitted)).

[73] Adv. Pro., D.I. 35, ¶ 10.

no basis for federal court jurisdiction over the OCC Claims and Repsol Counter-Claim other than section 1334.

    e. The Action Was Already Pending in State Court at the Time of the Petition Date

    The Claims, as they stand before the Court, were already pending in state court, as previously discussed. OCC attempts to argue that the Claims were never commenced in state court by virtue of the fact that the Debtors now own the Claims and "[a]lthough Maxus is a party to the NJ Environmental Litigation, it has never pursued an alter ego claim there against Repsol."[74] Fundamentally, OCC's argument is predicated upon assumptions and logical leaps that they fail to ground in any legal argument.

    First, OCC equates the fact that the Claims are property of the bankruptcy estate with the Debtor's ownership of the Claims, which serves the basis of OCC's argument that the Debtors possess exclusive standing, and therefore, their conclusion that the Debtors had pursued alter ego claims against Repsol before, so the Claims were not "already pending in state court." Courts have found that mandatory abstention is appropriate where the *case* was commenced in a state court of appropriate jurisdiction.[75] OCC predicates its argument on hypothetical claims: although the Claims are property of the bankruptcy estate now, the Debtors have not yet asserted them. For all intents and purposes, the Claims at issue were already pending in state court at the time of the Petition Date.

---

[74] Adv. Pro., D.I. 30, ¶ 29.

[75] *See LJM2 Co-Inv., L.P.* v. *LJM2 Capital Management, L.P.*, No. CIV.A. 02-1498 GMS, 2003 WL 431684 (D. Del. Feb. 24, 2003).

f.   <u>The Claims Can be Timely Adjudicated in the New Jersey Court</u>

Given the extensive history of the NJ Environmental Litigation, there is little debate surrounding whether or not the claims can be "timely adjudicated" in New Jersey State Court.

Abstention is required as each of the six requirements for mandating abstention pursuant to 28 U.S.C. § 1334(c)(2) have been met.

**ii.    Permissive Abstention Pursuant to 28 U.S.C. § 1334(c)(1) or Equitable Remand Pursuant to 28 U.S.C. § 1452(b)[76]**

Twelve factors are considered by courts in the Third Circuit when deciding whether to abstain:

(1)    the effect or lack thereof on the efficient administration of the estate;

(2)    the extent to which state law issues predominate over bankruptcy issues;

(3)    the difficulty or unsettled nature of the applicable state law;

(4)    the presence of a related proceeding commenced in state court or other non-bankruptcy court;

(5)    the jurisdictional basis, if any, other than 28 U.S.C. § 1334(c)(1);

(6)    the degree of relatedness or remoteness of the proceeding to the main bankruptcy case;

(7)    the substance rather than form of an asserted "core" proceeding;

(8)    the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court;

---

[76] As stated by both Repsol and OCC in their respective filings, "the considerations governing abstention under section 1334(c)(1) are "identical to those relevant to equitable remand." *See* Adv. Pro., D.I. 28, ¶ 9.

(9)     the burden of the court's docket;

(10)     the likelihood that the commencement of the proceeding in a bankruptcy court involves forum shopping by one of the parties;

(11)     the existence of a right to a jury trial; and

(12)     the presence in the proceeding of nondebtor parties.[77]

Unlike with mandatory abstention, the evaluation of the above factors is not absolute: "Evaluating the[se] twelve factors is not a mathematical formula."[78]  Succinctly put by Judge Walsh: "[s]ome factors are more substantial than others, such as the effect on the administration of the estate, whether the claim involves only state law issues, and whether the proceeding is core or non-core under 28 U.S.C. § 157.[79]

### 1.  Effect on the Efficient Administration of the Estate

Repsol argues that given there exists only a "weak nexus" between the bankruptcy case and the removed proceeding, this Court's abstention and remand would not "disrupt the efficient administration of [the estate]."[80]  Additionally, Repsol asserts "where the main impact of a proceeding is to affect the size of the claims against a debtor, abstention and remand are appropriate."[81]

The fact that the Claims are property of the bankruptcy estate, and are therefore necessary to the efficient administration of the estate, does not require this Court to retain

---

[77] *In re Integrated Health Servs., Inc.*, 291 B.R. 615, 619 (Bankr. D. Del. 2003).

[78] *In re LaRoche Industries Inc.*, 312 B.R. 249, 255 (Bankr. D. Del. 2004).

[79]  *In re Fruit of the Loom, Inc.*, 407 B.R. 593, 600 (Bankr. D. Del. 2009) (*citing In re LaRoche Indus.*, 312 B.R. at 255; *In re Encompass Servs.*, 337 B.R. 864 at 878).

[80] *See* Adv. Pro., D.I. 28, ¶ 9 (*citing In re Trans World Airlines, Inc.*, 278 B.R. 42, 52 (Bankr. D. Del 2002)).

[81] Adv. Pro., D.I. 28, ¶ 39.

jurisdiction, either: "[b]ecause every claim of a debtor in possession is an asset of the estate, this is not sufficient to warrant the retention of federal jurisdiction over these claims."[82]  Although resolution of the Claims will ultimately affect the size of any indemnification claim OCC may have against Maxus or YPF, "an enhanced distribution in the bankruptcy case," is not sufficient to oppose remand.[83]

Even if OCC was somewhat persuasive in its arguments that retaining jurisdiction over the Claims will aid in administration of the estate, the potential inefficient effect on the administration of the estate by re-litigating claims that have been in court for the past five years is greater.  More so, "the Adversary Proceeding is but one of several significant claims or issues that are being pursued in these complicated chapter 11 cases.  While any one of the contested matters is substantial, it alone will not determine […] success or failure" of the administration of the estate.[84]  This factor, therefore, favors abstention and remand.

2.  The Extent to which State Law Issues Predominate

To the extent that no bankruptcy issues are invoked in an adversary proceeding, the second factor would favor abstention.[85]  OCC agrees that state law predominates with respect to the Claims currently in front of this Court,[86] but puts forth the argument that it is "by no means clear that state law will govern all of the Debtors' potential alter ego

---

[82] *See, e.g., Drexel Burnham Lambert Group, Inc. v. Vigilant Ins. Co.*, 130 B.R. 405, 408 (S.D.N.Y. 1991).

[83] *In re Integrated Health Servs., Inc.*, 291 B.R. 615, 619 (Bankr. D. Del. 2003).

[84] *Id*. at 620.

[85] *See In re Mobile Tool International*, 320 B.R. 552 (Bankr. D. Del. 2005).

[86] *See* Adv. Pro., D.I. 30, ¶¶ 54-55.

claims against Repsol."[87]  This Court's determination with respect to abstention – be it mandatory or permissive – cannot be predicated upon "hypothetical" claims.  The Third Circuit has been clear that un-asserted, hypothetical claims cannot serve as the basis for this Court to exercise jurisdiction over the instant Claims.[88]  Future claims that may ultimately shift the balance such that state law no longer predominates are hypothetical and cannot form the basis for permissive abstention analysis.  This factor, therefore, favors abstention.

3.  Difficulty of Applicable State Law

Although the Claims have arrived at this Court after years of litigation, the majority of law applied was that of Delaware.  To the extent any "unique" law was applied, the Repsol Counter-Claim is based upon the Spill Act, an environmental statute unique to New Jersey.[89]  Courts have held that remand is appropriate when "the state court is familiar with [the] litigants" and other contentious aspects of drawn out litigation,[90] and as such, this factor favors abstention.

---

[87] *Id.*

[88] *See, e.g.*, *In re Combustion Eng'g*, 391 F.3d 190 (3d Cir. 2004); *In re W.R. Grace & Co.*, 591 F.3d 164, 169 (3d Cir. 2009).

[89] *See* Adv. Pro., D.I. 28, ¶ 43.

[90] *See Argus Grp. 1700 Inc. v. Steinman*, 206 B.R. 757, 766 (E.D. Pa. 1997).

4. Related Proceedings Initiated in State Court

There can be little doubt that the Claims currently in front of this court are associated with an extensive body of related proceedings in State Court. However, courts have not frequently afforded this factor a significant amount of weight on its own.[91]

5. Independent Basis for Federal Jurisdiction

As discussed in the mandatory abstention analysis previously, there is no basis for jurisdiction over the OCC Claims and Repsol Counter-Claim other than 28 U.S.C. § 1334.

6. Relation to the Main Bankruptcy Case

There is a significant enough relationship between the Claims and the associated chapter 11 cases that this factor would favor retaining jurisdiction. The Claims are necessarily intertwined with the administration of the estate, specifically the extent to which OCC's contractually required indemnification represents a significant liability of the estate.

7. The Substance Rather than the Form of an Asserted "Core" Proceeding

Both Repsol and OCC have stated that the OCC Claims and the Repsol Counter-Claim are non-core.[92] The Third Circuit has provided a guide to aid in determining whether a claim is core or non-core.[93] First, the Court advised looking to § 157(b), which "provides an illustrative but non-exclusive list of proceedings that may be considered

---

[91] *See In re Fruit of the Loom, Inc., supra.*

[92] *See* D.I. 85 at ¶ 5; D.I. 1 at ¶ 15.

[93] *See Halper v. Halper*, 164 F.3d 830 (3d Cir.1999).

core."[94]  Next, in the event a certain proceeding is not explicitly listed, "a proceeding is core [1] if it invokes a substantive right provided by title 11 or [2] if it is a proceeding, that by its nature, could arise only in the context of a bankruptcy case."[95]

As opposed to core proceedings, non-core proceedings "include the broader universe of all proceedings that are not core proceedings but are nevertheless 'related to' a bankruptcy case."[96]  Specifically, "[w]here a claim or cause of action is filed prior to confirmation of a plan, 'the test for determining whether a civil proceeding is related to bankruptcy is whether the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy.'"[97]  It is undeniable that the outcome of the issues presented in the Claims will ultimately have an effect on the administration of the Debtors' estate.

Judge Shannon's determination of core or non-core status in *In re Longview Power* is instructive.[98]  Similar to OCC's argument for why the Claims are core, and therefore favor the Court's retention of jurisdiction, in *In re Longview*, "the Plaintiffs argue[d] that the entire Complaint [was] a core proceeding under 11 U.S.C. § 541, and that the Complaint [could] only arise in the context of a bankruptcy proceeding because it [was] necessary to determine plan feasibility."[99]  Specifically, "Plaintiffs point[ed] the Court's

---

[94] *In re Longview Power, supra.*

[95] *Halper*, 164 F.3d at 836.

[96] *Id.*

[97] *In re Longview*, 515 B.R. at 113 (*citing Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3d Cir.1984) (overruled on other grounds); *see also In re MPC Computers, LLC*, 465 B.R. 384, 392 (Bankr.D.Del.2012)).

[98] *Id.*

[99] *Id.* at 113.

attention to the assignment of proceeds of the Title Insurance Policy, and note[d] that these proceeds [would] represent the largest liquid asset in this case."[100]    Although dealing with an insurance policy, compared with that of potential alter-ego liability in the instant case, Judge Shannon agreed with the contention "the prospect that a claim may provide economic benefit to the estate does not factor into the determination of whether a claim is core or non-core."[101]

The Claims, no doubt, "may provide economic benefit to the estate,"[102] but that alone does not render the Claims core proceedings.    For the above reasons, this factor favors abstention and remand as the OCC Claims and Repsol Counter-Claim are non-core.

8.    Feasibility of Severing the State Law Claims

For the reasons discussed immediately above, the Claims can be severed from those core bankruptcy matters.    Although the Claims' resolution may ultimately impact economic and financial aspects of the Debtors' estate, that fact is insufficient to find that the Claims are core and unable to be severed from any other claims deemed to be core.[103]

---

[100] *Id.*

[101] *Id.* at 115 (*citing In re Stone & Webster*, 367 B.R. 523, 528-29 (Bankr. D. Del. 2007)).

[102] *Id.*

[103] *Id. See also In re Fruit of the Loom, Inc.*, 407 B.R. at 601 ("As there are no "core" bankruptcy issues, severance of state law claims is not necessary"); Adv. Pro., D.I. 28, ¶ 49 (*citing In re Integrated Health Servs.*, 291 B.R. at 621, "Since all the issues involved in the Adversary Proceeding are non-core, severing the counts of the Complaint need not be done.    It is possible to abstain and allow the state court to decide the entire suit with minimal disruption to the main bankruptcy estate.    This factor favors abstention.").

9.  Burden on the Court's docket

The OCC Claims and Repsol Counter-Claim come to this Court with an extensive history: the NJ Environmental Litigation has been pending for the last 11 years, and the Claims have been litigated for the past five years alone.[104]   Furthermore, in times of significant pressure to the Court's docket, abstention has been favored.[105]   This factor favors abstention.

10.  Likelihood of Forum Shopping

As detailed in the Factual Background, Repsol has, prior to the commencement of these chapter 11 proceedings, "won dismissal, summary judgment or a recommendation for summary judgment against OCC on every single claim between the parties."[106] Furthermore, during a status conference with the Court, OCC's counsel's request for the Court to take jurisdiction was predicated on its belief that "there is an error of law with regard to the construction of the alter ego issues that underlies [the State's] ruling."[107]   To the extent that OCC's request that the Court exercise jurisdiction over the Claims is based upon an attempt to "appeal" a decision made by the New Jersey Court, this would constitute inappropriate forum shopping and this factor would favor abstention.

---

[104] See Adv. Pro., D.I. 28, ¶ 52 ("The five separate summary judgment motions incorporated a full year of fact and expert discovery, including 75 depositions of fact witnesses and experts and 20 expert reports.  The docket report of the NJ Environmental Litigation contains approximately 2000 entries, a significant number of which bear on the OCC Claims and the Repsol Counter-Claim. (See D.I. 11).").

[105] See In re Fruit of the Loom, 407 B.R. at 601 ("[…] with respect to the burden on this Court's docket, I would note the obvious. We are in the midst of the most severe recession and credit crisis in decades, and the volume of major chapter 11 filings in this Court has risen to an unprecedented level. Accordingly, this factor favors abstention.").

[106] Adv. Pro., D.I. 28, ¶ 53 (citing Soto Decl. Exs. R, V, and Y).

[107] D.I. 156 at 26:13-24.

11. Existence of the Right to a Jury Trial

Although not currently the case, to the extent the New Jersey Court's summary judgment orders are overturned on appeal, a jury trial may be required.[108]  Furthermore, this Court has favored abstention when faced with the possibility of a jury trial being required in the future.[109]  Thus, this factor favors abstention.

12. The Presence of Nondebtor Parties in the Proceeding

Repsol and OCC are both nondebtors.  Even in the event the Debtors are viewed as parties to the current proceeding (although they have not yet asserted similar claims against Repsol, despite asserting that the Claims are property of the estate), abstention is still favored.[110]

As stated previously, courts have held that "evaluating the twelve factors is not a mathematical formula" yet, when the majority of factors weigh in favor of abstention, the court should do just that.  Specifically, when those factors favoring abstention are the more substantive ones, abstention is appropriate.[111]  All substantive factors in the instant permissive abstention analysis favor abstention and remand.  It is worth nothing that should Maxus, or the Debtors, collectively, assert similar alter-ego-based claims against

---

[108] *See* Adv. Pro., D.I. 28, ¶ 54 (*citing* Soto Decl. Ex. S at 37).

[109] *See In re Fruit of the Loom*, 407 B.R. at 601 ([T]hough neither party has requested a jury trial yet, breach of contract is triable by a jury. As this Court cannot conduct a jury trial, this factors favors abstention.").

[110] *See In re LaRoche Indus.*, 312 B.R. at 255 (one party to this action is a former debtor and one party is a non-debtor. Merely having once been a debtor in a bankruptcy case is insufficient to require the bankruptcy court to continue to resolve all disputes involving that party.").

[111] *Id.* at 255.

Repsol, abstention might not be warranted.  However, that particular set of circumstances is not currently before this Court: OCC – not the Debtors – is the party who removed the instant claims.

## CONCLUSION

For the foregoing reasons, Repsol's motion to remand will be granted, and this Court will abstain from hearing the OCC Claims and Repsol Counter-Claim and remand such claims to the New Jersey Court as required by 28 U.S.C. § 1334(c)(2). Additionally, equitable considerations under 28 U.S.C. § 1334(c)(1) and 1452(b) also warrant remand to the New Jersey Court.