IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| MAXUS ENERGY CORPORATION, et al.,[1] | ) | Case No. 16-11501 (CSS) |
|  | ) |  |
|  | ) | Jointly Administered |
| Debtors. | ) |  |
|  | ) | **Ref. Docket Nos. 1240, 1353, 1366, 1369, 1370** |

## ORDER AUTHORIZING SALE OF DEBTOR'S ASSETS FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES AND INTERESTS AND AUTHORIZING THE ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS

Upon the motion (the "Motion") filed by the above-captioned debtors and debtors in possession (the "Debtors") for an order authorizing the assignment and sale of MUSE's 15% non-operating working interest (the "Property") in an oil and gas field in the deepwaters of the Gulf of Mexico, known as "Neptune," as further defined and described in Exhibit A of that certain Assignment and Bill of Sale[2] (as defined below), free and clear of liens, claims, liabilities, encumbrances and interests and authorizing the assumption and assignment of certain executory contracts, pursuant to sections 105, 363, and 365 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004 and 6006; and upon the Declaration of Cody Felton in support of the Motion, dated April 19, 2017; and upon the objection to the Motion filed at Docket No. 1353 (the "Objection"); and upon the Debtors' reply in support of the Motion (the "Reply") [Docket No. 1366]; and upon the Declaration of Kenneth Goggans in support of the Motion [Docket No.

---

[1] The Debtors in the above-captioned chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Maxus Energy Corporation (1531), Tierra Solutions, Inc. (0498), Maxus International Energy Company (7260), Maxus (U.S.) Exploration Company (2439), and Gateway Coal Company (7425). The address of each of the Debtors is 10333 Richmond Avenue, Suite 1050, Houston, Texas 77042.

[2] Capitalized terms used but not otherwise defined in this Order shall have the meanings ascribed to them in the Motion or the Assignment and Bill of Sale, as applicable.

1369]; and upon the Buyer's joinder to the Reply [Docket No. 1370]; and the Court having considered the Motion; and it appearing that the relief requested is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and adequate notice of the Motion having been given and it appearing that no other notice need be given; and having heard the objections made, if any, to the relief sought in the Motion; and after due deliberation and sufficient cause therefor,

IT IS HEREBY FOUND AND DETERMINED AS FOLLOWS:[3]

A.     This Court has jurisdiction over the Motion and the sale of the Property (the "Sale") and assignment of the Assigned Contracts (as defined below) (the "Assignment") pursuant to 28 U.S.C. §§ 157 and 1334.  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (N) and (O).  Venue of this case and the Motion is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

B.     As evidenced by the affidavit of service filed with the Court, proper, timely, adequate and sufficient notice of the Motion has been provided in accordance with sections 363 and 365 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, and 6006, and the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware.  No further notice of the Motion or the Assignment and Sale is or shall be required.

C.     31 Group LLC (the "Buyer") desires to purchase the Property from Debtor Maxus (U.S.) Exploration Company ("MUSE").  Buyer and MUSE have agreed to a purchase price of $15,350,000 to purchase the Property (the "Purchase Price").  The Buyer has placed $1,500,000

---

[3] Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact when appropriate.  See Fed. R. Bankr. P. 7052.

into the client trust account of Locke Lord LLP (the "Deposit") as an example of their intent to close the acquisition of the Property.

D.    The Debtors obtained their interest in the Property, on or about May 22, 2003, pursuant to (i) the Participation Agreement by and between BHP Billiton Petroleum (Deepwater) Inc. and Maxus (U.S.) Exploration Company (the "Participation Agreement"), and (ii) various Assignment of Record Title.  Under the Participation Agreement, the Property was assigned to the Debtors subject to (i) the Participation Agreement, (ii) the Neptune Unit Operating Agreement, Atwater Valley Block 574 Unit (the "Operating Agreement"), and (iii) the Neptune Unit Agreement (as defined in the Participation Agreement).

E.    Debtors intend to assume and assign to the Buyer all obligations arising under the Participation Agreement, the Operating Agreement, and the Neptune Unit Agreement in accordance with section 365 of the Bankruptcy Code (collectively, the "Neptune Agreements").

F.    Buyer and MUSE agree that the Purchase Price will be adjusted as follows for the purposes of determining the amount of money that will paid for the Property by Buyer:

      i. downward by any proceeds from the sale of Hydrocarbons produced from or attributable to the Property or other income, including, but not limited to insurance proceeds, from the Property received by MUSE, to the extent they are attributable to the ownership of the Property on or after the Effective Date;

     ii. downward by the amount of unpaid federal, state, local, and foreign income, franchise, sales, use, ad valorem, property, severance, production, excise, stamp, documentary, real property transfer or gain, gross receipts, goods and services, registration, capital, transfer, or withholding taxes, including any interest,

penalties or additional amounts which may be imposed with respect thereto ("Taxes") relating to the period of time prior to the Effective Date;

iii. downward in an amount equal to the Cure Costs (as hereinafter defined) paid by the Buyer; and

iv. upward by the amount of disbursements made on account of operating expenses, including joint interest billings, capex, transportation, royalties, and Taxes to the extent they are attributable to the ownership of the Property on or after the Effective Date.

G.      The Assignment and Bill of Sale (the "Assignment and Bill of Sale"), a copy of which is attached as Exhibit A to this Order, was negotiated, proposed and entered into by MUSE and the Buyer in good faith, and from arm's length bargaining positions.  Neither MUSE nor the Buyer have engaged in any conduct that would cause or permit the Assignment and Bill of Sale to be avoided under section 363(n) of the Bankruptcy Code.  The Buyer is a good faith purchaser under section 363(m) of the Bankruptcy Code and, as such, is entitled to all the protections afforded thereby.

H.      No later than June 7, 2017 (unless otherwise extended by mutual agreement by the parties) and following the Court approving the Assignment and Sale and entering this Order, Buyer and MUSE will close the sale of the Property; provided, however, that a condition precedent to closing shall be the execution of a definitive agreement between the Buyer and BHP Billiton Petroleum (Deepwater) Inc. and BHP Billiton Petroleum (GOM) Inc. (together, "BHP") formalizing their agreement made on the hearing date concerning the terms of adequate assurance to be provided by the Buyer to BHP.  On the day of closing (the "Closing Date"),

Buyer will pay the Purchase Price (as adjusted) in accordance with the written wiring instructions provided to Buyer by MUSE, Buyer and MUSE will execute, deliver and properly notarize the Assignment and Bill of Sale and the requisite governmental forms of assignment for the transfer of the Property to Buyer, and Buyer and MUSE will execute and deliver any other documents or instruments reasonably requested by either Buyer or MUSE to the other party.

I.      The consideration provided by the Buyer for the Property is (i) fair and reasonable, (ii) is the highest and/or best offer for the Property, (iii) will provide a greater recovery for creditors of the estate than would be provided by any other practical alternative, and (iv) constitutes reasonably equivalent value and fair consideration under the Bankruptcy Code and applicable non-bankruptcy law.

J.      MUSE may assume and assign to Buyer the executory contracts identified and listed in the Assignment and Bill of Sale as Exhibit B thereto, including the Operating Agreement, the Participation Agreement and the Neptune Unit Agreement, (the "Assigned Contracts") and may sell and assign all oil and gas leases identified and listed in the Assignment and Bill of Sale as Exhibit A thereto.  Further, the Motion provided adequate notice to the non-debtor party(ies) to each Assigned Contract and identified the current amount each Assigned Contract is in default (the "Cure Costs"), which Cure Costs total was listed on Exhibit D to the Motion for all Assigned Contracts (as supplemented by the Debtors).  The service of such notice was good, sufficient and appropriate under the circumstances, and no further notice need be given in respect of establishing a Cure Cost for the Assigned Contracts.

K.      MUSE has demonstrated compelling circumstances and a good, sufficient, and sound business purpose and justification to enter into the Assignment and Bill of Sale, to sell the

Property pursuant thereto and to assume and assign the Assigned Contracts, and such actions are an appropriate and reasonable exercise of MUSE's business judgment. MUSE has also demonstrated compelling circumstances and a good, sufficient, and sound business purpose and justification for the Sale prior to, and outside of, a plan of reorganization.

L.      Subject to the assumption and assignment of the Neptune Agreements under section 365 of the Bankruptcy Code, on a going forward basis, MUSE may sell and assign the Property to Buyer free and clear of all liens, claims, causes of action, encumbrances, interests, pledges, security interests, rights of setoff, restrictions or limitations on use, successor liabilities, conditions, rights of first refusal, options to purchase, obligations to allow participation, agreements or rights, rights asserted in litigation matters, rights asserted in adversary proceedings in this bankruptcy proceeding, competing rights of possession, obligations to lend, matters filed of record that relate to, evidence or secure an obligation of MUSE (and all related expenses and charges) of any type under, among other things, any document, instrument, contract, affidavit, matter filed of record, cause, or law, whether known or unknown, legal or equitable, and all liens, rights of offset, replacement liens, adequate protection liens, charges, obligations, or claims granted, allowed or directed in any court order, to the fullest extent provided by applicable law ("Free and Clear") because, in each case, one or more of the standards set forth in section 363(f) of the  Bankruptcy Code has been satisfied; provided, however, that Buyer will assume all decommissioning obligations (as that term is defined in 30 CFR 250.1700(a)) and plugging and abandonment and other regulatory obligations related to the Property in accordance with any applicable law and the Assumed Liabilities (defined below). Those entitled to object that the Sale not be Free and Clear and who did not object to the Motion are deemed to have consented

01:21888903.4

7

pursuant to section 363(f)(2) of the Bankruptcy Code. Those entitled to object that the Sale not be Free and Clear and who did object fall within one or more of the other subsections of section 363(f) of the Bankruptcy Code and their interests, therefore, are adequately protected because such interests, if any, attach to the proceeds of the Sale ultimately attributable to the Property against or in which they claim or may claim an interest on any of the Property.

      M.    The transfer of the Property to the Buyer will be a legal, valid, and effective transfer, and will vest the Buyer with all rights, title and interest of MUSE in the Property, Free and Clear except to the extent set forth herein.

      N.    The Buyer is not an "insider" or an "affiliate (as those terms are respectively defined in section 101 of the Bankruptcy Code) of any of the Debtors. No common identity of current directors and officers exists between the Buyer and MUSE.

      O.    This Order constitutes a final and appealable order within the meaning of 28 U.S.C. § 158(a). Notwithstanding Bankruptcy Rule 6004(h), the parties may consummate the Sale immediately upon entry of this Order. Time is of the essence in consummating the Sale to the Buyer. Accordingly, cause exists to lift the stay to the extent necessary, as contemplated by Bankruptcy Rule 6004(h). To any extent necessary under Bankruptcy Rule 9014 and Rule 54(b) of the Federal Rules of Civil Procedure, as made applicable by Bankruptcy Rule 7054, the Court expressly finds that there is no just reason for delay in the implementation of this Order.

NOW THEREFORE, BASED UPON THE FOREGOING FINDINGS OF FACT, AND BASED UPON THE EVIDENCE PRESENTED AT THE HEARING, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT:

      1.    The Sale and Assumption Motion is granted as set forth herein.

2.      This Court's findings of fact and conclusions of law are incorporated herein by reference.

3.      All objections to the Motion or the relief requested therein that have not been withdrawn, waived, or settled, and all reservations of rights included therein, are hereby overruled on the merits or the interests of such objections have been otherwise satisfied or adequately provided for.

4.      The Assignment and Bill of Sale, and all of the terms and conditions thereof, is hereby approved.  Pursuant to section 363(b) and 365 of the Bankruptcy Code, MUSE is hereby authorized and directed to consummate the Assignment and Sale contemplated by the Assignment and Bill of Sale.

5.      MUSE is authorized and directed to execute and deliver, and is empowered to perform under, consummate and implement, the Assignment and Bill of Sale, together with all additional instruments and documents that may be reasonably necessary or desirable to implement the Assignment and Bill of Sale, and to take all further actions as may be requested by the Buyer for the purpose of assigning, transferring, granting, conveying and conferring to the Buyer or reducing to possession, the Property, or as may be necessary or appropriate to the performance of the Assignment and Bill of Sale.  MUSE is further authorized to pay all Cure Costs set forth on Exhibit B of this Order.

6.      Pursuant to sections 105(a) and 363(f) of the Bankruptcy Code, and except as otherwise provided herein, the Property shall be transferred to the Buyer subject to the assumption and assignment of the Neptune Agreements under section 365 of the Bankruptcy Code, on a going forward basis, but otherwise free and clear of Interests (as defined below) of

any kind whatsoever (with the exception of the Assumed Liabilities (defined below)), with all such Interests, including the Interest, if any, created by that certain Act of Mortgage, Security Agreement, Financing Statement, and Assignment of Production from MUSE to YPF International S.A. dated July 2, 2007, to attach to the net proceeds of the sale in the order of their priority, with the same validity, force and effect that they now have as against the Property, subject to any claims, challenges, and defenses MUSE, the Official Committee of Unsecured Creditors appointed in these cases (the "Creditors' Committee"), and any other party in interest may possess with respect thereto.

7.      The transfer of the Property to the Buyer, as provided in the Assignment and Bill of Sale, will be legal, valid and effective to the fullest extent provided herein.  For purposes of this Order, "Interests" shall mean:

- liens (including, without limitation, mechanics', materialmen's, and other consensual and non-consensual liens and statutory liens), mortgages, deeds of trust, restrictions, hypothecations, charges, indentures, loan agreements, judgment liens, instruments, leases, licenses, options, deeds of trust, security interests, conditional sale or other title retention agreements, pledges, judgments, demands, encumbrances, easements, servitudes, proxy, voting trust or agreement, and liens and security interests granted under section 361, 363 and/or 364 of the Bankruptcy Code or any orders of the Court;

- claims (as that term is defined in the Bankruptcy Code), including, without limitation, claims for reimbursement, contribution claims liabilities, counterclaims, cross-claims, third-party claims, indemnity claims, exoneration

claims, alter-ego claims, causes of action, environmental claims (including claims that may be secured or entitled to priority under the Bankruptcy Code), claims based upon or relating to any putative successor or transferee liability, claims based on or relating to taxes (including foreign, state and local taxes), claims based on or relating to labor or employment agreements, claims based on or relating to pension obligations, reclamation claims, administrative expenses (including priority and super-priority claims granted under sections 361, 363, 364, 503 and 507 of the Bankruptcy Code or any orders of the Court), and pending litigation claims;

- interests, obligations, remedies, liabilities, demands, agreements, guaranties, options, restrictions, contractual or other commitments;

- rights, including, without limitation rights of use, rights of possession, preferential rights to purchase, rights of offset, rights to use, contract rights, recoupment rights, and rights of recovery;

- judgment and/or decrees of any court or foreign domestic governmental entity (to the fullest extent permitted by law);

- judgment and/or decrees of any court or foreign or domestic governmental entities (to the fullest extent permitted by law);

- charges or restrictions of any kind or nature, including, without limitation, any restriction on the use, transfer, receipt of income or other exercise of any attributes of ownership of the Property, including, without limitation, consent of any person or entity to assign or transfer any of the Property;

- debts arising in any way in connection with any agreements, acts, or failures to act of MUSE or any of MUSE's predecessors or affiliates;

- matters of any kind and nature whatsoever, in each instance for all of the foregoing, whether known or unknown, choate or inchoate, filed or unfiled, scheduled or unscheduled, noticed or unnoticed, recorded or unrecorded, perfected or unperfected, allowed or disallowed, contingent or non-contingent, disputed or undisputed, whether arising prior to or subsequent to the commencement of these bankruptcy cases, and whether imposed by agreement, understanding, law, equity, statute or otherwise, and whether occurring or arising before, on or after the Effective Date or prior to the execution date of the Assignment and Bill of Sale; and

- any other interest within the meaning of section 363(f) of the Bankruptcy Code.

8.       For purposes of this Order, "Assumed Liabilities" shall mean all rights and obligations under the Neptune Agreements on a going forward basis that are being assigned to the Buyer pursuant to section 365 of the Bankruptcy Code.

9.       Any Interests, including, without limitation, the liens of the Debtors' existing secured lender, or any replacement thereof, and also including, without limitation, the Interest, if any, created by that certain Act of Mortgage, Security Agreement, Financing Statement, Fixture Filing, and Assignment of Production from MUSE to YPF International S.A. dated July 2, 2007, shall attach to the proceeds of the Sale in the order of their priority, with the same validity, force, priority, and effect which they previously had against the Property, subject to the rights and defenses, if any, of MUSE, its estate, the Creditors' Committee, and any other party in interest,

with respect thereto, and, subject to payments owing to EnergyNet (per paragraph 20 of this Order) and the satisfaction of all Cure Costs, the proceeds of the Sale shall be deposited in a separate and dedicated debtor-in-possession account that shall be disbursed only in accordance with any order of this Court.

10.     As set forth in this Order, after the Execution Date, all persons and entities holding Interests are hereby barred and enjoined from asserting such Interests in any manner against any of the Buyer, its affiliates, successors or assigns, and any of their respective properties, including, without limitation, the Property.  As set forth in this Order, after the Execution Date, and as of the Effective Date, no person or entity shall interfere with the Buyer's title to or use and enjoyment of the Property on account of the Interests, and the Buyer shall be free to sell or otherwise transfer the Property in its sole discretion.  All persons and entities in possession of any Property subject to the Sale are directed to surrender possession of such Property to the Buyer upon demand.

11.     This Court retains jurisdiction to enforce and implement the terms and provisions of the Assignment and Bill of Sale, all amendments thereto, any waivers and consents thereunder, and each of the agreements executed in connection therewith, including, but not limited to, retaining jurisdiction to (a) compel delivery of the Property to the Buyer, (b) compel delivery of the Purchase Price or performance of other obligations owed to MUSE, (c) resolve any disputes arising under or related to the Assignment and Bill of Sale, (d) compel delivery of any lien releases or other documentation reasonably required to implement the terms of this Order, and (e) interpret, implement, and enforce the provisions of this Order.

12.     If any person or entity that has filed financing statements, mortgages, construction

01:21888903.4

or mechanic's liens, lis pendens, or other document or agreement evidencing liens on or Interests in the Property shall not have actually delivered to MUSE prior to the Closing Date, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, or release of any Interests which the person or entity has with respect to the Property, each such person or entity is hereby directed to deliver all such statements, instruments, and releases and MUSE and the Buyer are hereby authorized to execute and file such statements, instruments, releases, and other documents on behalf of the person or entity asserting the same and the Buyer is further authored to file a copy of this Order which, upon filing, shall be conclusive evidence of the release and/or termination of any Interest. Each and every federal, state and local government unit, and each representative and clerk thereof, is hereby directed to accept any and all documents and instruments – including without limitation this Order – necessary or appropriate to give effect to the executed Assignment and Bill of Sale.

13.     Upon execution of the Assignment and Bill of Sale, this Order shall be construed and shall constitute for any and all purposes a full and complete general assignment, conveyance and transfer of MUSE's interests in the Property and/or a bill of sale or assignment transferring good and marketable, indefeasible title and interest in the Property.  This Order is and shall be effective as a determination that, upon executing the Assignment and Bill of Sale, all interests of any kind or nature whatsoever existing, except for the Assumed Liabilities and DOI Obligations (defined below), shall have been unconditionally released, discharged and terminated, and that the conveyances described herein have been effected.

14.     Notwithstanding any provision in the Motion, this Order, or the Federal Sale Documents (as defined below), any assumption, assignment and/or transfer of any interests in

contracts, leases, covenants, operating rights agreements, rights-of-use and easements, and rights–of–way or other interests or agreements with the federal government (collectively, the "Federal Leases") will be ineffective absent the consent of the United States. The Debtors and Buyer agree to comply with all applicable bankruptcy and non-bankruptcy law with respect to the Federal Leases, and nothing in any sale documents relating to the Federal Leases (the "Federal Sale Documents") shall otherwise affect any decommissioning obligations and financial assurance requirements (collectively, the "Decommissioning Obligations") under the Federal Leases as determined by the United States (as provided for under applicable law and the Federal Leases) that must be met by the Debtors or the Buyer.

15.    Further, nothing in this Order or the Federal Sale Documents shall be interpreted to set cure amounts for the Federal Leases or require the United States to novate, approve, or otherwise consent to the assignment and/or transfer of any interests in the Federal Leases.  For the avoidance of doubt, in order to obtain the consent of the United States, all Federal Leases must be assumed to the fullest extent required by law, and existing defaults under the Federal Leases, including any outstanding rents or royalties known to date plus interest, must be cured. This Order shall constitute an order assuming the Federal Leases to the fullest extent required by law.  The United States Department of Interior ("DOI") will retain and have the right to audit and/or perform any compliance review, and if appropriate, collect from the Debtors and/or the Buyer any additional monies owed by the Debtors prior to the transfer or assignment of the Federal Leases without those rights being adversely affected by these bankruptcy proceedings (collectively, the "Audit Rights," and together with Decommissioning Obligations, the "DOI Obligations").

16.    The Debtors and Buyer, if it is able to obtain consent and an interest in the Federal Leases, will retain all defenses and/or rights, other than defenses and/or rights arising from the bankruptcy, to challenge any determinations relating to the Federal Leases; provided that any such challenge, including any challenge associated with this bankruptcy proceeding, must be raised in the administrative review process leading to a final agency determination by the DOI.  The audit and/or compliance review period shall remain open for the full statute of limitations period established by the Federal Oil and Gas Royalty Simplification and Fairness Act of 1996 (30 U.S.C. § 1701, et seq.) to the extent applicable to the Federal Leases under non-bankruptcy law. Nothing in the Federal Sale Documents or this Order shall affect the United States' rights to offset or recoup any amounts due (if any) under, or relating to, any Federal Leases.  Subject to the foregoing DOI Obligations, DOI knows of no non-monetary defaults or monetary defaults of the Federal Lease except as shown on the Statement of Account with the Office of Natural Resource Revenues.

17.    This Order is and shall be binding upon and govern the acts of all persons and entities, including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, administrative agencies, governmental departments, secretaries of state, federal, state and local officials, and all others who may be required by operation of law, the duties of their office, to accept, file, register or otherwise record or release any document or instrument and each of such entities and foregoing persons is hereby directed to accept for filing any and all of the documents and instruments necessary and appropriate to consummate the transaction contemplated by the Assignment and Bill of Sale and this Order.

18.    The transactions contemplated by the Assignment and Bill of Sale are undertaken by the Buyer in good faith, as that term is used in section 363(m) of the Bankruptcy Code, and accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the Assignment and Bill of Sale shall not affect the validity of the sale to the Buyer. The Buyer is a purchaser in good faith of the Property, and the Buyer is entitled to all of the protections afforded by section 363(m) of the Bankruptcy Code.

19.    Upon the Closing Date, the terms and provisions of the Assignment and Bill of Sale and this Order shall be binding in all respects upon, and shall inure to the benefit of, MUSE's estate, MUSE, the Buyer, and their respective affiliates, successors, and assigns, and any affected third parties including, but not limited to, all persons asserting Interests in the Property and any subsequently appointed bankruptcy trustee. Upon the Closing Date, all operators of the Property and purchasers of production related to the proceeds from the Property are hereby directed to make all payments of revenue to the Buyer as of the Effective Date.

20.    MUSE is authorized to distribute to EnergyNet.com, Inc. ("EnergyNet") an amount equal to $250,921 from the proceeds of the Sale, subject to the Court's approval of EnergyNet's final fee application.

21.    The Buyer shall be responsible for all working interest, joint billing obligations, and other obligations related to the Property accruing under the Neptune Agreements or in connection with the Assumed Liabilities from the Effective Date. Subject to the terms of the Neptune Agreements, the obligations will be paid by the Buyer in the ordinary course of business.

22.    Upon execution of the Assignment and Bill of Sale, MUSE is authorized and

directed to assume and assign all of the Assigned Contracts to the Buyer in accordance with the terms of this Order. For purposes of assumption and assignment of the Assigned Contracts, other than the Neptune Agreements to the Buyer (provided for in paragraph 24 herein), the Cure Costs of the Assigned Contracts is deemed to be zero and the closing shall be deemed to (a) effect a cure of all defaults existing thereunder as of the closing and (b) compensate for any actual pecuniary loss to such non-debtor party resulting from such default. The foregoing, together with the assumption of the Assigned Contracts by the Buyer, as well as future performance by the Buyer under the definitive agreement between the Buyer and BHP, constitutes adequate assurance of future performance.

23.     Upon execution of the Assignment and Bill of Sale, the Assigned Contracts shall be deemed to have been fully assumed by MUSE and assigned to the Buyer pursuant to section 365(f) of the Bankruptcy Code, the assignment by MUSE of such Assigned Contracts shall not be a default thereunder, and the Buyer shall have no liabilities to the nondebtor parties to the Assigned Contracts other than the Buyer's obligations under the Assigned Contracts that accrue and become due and payable on or after the closing.

24.     Notwithstanding any other provision of this Order or any Notice of Assumption in respect of the Operating Agreement, the Cure Costs in respect of the Operating Agreement will be $25,969.74 which shall be paid promptly following the closing by the Buyer. For the avoidance of doubt, there shall be no other Cure Costs associated with the Operating Agreement.

25.     Upon execution of the Assignment and Bill of Sale, the Buyer shall be deemed to be substituted for MUSE as a party to the applicable Assigned Contract and MUSE shall be relieved, pursuant to section 365(k) of the Bankruptcy Code, from any further liability under the

Assigned Contracts.

26.     MUSE (or its designated successor or trust) shall cooperate with the Buyer to obtain all usual post-closing consents, including all government consents, including from the DOI.  In the event that all post-closing consents have not been obtained by Buyer pursuant to Buyer's good faith efforts to obtain such consents within one (1) year from the Execution Date, Buyer has the option but not the obligation, to reconvey the Assets to Debtor and upon Buyer exercising its option, and Debtor shall repay the Purchase Price to Buyer *less* the revenues received by Buyer on the Property *plus* the operating expenses of Buyer on the Property during the time that Buyer owned such Property.  Except for the cooperation obligations set forth above, the Debtor's obligations under this Order and the Assignment and Bill of Sale shall not extend or be assigned to any successor or any trust under any plan of liquidation of the Debtor.

27.     The Buyer is not and will not become obligated to pay any fee, commission or like payment to any broker, finder or financial advisor as a result of the consummation of the Sale based upon any arrangement made by or on behalf of MUSE or any of its predecessors.

28.     Nothing in this Order or the Assignment and Bill of Sale releases, nullifies, precludes or enjoins the enforcement of any police or regulatory liability to a governmental unit that any entity would be subject to as the owner or operator of property after the date of entry of this Order.  Nothing in this Order or the Assignment and Bill of Sale authorizes the transfer or assignment of any governmental (a) license, (b) permit, (c) registration, (d) authorization, (e) Federal Lease, or (f) approval, or the discontinuation of any obligation thereunder, without compliance with all applicable legal requirements and approvals under police or regulatory law. Nothing in this Order divests any tribunal of any jurisdiction it may have under police or

regulatory law, including DOI's administrative review process, to interpret this Order or to adjudicate any defense asserted under this Order.

29.     This order is binding upon and governs the acts of all persons and entities, including, without limitation, all county and parish clerks, filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal and local officials, and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register, or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any lease, and each of the foregoing entities is hereby directed to and shall accept for filing any and all of the documents and instruments necessary and appropriate to consummate, effectuate or reflect the Sale, including, but not limited to, the following:

a) Act of Mortgage, Security Agreement, Financing Statement, Fixture Filing and Assignment of Production from Maxus (US) Exploration Company to YPF International S.A. dated July 2, 2007 filed as follows:

| JURISDICTION | FILING INFORMATION | FILE DATE |
|---|---|---|
| Plaquemines Parish, Louisiana | MOB 482, Folio 313, Entry Number 2007-00005095 | 07/27/2007 |
| Jefferson Parish, Louisiana | MOB 4338, Folio 722, Entry Number 10744814 | 07/17/2007 |
| Lafourche Parish, Louisiana | MOB 1271, Folio 244, Entry Number 1030789 | 07/17/2007 |

b) First Supplement to Act of Mortgage, Security Agreement, Financing Statement, Fixture Filing and Assignment of Production from Maxus (US) Exploration Company in favor of YPF S.A. dated March 31, 2008, et seq. filed as follows:

| JURISDICTION | FILING INFORMATION | FILE DATE |
|---|---|---|
| Plaquemines Parish, Louisiana | MOB 499, Folio 792, Entry Number 2008-00003269 | 06/02/2008 |

01:21888903.4

| Jefferson Parish, Louisiana | MOB 4373, Folio 855, Entry Number 10831103 | 06/02/2008 |
| Lafourche Parish, Louisiana | MOB 1325, Folio 467, Entry Number 1050113 | 06/02/2008 |

30.     The failure specifically to include any particular provision of the Assignment and Bill of Sale in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the Assignment and Bill of Sale be authorized and approved in its entirety.  Likewise, all of the provisions of this Sale Order are non-severable and mutually dependent.

31.     The Assignment and Bill of Sale and any related agreements, documents or other instruments may be modified, amended or supplemented by the parties thereto and in accordance with the terms thereof, without further order of the Court, provided that any such modification, amendment or supplement does not have a material adverse effect on MUSE's estate.

32.     Except for the DOI Obligations, the Buyer shall not be liable for any claims against MUSE or any of its affiliates or predecessors, and the Buyer shall have no successor or vicarious liabilities of any kind under any theory of successor, or transferee liability, de facto merger or substantial continuity or otherwise.

33.     This Order constitutes a final and appealable order within the meaning of 28 U.S.C. § 158(a).  Notwithstanding Bankruptcy Rules 6004(h) and 6006(d), and to any extent necessary under Bankruptcy Rule 9014 and Rule 54(b) of the Federal Rules of Civil Procedure, as made applicable by Bankruptcy Rule 7054, the Court expressly finds that there is no just reason for delay in the implementation of this Order, waives any stay under Bankruptcy Rules 6004(h) and/or 6006(d), expressly directs entry of judgment as set forth herein and shall be

effective and enforceable immediately upon execution of this Court.   Notwithstanding the foregoing, a condition precedent to closing the sale of the Property shall be the execution of a definitive agreement between the Buyer and BHP formalizing their agreement made on the hearing date concerning the terms of adequate assurance to be provided by the Buyer to BHP.

Dated: _____May 16____, 2017
       Wilmington, Delaware

HONORABLE CHRISTOPHER S. SONTCHI
UNITED STATES BANKRUPTCY JUDGE