## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| MAXUS ENERGY CORPORATION, *et al.*,[1] | ) | Case No. 16-11501 (CSS) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |
| | ) | Ref. Docket Nos. 1231, 1237, 1337, 1429 |

### ORDER CONFIRMING AMENDED CHAPTER 11 PLAN OF LIQUIDATION PROPOSED BY MAXUS ENERGY CORPORATION, ET AL. AND THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE

Maxus Energy Corporation and certain of its affiliates, as debtors and debtors-in-possession (collectively, the "Debtors"), having filed with the Official Committee of Unsecured Creditors (the "Creditors' Committee," and together with the Debtors, the "Plan Proponents") (a) the *Amended Chapter 11 Plan of Liquidation Proposed by Maxus Energy Corporation, et al. and the Official Committee of Unsecured Creditors* [Docket No. 1231] (with all modifications, amendments or supplements, the "Plan"),[2] and (b) the documents comprising the Plan Supplement, as filed in substantially final form, and as may be modified, amended, or supplemented prior to the Effective Date [Docket No. 1337]; and this Court having entered that certain *Order (A) Approving Disclosure Statement; (B) Establishing Voting Record Date, Voting Deadline, and Other Dates; (C) Approving Procedures for Soliciting, Receiving, and Tabulating Votes on Plan and for Filing Objections to Plan; (D) Approving Manner and Forms of Notice and Other Related Documents; and (E) Granting Related Relief* [Docket No. 1237] (the

---

[1] The Debtors in the above-captioned chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Maxus Energy Corporation (1531), Tierra Solutions, Inc. (0498), Maxus International Energy Company (7260), Maxus (U.S.) Exploration Company (2439), and Gateway Coal Company (7425). The address of each of the Debtors is 10333 Richmond Avenue, Suite 1050, Houston, Texas 77042.

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Plan, which is attached hereto as Exhibit A.

"Solicitation Procedures Order") establishing, among other things, certain solicitation and voting tabulation procedures associated with the Plan; and true and correct copies of the Plan (including the Plan Supplement) being attached hereto collectively as Exhibit A; and the Court having conducted an evidentiary hearing to consider confirmation of the Plan commencing on May 22, 2017 (the "Confirmation Hearing"); and the Court having considered: (a) the declarations (and attached exhibits) offered in support of Confirmation, including (i) the *Declaration of Scott W. Winn In Support of Confirmation of Amended Chapter 11 Plan of Liquidation Proposed by Maxus Energy Corporation, et al., And The Official Committee Of Unsecured Creditors* [Docket No. 1434] (the "Winn Declaration"), and (ii) the *Declaration of James Daloia of Prime Clerk LLC Regarding the Solicitation of Votes and Tabulation of Ballots Cast on the Amended Chapter 11 Plan of Liquidation Proposed by Maxus Energy Corporation, et al. And the Official Committee of Unsecured Creditors* [Docket No. 1429] (the "Voting Declaration") (together with the Winn Declaration, the "Declarations"); (b) the arguments of counsel and all evidence proffered or adduced at the Confirmation Hearing; (c) the objections to confirmation of the Plan to the extent not resolved or withdrawn prior to or at the Confirmation Hearing (collectively, the "Objections"); and (d) the additional filings made by the Plan Proponents in support of the Plan, including (i) the *Plan Proponents' Memorandum of Law In Support of Confirmation of Amended Chapter 11 Plan of Liquidation Proposed by Maxus Energy Corporation, et al. And The Official Committee of Unsecured Creditors And Omnibus Reply To Objections Thereto* [Docket No. 1433] (the "Confirmation Memorandum"), (ii) the Plan-related affidavits of service filed by Prime Clerk, LLC ("Prime Clerk"), the Debtors' claims, noticing, balloting, and solicitation agent in the Chapter 11 Cases (collectively, the "Prime Clerk Service Affidavits"); (iii) the *Notice of Amendment to Plan Supplement to the Amended Chapter 11 Plan of Liquidation*

*Proposed by Maxus Energy Corporation, et al. and the Official Committee of Unsecured Creditors* [Docket No. 1436] (the "Plan Supplement Amendment") and (iv) the *Notice Of Filing of Identities of the Liquidating Trustee, the ERRT Trustee, the PT Trustee, and the Members of the Liquidating Trust Oversight Committee Pursuant to the Amended Chapter 11 Plan of Liquidation Proposed by Maxus Energy Corporation, et al. and the Official Committee of Unsecured Creditors* [Docket No. 1444]; and the Court being familiar with the Plan and the relevant facts and circumstances concerning the Chapter 11 Cases; and the Court having taken judicial notice of the entire docket of the Chapter 11 Cases, including all pleadings and other documents filed and all orders entered in the Chapter 11 Cases; and the Court having found that due and proper notice has been given with respect to the Confirmation Hearing and the deadlines and procedures for voting on the Plan and asserting objections to the Plan consistent with the Solicitation Procedures Order; and the appearance of all interested parties having been duly noted in the record of the Confirmation Hearing; and the Court having overruled all Objections that were not otherwise resolved or withdrawn; and upon the record of the Confirmation Hearing, and after due deliberation thereon, and sufficient cause appearing therefor;

IT IS HEREBY FOUND AND CONCLUDED, that

**A.    Jurisdiction and Venue**

A.    The Court has jurisdiction over this matter and the Chapter 11 Cases pursuant to 28 U.S.C. § 1334.  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

B.    Confirmation of the Plan is a core proceeding pursuant to 28 U.S.C. § 1 57(b)(2), and this Court has jurisdiction to enter a Final Order with respect thereto.

C.    The Debtors are proper debtors under section 109 of the Bankruptcy Code, and the Plan Proponents are proper proponents of the Plan under section 1121(a) of the Bankruptcy Code.

D.     Each of the conditions precedent to the entry of this Order has been satisfied or waived in accordance with Article XII of the Plan.

**B.     Standards for Confirmation Under Section 1129 of the Bankruptcy Code**

E.     The evidentiary record at the Confirmation Hearing, the Declarations, the contents of the Plan, the Prime Clerk Service Affidavits, the Confirmation Memorandum, and the Court's judicial notice of the complete record of the Chapter 11 Cases support the findings of fact and conclusions of law set forth in the following paragraphs.

F.     <u>Section 1129(a)(1)</u>.  The Plan complies with each applicable provision of the Bankruptcy Code.  In particular, the Plan complies with the requirements of sections 1122 and 1123 of the Bankruptcy Code as follows:

1.     In accordance with section 1122(a) of the Bankruptcy Code, (a) Article III of the Plan classifies Claims and Equity Interests into eight separate Classes reflecting the differing characteristics of those Claims and Equity Interests between Classes and the distinct legal rights of the Holders of those Claims and Equity Interests in the separate Classes; (b) the Claims and Equity Interests within each Class are substantially similar to the other Claims or Equity Interests within the same Class; and (c) with respect to the Certain Environmental Claims for the Diamond Alkali Site in Class 5, a rational basis and reasonable grounds exist for the separate classification of such Claims from those Claims in Class 4 because they have distinct legal rights against the Debtors not shared by Environmental Claims in Class 4.

2.     In accordance with section 1123(a)(1) of the Bankruptcy Code, Article III of the Plan properly designates all Claims and Equity Interests, if any, that require classification.

3.     In accordance with section 1123(a)(2) of the Bankruptcy Code, (a) Article III of the Plan properly identifies and describes that Classes 1, 2 and 3 are not impaired under the Plan, and (b) Article II of the Plan properly identifies and describes that any DIP Claim, Administrative Claims, Professional Claims, and Priority Tax Claims, which are not classified under the Plan, also are not impaired under the Plan.

4.     In accordance with section 1123(a)(3) of the Bankruptcy Code, Article III of the Plan properly identifies and describes that Classes 4, 5, 6, 7 and 8

are impaired under the Plan and specifies the proposed treatment for such Classes.

5.      In accordance with section 1123(a)(4) of the Bankruptcy Code, Article III of the Plan provides the same treatment for each Claim or Equity Interest within a particular Class unless the Holder of a particular Claim or Equity Interest has agreed to a less favorable treatment with respect to such Claim or Equity Interest. With respect to Class 4, an election by an Electing GUC Holder under Class 4 to receive a Pro Rata Share of the GUC Cash Pool represents a less favorable treatment with respect to such Claim when compared to the value of the Class A Beneficial Interests such Holder would receive if the election had not been made.

6.      In accordance with section 1123(a)(5) of the Bankruptcy Code, the Plan provides adequate means for its implementation, including, without limitation, (a) sources of consideration for distributions under the Plan for Classes 3 and 4; (b) a source of funding to pay the DIP Claim, Administrative Claims, Professional Claims, and Priority Tax Claims; (c) the formation of the Liquidating Trust to administer the Liquidating Trust Assets, resolve Disputed Claims in Classes 3, 4, and 5, and make distributions to Holders of Allowed Claims; (d) the formation of the Property Trust to hold title to the PT Properties (if necessary) until such properties are remediated or sold; (e) the formation of the ERRT for the sole purpose of distributing funds pursuant to the ERRT Waterfall; (f) the creation of reserves for the payment of specified Claims; (g) the cancellation of the Debtors' obligations under any certificate, share, note, bond, indenture, purchase right, or other instrument or document; (h) the wind-down and dissolution of the Debtors' Estates; and (i) the closing the Chapter 11 Cases (see generally Plan Articles IV, VI, VII, VIII, IX and X).

7.      Section 1123(a)(6) of the Bankruptcy Code is not applicable in these cases because Article IV.A of the Plan provides for the cancellation of the Debtors' Equity Interests on the Effective Date, and no new shares will be issued pursuant to the Plan.

8.      Section 1123(a)(7) of the Bankruptcy Code is satisfied because on the Effective Date, (a) the persons acting as managers and officers of the Debtors shall be deemed to have resigned; (b) the Liquidating Trustee, the PT Trustee, and the ERRT Trustee shall have duties imposed under applicable law, in each case, solely with respect to the matters described in, and pursuant to the terms of, the Plan, the Liquidating Trust Agreement, the PT Agreement, and the ERRT Agreement; (c) the selection and appointment of (i) the Liquidating Trustee, (ii) the PT Trustee, (iii) the ERRT Trustee; and (d) the selection and appointment of the Liquidating Trust Oversight Committee will be made in accordance

with the Plan and the Liquidating Trust Agreement, the Property Trust Agreement and the ERRT Agreement, as applicable.

9.      Section 1123(a)(8) of the Bankruptcy Code is not applicable in these cases because the Debtors are not "individuals."

10.     The following provisions of the Plan comply with the discretionary provisions of section 1123(b) of the Bankruptcy Code: (a) Article III of the Plan impairs or leaves unimpaired, as the case may be, each Class of Claims and Equity Interests; (b) Article V of the Plan provides that each Executory Contract and Unexpired Lease shall be deemed automatically rejected pursuant to sections 365 and 1123 of the Bankruptcy Code as of the Effective Date, unless any such Executory Contract or Unexpired Lease: (i) is expressly identified on the Assumption Schedule, (ii) has been previously assumed by the Debtors by Final Order or has been assumed by the Debtors by order of the Bankruptcy Court as of the Effective Date, which order becomes a Final Order after the Effective Date, (iii) is the subject of a motion to assume pending as of the Effective Date, or (iv) is otherwise assumed pursuant to the Plan; (c) Article VII of the Plan establishes procedures for distributions on account of Allowed Claims; (d) Article X of the Plan establishes procedures for resolving Disputed Claims; (e) Article XI of the Plan (i) contains provisions implementing certain releases, exculpations, and injunctions, and (ii) provides for the settlement of certain claims, including (x) the OCC, CPG, and United States settlements, (y) the State of Wisconsin and the State of Ohio settlements, and (z) the Gibbons Group Allowed Class 4 RI/FS Claims settlement; and (f) Article XIV of the Plan provides for the retention of jurisdiction by the Bankruptcy Court over certain matters after the Effective Date.

11.     Section 1123(c) of the Bankruptcy Code is not applicable in these cases because the Debtors are not "individuals."

12.     In accordance with section 1123(d) of the Bankruptcy Code, Article V.B of the Plan provides for the payment of any Cure Claims associated with the assumption, or assumption and assignment, of an Executory Contract or Unexpired Lease pursuant to section 365 of the Bankruptcy Code.

13.     The Plan is dated and identifies its proponents in accordance with Bankruptcy Rule 3016(a).

G.      <u>Section 1129(a)(2)</u>.   The Debtors have complied with all applicable

provisions of the Bankruptcy Code with respect to the Plan and the solicitation of acceptances or

rejections thereof. In particular, the Plan complies with the requirements of sections 1125 and 1126 of the Bankruptcy Code as follows:

1.    In compliance with the Solicitation Procedures Order, on or before April 21, 2017, the Debtors, through Prime Clerk, caused copies of the following materials to be transmitted to the known Holders of Claims in Classes that were entitled to vote to accept or reject the Plan (*i.e.*, Claims in Classes 4 and 5):

- A cover letter from the Creditors' Committee;

- The Solicitation Procedures Order, without attachments;

- The notice of the Confirmation Hearing (the "Confirmation Hearing Notice");

- A USB Flash Drive containing the Disclosure Statement, with the Plan as an exhibit thereto; and

- A Ballot customized for each Holder and a postage-prepaid return envelope (collectively with the materials described in the preceding bullets, the "Solicitation Package").

(*See* Affidavit of Service [Docket No. 1307])

2.    In compliance with the Solicitation Procedures Order, on or before April 21, 2017, the Debtors, through Prime Clerk, caused copies of the following materials to be transmitted to the known Holders of Claims that were not entitled to vote to accept or reject the Plan (*i.e.*, unclassified Claims and Claims in Classes 1, 2, 3, 6, 7 and 8) and to the Holders of Claims that are the subject of a Claims objection:

- The Confirmation Hearing Notice;

- The Notice of Non-Voting Status: Deemed to Accept, the Notice of Non-Voting Status: Deemed to Reject, or the Notice of Non-Voting Status: Disputed Claims, as applicable; and

- Instructions on how to obtain copies of the documents contained in the Solicitation Package.

(*See* Affidavit of Service [Docket No. 1307])

3.    In compliance with the Solicitation Procedures Order, on April 27, 2017 the Debtors published the Confirmation Hearing Notice in *The New York Times*. (*See* Affidavit of Service [Docket No. 1313])

4.      In addition, in compliance with the Solicitation Procedures Order, copies of the Solicitation Procedures Order, the Plan, and the Disclosure Statement have been available upon request from the Debtors' counsel and, free of charge, at https://cases.primeclerk.com/maxus (the "Prime Clerk Website"), and the foregoing was set forth in the Confirmation Hearing Notice.

5.      On May 2, 2017, the Debtors filed the Plan Supplement [Docket No. 1328] and, through Prime Clerk, served the Plan Supplement and made the Plan Supplement available on the Prime Clerk Website. (*See* Affidavit of Service [Docket No. 1378]).

6.      The Confirmation Hearing Notice provided due and proper notice of the Confirmation Hearing and all relevant dates, deadlines, procedures and other information relating to the Plan and/or the solicitation of votes thereon, including, without limitation, the Voting Deadline and the Confirmation Objection Deadline (as such terms are defined in the Confirmation Hearing Notice), and the time, date and place of the Confirmation Hearing.

7.      Based on the foregoing and the Solicitation Procedures Order, all persons entitled to receive notice of the Disclosure Statement, the Plan, and the Confirmation Hearing have received proper, timely and adequate notice in accordance with the Solicitation Procedures Order, the applicable provisions of the Bankruptcy Code and the Bankruptcy Rules, and have had an opportunity to appear and be heard with respect thereto. No other or further notice is required.

8.      Based on the foregoing, the Plan Proponents solicited votes with respect to the Plan in good faith and in a manner consistent with the Bankruptcy Code, the Bankruptcy Rules, and the Solicitation Procedures Order.

9.      Based upon the procedures approved in the Solicitation Procedures Order, Prime Clerk has made a determination of the validity of, and tabulation with respect to, all acceptances and rejections of the Plan by Holders of Claims entitled to vote on the Plan, including the amount and number of accepting and rejecting Claims in Classes 4 and 5 under the Plan. (*See* Voting Declaration at ¶¶ 7-8.)

10.     Exhibit A to the Voting Declaration sets forth the tabulation of votes and demonstrates that such tabulation was conducted in accordance with the Bankruptcy Code, the Bankruptcy Rules, and the Solicitation Procedures Order. (*See* Voting Declaration at ¶¶ 9.)

H.      Section 1129(a)(3). The Plan accomplishes the goals promoted by section

1129(a)(3) of the Bankruptcy Code because it has been proposed by the Plan Proponents in good

faith and in the belief that the Plan allows creditors to realize the highest possible recoveries under the circumstances of these Chapter 11 Cases. The Plan is the culmination of extensive good faith, arms' length negotiations between and among the Debtors and various case constituencies, including the Creditors' Committee, the United States and certain of its agencies, OCC, CPG, the States of Wisconsin and Ohio, the Gibbons Group, and many other parties, and thereby reflects substantial input from the principal constituencies having an interest in these Chapter 11 Cases. The Plan is premised upon repayment of the DIP Claim in accordance with Article II.A of the Plan and (a) the creation of a Liquidating Trust, which will pay from Available Cash Allowed Administrative Claims, Professional Claims, and Priority Tax Claims (to the extent not already paid in full prior to the Effective Date), and Claims in Classes 1 through 5 (including through the funding of the ERRT pursuant to the Liquidating Trust Waterfall), (b) the creation of the Property Trust, which will hold title to the Debtors' real property (if such real property is not otherwise sold), and (c) the creation of the ERRT, which will be responsible for distributing funds pursuant to the ERRT Waterfall. The Plan Proponents proposed the Plan with the purpose of providing for the creation of a mechanism to resolve all Claims asserted against the Debtors, realizing upon various litigation claims, and distributing value to creditors. In crafting and negotiating the terms of the Plan, and at all times during the Chapter 11 Cases, the Plan Proponents (a) conducted themselves honestly, with good intentions, and (b) upheld their fiduciary duties to stakeholders. The Plan enjoys significant support by the Debtors' stakeholders, as evidenced by the result of the votes of creditors in Classes 4 and 5 who overwhelmingly accepted the Plan. In so finding, the Court has considered the totality of the circumstances in the Chapter 11 Cases. In addition, the overwhelming support of the Debtors'

01:21931081.1

constituencies reflects the overall fairness of the Plan and support the finding that the Plan has been proposed in good faith and for proper purposes.

I.      Finally, as described in greater detail below, the Plan's release, exculpation, and injunction provisions are warranted, necessary and appropriate, and are supported by sufficient consent and consideration under the circumstances of the Chapter 11 Cases as a whole and are consistent with sections 105, 1123(b)(6), and 1129 of the Bankruptcy Code and applicable law in this Circuit.

J.      Section 1129(a)(4).   Article II of the Plan satisfies the requirements of section 1129(a)(4) of the Bankruptcy Code.  Payments made or to be made by the Debtors for services rendered or expenses incurred in connection with the Chapter 11 Cases prior to the Effective Date, including requests for payment of Professional Claims, will be paid only after allowance of such Claims by the Court to the extent not previously approved and paid in accordance with existing Orders from the Court.  The Court will retain jurisdiction after the Effective Date with respect to allowance of Professional Claims and reimbursement of expenses incurred up to and through the Effective Date in accordance with Article II of the Plan.

K.      Section 1129(a)(5).   The Plan Proponents have disclosed the identity, qualifications, and affiliations of the members of the Liquidating Trust Oversight Committee, the Liquidating Trustee, the PT Trustee, and the ERRT Trustee in accordance with section 1129(a)(5) of the Bankruptcy Code.  The governance of the Liquidating Trust, including with respect to the Liquidating Trustee and the Liquidating Trust Oversight Committee, is set forth in Article VI.G of the Plan.  The governance of the Property Trust is set forth in Article VIII.A. of the Plan.  The governance of the ERRT is set forth in Article IX.A of the Plan.  The appointment

of the Liquidating Trustee, the PT Trustee, and the ERRT Trustee, none of which is an insider, is consistent with the interests of creditors and with public policy.

L.    <u>Section 1129(a)(6)</u>.  The Plan does not provide for any rate changes by the Debtors that would be subject to approval of any governmental regulatory commission. Accordingly, section 1129(a)(6) of the Bankruptcy Code is inapplicable in these Chapter 11 Cases.

M.    <u>Section 1129(a)(7)</u>.  The Plan satisfies the requirements of section 1129(a)(7) of the Bankruptcy Code, which is often known as the "best interests test."  The Liquidation Analysis (attached to the Disclosure Statement as <u>Exhibit D</u>), including the methodology used and assumptions made therein, (a) is persuasive and credible as of the dates such evidence was prepared, presented, or proffered; (b) has not been controverted by other persuasive evidence; (c) is based upon reasonable and sound assumptions; and (d) provides a reasonable estimate of the liquidation value of the Debtors' Estates upon a hypothetical conversion of the Chapter 11 Cases to cases under chapter 7 of the Bankruptcy Code.  Each holder of an impaired Claim or Equity Interest that has not accepted or is deemed not to have accepted the Plan will, on account of such Claim or Equity Interest, receive or retain property under the Plan having a value, as of the Effective Date, that is not less than the amount that such holder would receive or retain if the Debtors were liquidated under chapter 7 of the Bankruptcy Code on the Effective Date.  The Plan Proponents have demonstrated that the Plan is in the best interests of the Debtors' creditors.

N.    <u>Section 1129(a)(8)</u>.  Classes 1, 2, and 3 under Article III of the Plan are presumed to accept the Plan because such Classes are unimpaired.  Classes 6 (Intercompany Claims), 7 (YPF Tranche B Claim), and 8 (Equity Interests) are deemed to have rejected the

01:21931081.1

Plan. As reflected in the Voting Report, the Plan has been accepted by creditors holding in excess of two-thirds in amount and one-half in number of Claims that voted in each of Classes 4 and 5. Although Classes 6, 7, and 8 are deemed to reject the Plan, the Plan is confirmable because it satisfies section 1129(b)(1) of the Bankruptcy Code with respect to such non-accepting Classes of Claims and Equity Interests.

O.    Section 1129(a)(9). Article II of the Plan provides that, unless a particular Holder has agreed to different treatment of such claim, Holders of an Allowed DIP Claim, Allowed Administrative Claims, Allowed Professional Claims, Allowed Priority Tax Claims, and U.S. Trustees Fees will be paid in full in Cash on the Effective Date or as soon as reasonably practicable thereafter (to the extent not already paid in full prior to the Effective Date) in full satisfaction of their Claims, in accordance with the requirements of section 1129(a)(9) of the Bankruptcy Code.

P.    Section 1129(a)(10). The Plan has been accepted by Classes 4 and 5, which are Impaired Classes, without including the acceptance of the Plan by any insider. Accordingly, there is at least one impaired accepting Class of Claims, thus satisfying section 1129(a)(10) of the Bankruptcy Code.

Q.    Section 1129(a)(11). The Plan is feasible and complies with section 1129(a)(11) of the Bankruptcy Code. The evidence proffered or adduced at the Confirmation Hearing establishes that the proceeds of the Liquidating Trust Facility, the Liquidating Trust Promissory Note, and the assets to be transferred to the Liquidating Trust, the Property Trust, and the ERRT will be sufficient to enable the Liquidating Trustee, the PT Trustee, and the ERRT Trustee to perform the duties and functions outlined under the Plan and to satisfy post-Effective Date obligations. Furthermore, reasonable, persuasive, and credible evidence proffered or

01:21931081.1

adduced at or prior to the Confirmation Hearing establishes that the Plan is feasible.  Finally, because the Plan contemplates a liquidation, confirmation of the Plan is not likely to be followed by the need for further financial reorganization.

      R.     <u>Section 1129(a)(12)</u>.  The Plan satisfies the requirements of section 1129(a)(12) of the Bankruptcy Code.  All U.S. Trustee Fees that are due prior to the Effective Date shall be paid in full by the Debtors or the Liquidating Trust, as applicable, on the Effective Date or as soon as reasonably practicable thereafter.  From and after the Effective Date, the Liquidating Trust shall pay all U.S. Trustee Fees in Cash for each quarter (including any fraction thereof) until the Chapter 11 Cases are closed.

      S.     <u>Section 1129(a)(13)</u>.  The Plan satisfies section 1129(a)(13) of the Bankruptcy Code because on May 10, 2017, this Court entered that certain *Stipulation And Agreed Order Between The Debtors And The Official Committee of Retirees Regarding Modification of Retiree Benefits Pursuant To Section 1114(e)(1)(B) Of The Bankruptcy Code* [Docket No. 1398], authorizing the termination of Retiree Benefits under section 1114(e)(1)(b) of the Bankruptcy Code, which terminated the Debtors' obligations to provide Retiree Benefits after the Effective Date.

      T.     <u>Sections 1129(a)(14), (15), and (16)</u>.  Sections 1129(a)(14), 1129(a)(15), and 1129(a)(16) of the Bankruptcy Code apply to individuals or nonprofit entities and are not applicable in these Chapter 11 Cases.

      U.     <u>Section 1129(b)</u>.  Notwithstanding that Classes 6, 7, and 8 are deemed to reject the Plan, the Plan may be confirmed pursuant to section 1129(b) of the Bankruptcy Code.  Two impaired Classes of Claims (Classes 4 and 5) voted to accept the Plan.  The Plan does not "discriminate unfairly" with respect to Classes 6, 7, and 8 (the Classes that are impaired and

deemed not to have accepted the Plan). Class 6 contains intercompany claims that will be eliminated as a result of the substantive consolidation proposed under the Plan. Class 7 contains Claims that are subordinated to Claims in Classes 1 through 5 and are subject to "cram down" under section 1129(b) pursuant to that *Final Order Pursuant To Section 362, 363 And 364 Of The Bankruptcy Code And Rule 4001 Of The Federal Rules Of Bankruptcy Procedure (A) Authorizing The Debtors To Obtain Postpetition Financing And (B) Granting Related Relief* [Docket. No. 268]. Class 8 contains Equity Interests that are legally and factually distinct from the Claims in other Classes and are properly classified in a separate Class. The plan is "fair and equitable" under section 1129(b) of the Bankruptcy Code because (a) no class of Claims or Equity Interests of similar legal rights is receiving different treatment under the Plan, and (b) there are no Holders of Claims or Equity Interests that are junior to the Classes 6, 7, or 8 that will receive any recovery under the Plan on account of such junior Claims or Equity Interests. Accordingly, the Plan does not violate the absolute priority rule, does not unfairly discriminate, and is fair and equitable with respect to Classes 6, 7, and 8. The Plan satisfies section 1129(b) of the Bankruptcy Code and may be confirmed even though section 1129(a)(8) of the Bankruptcy Code is not satisfied. Upon entry of this Order and the occurrence of the Effective Date, the Plan shall be binding upon all Holders of Claims and Equity Interests, regardless of whether they accepted or rejected the Plan, or whether they are presumed to accept or deemed to reject the Plan.

V.     Section 1129(c). The Plan is the only plan on file in these Chapter 11 Cases, and it is the only plan that has been found to satisfy the requirements of subsections (a) and (b) of section 1129 of the Bankruptcy Code. Accordingly, the requirements of section 1129(c) of the Bankruptcy Code have been satisfied.

01:21931081.1

W.    <u>Section 1129(d)</u>.  No party in interest, including, but not limited to, any Governmental Unit, has requested that the Court deny confirmation of the Plan on grounds that the principal purpose of the Plan is "the avoidance of taxes or the avoidance of the application of section 5 of the Securities Act of 1933," and the principal purpose of the Plan is not such avoidance.    Accordingly, the Plan satisfies the requirements of section 1129(d) of the Bankruptcy Code.

X.    <u>Section 1129(e)</u>.    Section 1129(e) of the Bankruptcy Code is not applicable because each of the Chapter 11 Cases is not a "small business case".

**C.    Additional Findings of Fact**

Y.    <u>Implementation Activities</u>.  The various means for implementation of the Plan (collectively, the "<u>Implementation Activities</u>") have been designed and proposed in good faith.  The Implementation Activities are adequate and will promote the maximization of the value of the ultimate recoveries under the Plan in a fair and equitable manner in accordance with the priorities established by the Bankruptcy Code.    The Implementation Activities are not intended to hinder, delay or defraud any entity to which the Debtors are indebted on the Effective Date.

Z.    <u>Substantive Consolidation</u>.  The Court finds that it is critical and necessary to substantively consolidate the Debtors' estates in order to implement the Plan.  No party has objected to substantive consolidation, and the overwhelming majority of creditors have voted in favor of the Plan, which is predicated upon entry of an order substantively consolidating the Debtors' Estates.  The Court finds that the Debtors' assets and liabilities are so commingled that separating them at this point would be cost prohibitive and detrimental to creditors.  This is because (i) recoveries for unsecured creditors in the Chapter 11 Cases will predominantly derive from Causes of Action held by the Debtors, including the YPF Causes of Action, which are the

Debtors' most valuable assets, and (ii) with limited exceptions, each of the Debtors has agreed to pledge substantially all of its current assets as DIP Collateral to satisfy the OCC DIP Facility, so there would be limited distributable assets at any one estate in the absence of any litigation recoveries if the DIP Collateral were used to repay the OCC DIP Facility. Accordingly, the Court finds that it would be cost prohibitive and detrimental to creditors to expend the resources necessary to determine how to allocate such recoveries among each of the Estates as the cost of making that determination could outweigh any potential recovery. The Court finds that consolidation of the Debtors' Estates is in the best interest of creditors, is consistent with applicable law governing substantive consolidation, and will expedite the Debtors' successful emergence from Chapter 11.

AA. <u>Liquidating Trust Financing</u>. The DIP Promissory Note, the Liquidating Trust Promissory Note, the Liquidating Trust Facility and any and all "Loan Documents" as defined therein (collectively, the "<u>Exit Financing Documents</u>"), are, individually and collectively, essential elements of the Plan, and entry into the Exit Financing Documents is in the best interest of the Debtors, their Estates, and the Holders of Claims and Equity Interests and are necessary and appropriate for consummation of the Plan and the operations of the Liquidating Trust, the ERRT and the Property Trust. The Debtors have exercised sound business judgment in determining to enter into the Exit Financing Documents and have provided adequate notice thereof. The terms of the Exit Financing Documents have been negotiated at arm's length among the Debtors, the Creditors' Committee and the applicable Exit Financing parties, without the intent to hinder, delay, or defraud any creditor of the Debtors, and any credit extended and loans made or deemed made by the lender(s) under the Exit Financing Documents to the Liquidating Trust pursuant to the Exit Financing Documents, and any fees paid thereunder, are

deemed to have been extended, issued, and made or deemed to be made in good faith and for legitimate business purposes. The terms and conditions of the Exit Financing Documents are fair and reasonable and are approved.

BB.    Executory Contracts and Unexpired Leases. The Debtors have exercised reasonable business judgment in determining whether to assume, assume and assign, or reject each of its Executory Contracts and Unexpired Leases as set forth in Article V of the Plan, the Assumption Schedule, or otherwise, and in this Order.  The assumption, assumption and assignment, or rejection of Executory Contracts and Unexpired Leases pursuant to this Order and in accordance with Article V of the Plan is in the best interests of the Debtors, their Estates, Holders of Claims and Equity Interests, and other parties in interest.  The Debtors have satisfied the provisions of section 365 of the Bankruptcy Code with respect to the assumption, assumption and assignment, or rejection of Executory Contracts and Unexpired Leases under the Plan.  The Debtors filed and adequately served the Assumption Schedule pursuant to Article V of the Plan. All objections to the proposed assumption, assumption and assignment, or rejection of Executory Contracts and Unexpired Leases under the Plan, or the proposed Cure Claims as set forth in the Assumption Schedule, have been resolved or are overruled.

CC.    Release, Exculpation, and Injunction Provisions Generally.  The Court finds that, pursuant to section 1123(b) of the Bankruptcy Code, Bankruptcy Rule 3016, and applicable authority, the release, exculpation, and injunction provisions of the Plan are warranted, necessary and appropriate and are supported by sufficient consent and consideration under the circumstances of the Plan and the Chapter 11 Cases as a whole.  Proper, timely, adequate, and sufficient notice of the release, exculpation, and injunction provisions, including those contained in Article XI of the Plan, has been provided in accordance with the Bankruptcy

Code, the Bankruptcy Rules, the orders of this Court, and due process. Interested parties have had a sufficient and adequate opportunity to object to such provisions and to be heard as to their objections, and no further notice of such provisions is required for entry of this Order. Each of the release, exculpation, and injunction provisions set forth in the Plan and this Order is: (a) within the jurisdiction of the Court under 28 U.S.C. §§ 1334(a), 1334(b), and 1334(d); (b) an integral element of the Plan; (c) conferring material benefit on, and is in the best interests of, the Debtors, their Estates, and Holders of Claims and Equity Interests; (d) important to the objective of the Plan to resolve all Claims and Equity Interests; and (e) consistent with sections 105, 1123, and 1129 and other applicable provisions of the Bankruptcy Code and any other applicable laws.

DD.    <u>Debtor Release and Covenant Not to Sue</u>. The Court finds that, in respect of the Debtor Release and the Covenant Not to Sue described in Article XI.C of the Plan, and based on the evidence proffered or adduced at or prior to the Confirmation Hearing, (a) there is an identity of interest between the Debtors and the Released Parties; (b) they are essential to consummation of the Plan; (c) good and valuable consideration was provided by the Released Parties, Jose Daniel Rico, Sebastian Sanchez Trolliet, and Roberto Fernando Segovia; (d) they result from a good-faith settlement and compromise of claims; (e) they are in the best interests of the Debtors' Estates and all Holders of Claims and Equity Interests; (f) they are fair, equitable and reasonable; (g) they were given and made after due notice and an opportunity for a hearing; and (h) they shall act as a bar against any of the Debtors' Estates from asserting any claim or cause of action released pursuant to the Debtor Release or agreed not to pursue pursuant to the Covenant Not to Sue.

EE.    <u>Settlements Contained in Plan</u>. The Court finds that the settlements contained in the Plan, including those contained in Articles X and XI, are reasonable and

01:21931081.1

-18-

appropriate under the circumstances and satisfy sections 363 and 1123 of the Bankruptcy Code and Bankruptcy Rule 9019 as outlined by the U.S. Court of Appeals for the Third Circuit in *Myers v. Martin (In re Martin)*, 91 F.3d 389 (3d Cir. 1996).

FF.    <u>Stay Waiver</u>.  The Court finds that, in order to permit the Debtors, the Liquidating Trustee, the PT Trustee, and the ERRT Trustee to commence their duties as quickly as practicable, to promote prompt distributions under the Plan for the benefit of creditors, and because a significant number of Implementation Activities are capable of being undertaken in short order, good cause exists to support the waiver of the stay imposed by Bankruptcy Rule 3020(e).

GG.    <u>Consent Decree</u>.  The ERRT Trustee shall at all times seek to have the ERRT treated as a "qualified settlement fund" as that term is defined in Treasury Regulation Section 1.468B-1.  For purposes of complying with Section 468B(g)(2) of the Internal Revenue Code, this Order shall constitute a consent decree between the Parties to the ERRT Agreement approved by this Court, as a unit of the District Court, and the Bankruptcy Court shall retain continuing jurisdiction over the ERRT sufficient to satisfy the requirements of Treasury Regulation Section 1.468B-1.

ACCORDINGLY, IT IS HEREBY ORDERED, ADJUDGED AND DECREED, AS FOLLOWS:

## A.    Resolution of the Objections

1.    Any and all objections or responses to final approval of the Plan, including the Objections, that have not been withdrawn, waived or resolved by the terms of this Order, agreement of the parties, or otherwise are hereby OVERRULED in their entirety and on their merits, and all withdrawn, waived or resolved objections or other objections or responses are hereby deemed withdrawn with prejudice.

01:21931081.1

-19-

**B.      Confirmation of the Plan**

2.      The Plan and each of its provisions, all documents and agreements necessary for its implementation, including, without limitation, those contained in the Plan Supplement, which are hereby collectively incorporated into this Order in all respects, are hereby APPROVED and CONFIRMED pursuant to section 1129 of the Bankruptcy Code.

3.      The Effective Date of the Plan shall occur on the date determined by the Plan Proponents when the conditions set forth in Article XII of the Plan have been satisfied or, if applicable, waived in accordance with the Plan.

**C.      Substantive Consolidation**

4.      As of the Effective Date, and solely for the purposes of these Cases, the Debtors' estates shall be substantively consolidated, and claims asserted by a creditor against multiple Debtors, whether on the basis of joint and several liability, guaranty or other similar theory, shall be deemed asserted only once against the Debtors and, shall otherwise be deemed disallowed in their entirety without the need for further Order and shall be noted accordingly on the claims registry maintained by Prime Clerk LLC.

**D.      Plan and Confirmation Order Controls**

5.      Without intending to modify any prior Order of this Court (or any agreement, instrument or document addressed by any prior Order), in the event of an inconsistency between the Plan, on the one hand, and any other agreement, instrument, or document intended to implement the provisions of the Plan, on the other, the provisions of the Plan shall govern (unless otherwise expressly provided for in the Plan or such agreement, instrument, or document).

6.      The provisions of the Plan and this Order shall be construed in a manner consistent with each other so as to effect the purpose of each other; provided, however, that if

01:21931081.1

-20-

there is any direct conflict between the Plan, the Plan Supplement, the exhibits and addenda thereto (including the terms of the Plan, the Plan Supplement, and the exhibits and addenda therein) and the terms of this Order, the terms of this Order shall control.

**E.     Findings of Fact and Conclusions of Law**

7.     The findings of fact and conclusions of law stated in this Order shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to the Chapter 11 Cases by Bankruptcy Rule 9014. Any and all findings of fact shall constitute findings of fact even if they are stated as conclusions of law, and any and all conclusions of law shall constitute conclusions of law even if they are stated as findings of fact. Further, any findings of fact and conclusions of law announced on the record in open court at the Confirmation Hearing are incorporated by reference herein.

**F.     Record Closed**

8.     The record of the Confirmation Hearing is now closed.

**G.     Notice**

9.     Good and sufficient notice has been provided of (a) the Confirmation Hearing; (b) the deadline for filing and serving objections to the confirmation of the Plan; (c) the proposed Cure Claims and the deadline for filing objections to the proposed Cure Claims; and (d) the settlements, releases, exculpations, injunctions, and related provisions of the Plan. No other or further notice is required.

**H.     Plan Modifications**

10.     The modifications to the Plan described in the Confirmation Memorandum meet the requirements of section 1127 of the Bankruptcy Code. Such modifications do not result in a material adverse change in the treatment of any Claim or Equity Interest within the meaning of Bankruptcy Rule 3019 and no further solicitation of votes or voting is required.

01:21931081.1

## I.    Plan Classification Controlling

11.    The terms of the Plan alone shall govern the classification of Claims and Equity Interests for purposes of distributions to be made thereunder.  The classifications set forth on the Ballots tendered to or returned by the Debtors' creditors in connection with voting on the Plan (a) were set forth on the Ballots solely for purposes of voting to accept or reject the Plan; (b) do not necessarily represent, and in no event shall be deemed to modify or otherwise affect, the actual classification of such Claims or Equity Interests under the Plan for distribution purposes; (c) may not be relied upon by any Holder of Claims or Equity Interests as representing the actual classification of such Claims or Equity Interests under the Plan for distribution purposes; and (d) shall not bind the Debtors, the Liquidating Trust, the Property Trust or the ERRT.

## J.    Approval of Settlements

12.    Pursuant to sections 363 and 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, the compromise and settlement of all claims or controversies relating to the rights that a Holder of a Claim or Equity Interest may have with respect to any such Claim or Equity Interest, or any distribution to be made pursuant to the Plan on account of any Claim, if Allowed, including, without limitation, as set forth in Articles X and XI of the Plan, is approved in all respects.

## K.    Approval of Releases, Covenants not to Sue, Exculpation and Injunctions

13.    The releases, covenants not to sue, exculpation provisions, injunctions, and reservations set forth in Article XI of the Plan are approved and authorized in all respects, are incorporated herein in their entirety, are so ordered, and shall be immediately effective on the Effective Date of the Plan without further order or action on the part of the Court, any of the

01:21931081.1

parties to such releases, covenants not to sue, exculpation provisions, injunctions, or any other party.

14.    All injunctions or stays in effect in these Chapter 11 Cases pursuant to sections 105 or 362 of the Bankruptcy Code or any Order of the Court then existing on the Confirmation Date (excluding any injunctions or stays contained in the Plan or the Order) shall remain in full force and effect to the maximum extent permitted by law. All injunctions or stays contained in the Plan or this Order shall remain in full force and effect in accordance with their terms.

**L.    Binding Effect; Successors and Assigns**

15.    Subject to the terms hereof and notwithstanding Bankruptcy Rules 3020(e), 6004(h), or 7062 or otherwise, upon the occurrence of the Effective Date, the terms of the Plan, the Plan Supplement, and this Order shall be immediately effective and enforceable and deemed binding upon the Debtors, their Estates, the Liquidating Trustee, the PT Trustee, the ERRT Trustee, and any and all Holders of Claims or Equity Interests (regardless of whether such Claims or Equity Interests are deemed to have accepted or rejected the Plan), all Persons or Entities that are parties to or are subject to the settlements, compromises, releases, and injunctions described in the Plan, each Person or Entity acquiring property under the Plan or this Order, and any and all non-Debtor parties to Executory Contracts and Unexpired Leases with the Debtors. The rights, benefits, and obligations of any Person or Entity named or referred to in the Plan or this Order shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign, Affiliate, officer, director, agent, representative, attorney, beneficiary, or guardian, if any, of each Person or Entity.

**M.    Exemption From Taxation**

16.    To the maximum extent provided by section 1146(a) of the Bankruptcy Code, any post-Confirmation transfer from any Entity pursuant to, in contemplation of, or in connection with, the Plan or pursuant to: (a) the issuance, distribution, transfer, or exchange of any debt, equity security, or other interest in the Debtors; or (b) the making, delivery, or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan, including any deeds, bills of sale, assignments, or other instruments of transfer executed in connection with any transaction arising out of, contemplated by, or in any way related to, the Plan, shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, or other similar tax or governmental assessment, in each case to the extent permitted by applicable bankruptcy law, and the appropriate state or local government officials or agents shall forego collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

**N.    Exemption from Registration**

17.    The beneficial interests in the Liquidating Trust (Plan Article VII.O), the Property Trust (Plan Article VIII.A), and the ERRT (Plan Article IX.C) under the Plan are not intended to be 'securities' under applicable law, but if such rights constitute securities, such securities shall be exempt from registration pursuant to section 1145 of the Bankruptcy Code, as amended, and by other applicable state and local laws requiring registration of securities.

**O.    Matters Concerning Contracts and Leases**

18.    Unless the Plan Proponents and a counterparty to an Executory Contract and Unexpired Lease agree otherwise, the Executory Contract and Unexpired Lease provisions

01:21931081.1

-24-

of Article V of the Plan, including, without limitation, the deemed rejection of Executory

Contracts and Unexpired Leases pursuant to Article V of the Plan, are specifically approved in

all respects, are incorporated herein in their entirety, and are so ordered.

19.     This Order shall constitute an order of the Court, pursuant to section 365

of the Bankruptcy Code, as of and conditioned on the occurrence of the Effective Date,

approving (a) the assumption of the Executory Contracts and Unexpired Leases specified in the

Assumption Schedule, including all amendments to the Assumption Schedule; and (b) the

rejection of the Debtors' other Executory Contracts and Unexpired Leases in accordance with

Article V of the Plan.  The assumption of Executory Contracts and Unexpired Leases under the

Plan shall assign and vest such contracts and leases in the Liquidating Trust or the Property

Trust, as applicable, provided that the Distribution Agreement shall be assigned as provided for

in the Modification Agreement.  The Debtors may remove any Executory Contract or Unexpired

Lease from the Assumption Schedule and reject any such Executory Contract or Unexpired

Lease pursuant to the terms of the Plan up until the Effective Date.

20.     All Allowed Claims arising from the rejection of the Debtors' prepetition

Executory Contracts or prepetition Unexpired Leases shall be classified as General Unsecured

Claims in Class 4 against the Debtors except as otherwise provided by an Order of the Court.

Unless otherwise provided by an Order of the Court, any Proofs of Claim based on the rejection

of the Debtors' Executory Contracts or Unexpired Leases pursuant to the Plan must be Filed with

the Claims and Noticing Agent and served on the Debtors or the Liquidating Trust, as applicable,

no later than thirty (30) days after the Effective Date.

> Subject to 11 U.S.C § 502₁

21.     Any Holders of Claims arising from the rejection of an Executory

Contract or Unexpired Lease for which Proofs of Claims are not timely Filed as set forth herein

01:21931081.1

-25-

shall not (a) be treated as a creditor with respect to such Claim or (b) participate in any distribution in the Chapter 11 Cases on account of such Claim. ~~Any Claims arising from the rejection of an Executory Contract or Unexpired Lease not Filed within the required time will be automatically disallowed, forever barred from assertion, and shall not be enforceable against the Debtors, the Liquidating Trust, the Property Trust, the ERRT, the Debtors' Estates, or the property of any of the foregoing without the need for any objection by the Debtors or the Liquidating Trust, as applicable, or further notice to, or action, Order, or approval of, the Court or any other Entity, and any Claim arising out of the rejection of the Executory Contract or Unexpired Lease shall be deemed fully compromised, settled, and released, notwithstanding anything in the Schedules or a Proof of Claim to the contrary.~~

22.    Any undisputed Cure Claims under each Executory Contract and Unexpired Lease assumed pursuant to the Plan shall be satisfied, pursuant to section 365(b)(1) of the Bankruptcy Code, by payment of the Cure Claim in Cash on the Effective Date or as soon as reasonably practicable thereafter by the Debtors or the Liquidating Trust, as applicable, as an Allowed Administrative Claim, or on such other terms as the parties to such Executory Contracts or Unexpired Leases may otherwise agree. The provisions contained in Article V of the Plan shall govern disputes related to Cure Claims.

23.    Nothing in this Order (a) releases, exculpates, precludes, or enjoins the enforcement of any liability or obligation of any Person or Entity under any Insurance Policy, reimbursement or similar agreement, or surety bond securing any liability or obligation of any of the Debtors for or related to a Workers' Compensation Claim, including any claim under the Black Lung Benefits Act, 30 U.S.C. § 901 *et seq.*, or (b) administers any surety bond securing

any liability or obligation of any of the Debtors for a Workers' Compensation Claim, including any claim under the Black Lung Benefits Act, 30 U.S.C. § 901 *et seq.*

**P.      Resolution of Disputed Claims**

24.      The provisions of Article X of the Plan regarding the procedures for resolving Disputed Claims and Equity Interests shall govern and are fair and reasonable, specifically approved in all respects, are incorporated herein in their entirety, and are so ordered.

25.      Except as expressly provided in the Plan or in any order entered in these Chapter 11 Cases prior to the Effective Date (including this Order), no Claim or Equity Interest shall become an Allowed Claim or Equity Interest unless and until such Claim or Equity Interest is deemed Allowed under the Plan or the Bankruptcy Code or the Court has entered a Final Order, including this Order, in the Chapter 11 Cases allowing such Claim or Equity Interest.

26.      Prior to the Effective Date, the Debtors, and on or after the Effective Date, the Liquidating Trust, will have the ~~exclusive~~ (i) authority to: ~~(a)~~ File, withdraw, or litigate to and (ii) the exclusive authority to judgment, objections to Claims or Equity Interests; (a) settle or compromise (or decline to do any of the foregoing) any Disputed Claim or Cause of Action without any further notice to or action, order, or approval by the Bankruptcy Court; and (b) administer and adjust the Claims Register to reflect any such settlements or compromises without any further notice to or action, order, or approval by the Bankruptcy Court.

27.      On and after the Effective Date, the Liquidating Trust may, at any time, request that the Court estimate any Disputed Claim pursuant to applicable law, in accordance with Article IX.D of the Plan.

**Q.    Liquidating Trust Distributions**

28.    The provisions of Article VII of the Plan regarding distributions from the Liquidating Trust, which are fair and reasonable, shall govern, are specifically approved in all respects, are incorporated herein, and are so ordered.

**R.    Certain Additional Matters Concerning Claims**

29.    Supplemental Administrative Claims Bar Date. Holders of Administrative Claims (other than Holders of Administrative Claims paid in the ordinary course of business, Holders of Professional Claims, Holders of Claims arising under 28 U.S.C. § 1930, Holders of Claims arising under section 503(b)(1)(D) of the Bankruptcy Code, and Holders of post-petition Intercompany Claims) that first arose (or, only in the case of unexpired leases of real and personal property, accrued) as to or against the Debtors on or after March 1, 2017 but prior to the Effective Date must File and serve on the Debtors or the Liquidating Trust, as applicable, requests for the payment of such Administrative Claims not already Allowed by Final Order within thirty (30) days of the Effective Date or the Holders of such Administrative Claims will not be permitted to receive payment or participate in any distribution under the Plan on account of such Administrative Claims.  The Debtors shall serve a notice of the Supplemental Administrative Claims Bar Date within five (5) days after the conclusion of the Confirmation Hearing.  Objections to requests for payment of such Administrative Claims must be Filed and served on the Debtors or the Liquidating Trust, as applicable, and the requesting party within twenty (20) days after the Filing of the applicable request.

30.    Professional Compensation.  All final requests for Professional Claims must be Filed no later than sixty (60) days after the Effective Date.  After notice and a hearing in accordance with the procedures established by the Bankruptcy Code and prior Bankruptcy Court orders, the Allowed amounts of such Professional Claims shall be determined by the Bankruptcy

01:21931081.1

-28-

Court.  The amount of Professional Claims owing to the Professionals shall be paid in Cash to such Professionals by the Liquidating Trust from Available Cash within 10 days of the Bankruptcy Court's approval thereof.

31.     <u>Post-Effective Date Fees and Expenses</u>.  Except as otherwise specifically provided in the Plan, the Liquidating Trust, the Property Trust, and the ERRT shall pay in Cash the legal, professional, or other fees and expenses incurred by their respective professionals from and after the Effective Date, in the ordinary course of business and without any further notice to or action, order or approval of the Bankruptcy Court.  Upon the Effective Date, professionals may be employed by, or remain employed by, the Debtors (with the prior approval of the Liquidating Trust Oversight Committee), the Liquidating Trust, the Property Trust, and/or the ERRT, as applicable, and fees incurred by such professionals shall be paid in the ordinary course of business without any further notice to or action, order, or approval of the Bankruptcy Court from the Liquidating Trust Assets, the PT Assets, and the ERRT Assets, respectively, <u>provided, however</u>, that any expenses and costs incurred by the Debtors or their Estates for services rendered after the Effective Date by professionals employed prior to the Effective Date in connection with the wind down of these Chapter 11 Cases and related dissolution activities shall be paid by the Debtors or from the Liquidating Trust Assets in the ordinary course.

32.     <u>28 U.S.C. § 1930 Fees</u>.  On the Effective Date or as soon as practicable thereafter, the Liquidating Trust shall pay all U.S. Trustee Fees that are due and owing as of the Effective Date.  Nothing in the Plan shall release the Liquidating Trust from its obligation to pay all U.S. Trustee Fees arising from and after the Effective Date before a Final Order is entered by the Bankruptcy Court concluding or closing the Chapter 11 Cases.

01:21931081.1

33.    <u>Distribution Reserve</u>.  The provisions of Article VI.F of the Plan regarding the establishment and maintenance of the Distribution Reserve, which are fair and reasonable, shall govern, are specifically approved in all respects, are incorporated herein, and are so ordered.

**S.    Matters Concerning Plan Implementation**

34.    <u>Liquidating Trust Financing</u>.  This Order shall constitute (a) approval of the Liquidating Trust Facility, the Liquidating Trust Promissory Note, and the DIP Promissory Note, and all transactions contemplated thereby, including any and all actions to be taken, undertakings to be made, and obligations to be incurred, fees and expenses paid, and indemnities to be provided by the Debtors or the Liquidating Trust in connection therewith, including the payment of all fees, indemnities, and expenses provided for therein, to the extent not approved by the Court previously, and (b) authorization for the Liquidating Trustee to finalize, execute and deliver the Liquidating Trust Facility, the Liquidating Trust Promissory Note, and the DIP Promissory Note and those documents necessary or appropriate to consummate the Liquidating Trust Facility, the Liquidating Trust Promissory Note, and the DIP Promissory Note and obtain the financing contemplated thereby, without further notice to or order of the Court, act, or action under applicable law, regulation, order, or rule (including, without limitation, the Bankruptcy Code and section 303 of the Delaware General Corporations Law, to the extent applicable) or vote, consent, authorization, or approval of any Person (including, without limitation, creditors, stockholders, directors, interest holders or members of the Debtors or the Liquidating Trust). Subject to the occurrence of the Effective Date, the Liquidating Trust Facility, the Liquidating Trust Promissory Note, and the DIP Promissory Note shall constitute the legal, valid, and binding obligations of the Liquidating Trust and shall be enforceable in accordance with their respective terms.

01:21931081.1

35.    The Liquidating Trustee, without any further action by the Court or the beneficial interest holders, is hereby authorized to enter into, and take such actions as necessary to perform under, or otherwise effectuate, the Liquidating Trust Facility, the Liquidating Trust Promissory Note, and the DIP Promissory Note, as well as any notes, documents or agreements in connection therewith, including, without limitation, any documents required under the relevant security agreement in connection with the creation or perfection of Liens or other security interests in connection therewith.

36.    On the Effective Date, the Liquidating Trust Facility, the Liquidating Trust Promissory Note, and the DIP Promissory Note, together with any new promissory notes evidencing the obligations of the Liquidating Trust, and all other documents, instruments, mortgages, and agreements to be entered into, delivered, or confirmed thereunder (including all "Loan Documents" as defined in each of the Liquidating Trust Facility, the Liquidating Trust Promissory Note, and the DIP Promissory Note), shall become effective, valid, binding, and enforceable in accordance with their terms, and each party thereto shall be bound thereby. The obligations incurred by the Liquidating Trust pursuant to the Liquidating Trust Facility, the Liquidating Trust Promissory Note, and the DIP Promissory Note, and related documents shall be secured and paid or otherwise satisfied pursuant to, and as set forth in the Liquidating Trust Facility, the Liquidating Trust Promissory Note, and the DIP Promissory Note.

37.    The liens contemplated by and related to the Liquidating Trust Facility, the Liquidating Trust Promissory Note, and the DIP Promissory Note and related documents are, and shall be, valid, binding, and enforceable liens on the collateral specified in the relevant agreements executed by the Liquidating Trust in connection with the Liquidating Trust Facility, the Liquidating Trust Promissory Note, and the DIP Promissory Note. The guarantees,

01:21931081.1

mortgages, pledges, liens, and other security interests granted pursuant to or in connection with the Liquidating Trust Facility, the Liquidating Trust Promissory Note, and the DIP Promissory Note are granted in good faith as an inducement to the lenders and other secured parties thereunder to extend credit thereunder and shall be, and hereby are, deemed not to constitute a fraudulent conveyance or fraudulent transfer, shall not otherwise be subject to avoidance, recharacterization, or subordination, and the priorities of such guarantees, mortgages, pledges, liens, and other security interests shall be as set forth in the applicable intercreditor agreement(s) and other definitive documentation executed in connection with the Liquidating Trust Facility, the Liquidating Trust Promissory Note, and the DIP Promissory Note.

38.    The Liquidating Trust and the secured parties (and their designees and agents) under the Liquidating Trust Facility, the Liquidating Trust Promissory Note, and the DIP Promissory Note are authorized to make all filings and recordings, and to obtain all governmental approvals and consents necessary to evidence, establish, and perfect such liens and security interests in connection with the Liquidating Trust Facility, the Liquidating Trust Promissory Note, and the DIP Promissory Note under the provisions of the applicable state, provincial, federal, or other law (whether domestic or foreign) that would be applicable in the absence of the Plan and this Order (it being understood that perfection shall occur automatically on the effective date of the Liquidating Trust Facility, the Liquidating Trust Promissory Note and the DIP Promissory Note, respectively, by virtue of the entry of this Order, and any such filings, recordings, approvals, and consents shall not be required as a matter of law to perfect such liens and other security interests), and will thereafter cooperate to make all other filings and recordings that otherwise would be necessary under applicable law to give notice of such Liens and security interests to third parties.

01:21931081.1

39.    <u>Transfer of Assets to Liquidating Trust Free And Clear</u>.    Pursuant to Article VI of the Plan and the terms of this Order, on the Effective Date the Debtors are deemed to transfer, grant, assign, convey, set over, and deliver to the Liquidating Trust all of the Debtors' and the Estates' right, title and interest in and to all of the Debtors' assets (other than the PT Properties), including any reversionary interest in the Environmental Trust Accounts and any other escrow accounts, which transfer shall be free and clear of any and all Liens, Claims, encumbrances and interests (legal, beneficial or otherwise) of all other Persons and Entities, other than (a) the Liens securing the obligations under the DIP Promissory Note, the Liquidating Trust Promissory Note, and the Liquidating Trust Facility; and (b) any defenses and other rights of potential defendants (including any rights to set off) with respect to Causes of Action, including without limitation, any Preserved Contribution Claims transferred to the Liquidating Trust.

40.    <u>Transfer of Assets to Property Trust Free And Clear</u>.    To the extent any of the Properties are not sold (per order of the Court) or committed to be sold pursuant to an executed purchase agreement prior to the Effective Date, the Debtors shall establish the Property Trust on or prior to the Effective Date to hold such Properties.    In such instance, on the Effective Date, (a) the Debtors are deemed to transfer to the Property Trust the PT Properties and PT Insurance Policies, which transfer shall be free and clear of any Liens, Claims, and encumbrances. The Property Trust and the PT Trustee shall have neither (i) the ability to assert any Cause of Action related to the PT Properties that arose prior to the Effective Date nor (ii) any responsibility to perform any environmental remediation at any site, but shall be subject to the requirements set forth in Section 2.02(b) of the PT Agreement filed on May 18, 2017 as Exhibit C-1 to the Plan Supplement Amendment.

01:21931081.1

41.    Transfer of Assets to ERRT Free And Clear. The Debtors shall establish the ERRT prior to the Effective Date, and on the Effective Date, the Liquidating Trust will transfer to the ERRT the ERRT Cash and the Class B Beneficial Interests as provided for in the Plan, both of which shall be transferred free and clear of any Liens, Claims and encumbrances. The ERRT shall have no responsibility to perform environmental remediation at any site, and neither the Debtors nor the Liquidating Trust shall have any reversionary or further interest in or with respect to any of the ERRT Assets.

42.    All state and local property, recording, or similar offices shall accept this Order as valid and sufficient proof of any transfer, grant, assignment, conveyance, set over, or delivery described in the preceding paragraphs 39 to 41.

43.    Appointment of Liquidating Trust Oversight Committee. Messrs. Frank Parigi, Mark D. Collins, Phillip T. Bruns, William J. Hengemihle, and Charles A. Dale III are hereby appointed to serve as the initial members of the Liquidating Trustee Oversight Committee on the terms set forth in this Order, the Plan, and the Liquidating Trust Agreement.

44.    Appointment of Liquidating Trustee; ERRT Trustee; PT Trustee. The Honorable Joseph Farnan (Ret.) is hereby appointed to serve as the initial Liquidating Trustee, and Greenfield Environmental Trust Group is hereby appointed to serve as the initial ERRT Trustee, and if necessary, the PT Trustee, on the terms set forth in this Order, Articles VI, VIII, IX of the Plan, and the Liquidating Trust Agreement, the ERRT Agreement, and the PT Agreement.

45.    Termination of Officers; Directors; Employees. Unless the Plan Proponents agree otherwise, on the Effective Date, the persons acting as directors, managers, officers, and employees of the Debtors shall be deemed to have resigned. From and after the

01:21931081.1

Effective Date, the Liquidating Trustee shall have the duties imposed under the Liquidating Trust Agreement, solely with respect to the matters described in, and pursuant to the terms of, the Plan and the Liquidating Trust Agreement (and all certificates of formation, membership agreements, and related documents are deemed amended by the Plan to permit and authorize the same). From and after the Effective Date, the PT Trustee shall have the duties imposed under the PT Agreement, solely with respect to the matters described in, and pursuant to the terms of, the Plan and the PT Agreement (and all certificates of formation, membership agreements, and related documents are deemed amended by the Plan to permit and authorize the same).   From and after the Effective Date, the ERRT Trustee shall have the duties imposed under the ERRT Agreement, solely with respect to the matters described in, and pursuant to the terms of, the Plan and the ERRT Agreement (and all certificates of formation, membership agreements, and related documents are deemed amended by the Plan to permit and authorize the same). Notwithstanding anything herein to the contrary, the Debtors and, subject to Article XV.P of the Plan, the Liquidating Trust, the Property Trust, and the ERRT shall be deemed to be fully bound by the terms of the Plan and the Order.

46.     Books and Records.  The provisions of Article XV.E of the Plan regarding accessing the Debtors' records after the Effective Date shall govern, are fair and reasonable, are specifically approved in all respects, are incorporated herein, and are so ordered.   The Debtors, the Liquidating Trustee, and the PT Trustee shall coordinate to develop a document sharing, retention, and maintenance policy with respect to the Liquidating Trust Books and Records and the PT Books and Records, the terms of which shall be agreed upon among such parties.

47.     Privileges.  The provisions of Articles VI.C, VII.A, and IX.A of the Plan governing any attorney-client privilege, work-product privilege, joint interest privilege or other

privilege or immunity with respect to the Liquidating Trust Assets, PT Assets, or ERRT Assets, respectively, are specifically approved in all respects, are incorporated herein, and are so ordered.

48.     D&O Policies.  Notwithstanding anything to the contrary contained in the Plan, Confirmation shall not impair or otherwise modify (a) any obligations arising under the D&O Policies, or (b) any person's rights to receive any benefits under such D&O Policies.  In addition, after the Effective Date, the Debtors and the Liquidating Trust, as applicable, shall not terminate or otherwise reduce coverage under any D&O Policy, including, without limitation, any "tail policy" in effect as of the Effective Date, and all Persons shall be entitled to the full benefits of any such policy for the full term of such policy regardless of whether such Persons remain affiliated with the Debtors, the Liquidating Trust, the PT Trust or the ERRT.

49.     Post-Effective Date Reports.   After the Effective Date and until the Chapter 11 Cases are closed, the filing of the final monthly report(s) and any subsequent quarterly reports required under the U.S. Trustee guidelines shall be the responsibility of the Liquidating Trust.

50.     Wind Down.  The Liquidating Trust shall have the duty, power, and authority to take any action necessary to wind down and dissolve the Debtors, other than with respect to the matters to be addressed by the Property Trust and the ERRT.  Any expenses and costs incurred by the Liquidating Trust in connection with the wind down and dissolution activities described in the preceding sentence shall be paid solely from the Liquidating Trust Assets.

51.    Rabbi Trust. The Debtors' rabbi trust, which is described in Article II.7 of the Disclosure Statement, shall be liquidated prior to the Effective Date and the proceeds thereof shall be transferred to the Debtors.

**T.    Corporate Action**

52.    Except as otherwise provided in the Plan, the corporate or related actions to be taken by or required of the Debtors in connection with each matter provided for by the Plan shall, as of the Effective Date, be deemed to have occurred and be effective as provided in the Plan, and shall be authorized, approved, and, to the extent taken prior to the Effective Date, ratified in all respects without any requirement of further action by Holders of Claims or Equity Interests, directors of the Debtors, or any other Entity.  On or prior to the Effective Date, the appropriate officers of the Debtors shall be authorized and directed to issue, execute, and deliver the agreements, securities, instruments, or other documents contemplated by the Plan, or necessary or desirable to effect the transactions contemplated by the Plan, in the name of and on behalf of the Debtors.  Notwithstanding any requirements under non-bankruptcy law, the authorizations and approvals contemplated by this provision shall be effective.

53.    On the Effective Date, upon the appointment of the Liquidating Trust Oversight Committee, unless the Plan Proponents agree otherwise, the persons acting as directors, officers and employees of the Debtors prior to the Effective Date, as the case may be, shall have no further authority, duties, responsibilities, and obligations relating to or arising from (a) operating the Debtors or (b) the Chapter 11 Cases, except as set forth in the Plan.

**U.    Cancellation and Surrender of Instruments, Securities and Other Documentation**

54.    Subject to the assumption of Executory Contracts and Unexpired Leases as set forth in this Order and the Plan, and except for purposes of evidencing a right to distributions under the Plan, on the Effective Date, all notes, stock, instruments, certificates,

01:21931081.1

indentures, guarantees, and other documents or agreements evidencing a Claim against or Equity Interest in the Debtors shall be deemed automatically cancelled with respect to the Debtors and shall be of no further force or effect as against the Debtors, whether such document is surrendered for cancellation or not, and none of the Debtors, the Liquidating Trust, the Property Trust, or the ERRT, as applicable, shall have any liability with respect thereto except as set forth in the Plan.

**V.    Immediately Effective Order**

55.    The stay of this Order imposed by Bankruptcy Rule 3020(e) is hereby waived in accordance with Bankruptcy Rule 3020(e), and this Order shall be effective and enforceable immediately upon entry.

**W.    Final Order**

56.    This Order is a final order, and the period in which an appeal must be filed shall commence immediately upon the entry hereof.

**X.    Reference to Plan Provisions**

57.    The failure to include or reference specific evidence or particular sections or provisions of the Plan or any related agreement in this Order shall not diminish or impair the effectiveness of, or otherwise affect the validity, binding effect and enforceability of, such sections or provisions, it being the intent of the Court that the Plan be confirmed and such related agreements be approved in their entirety.

**Y.    Headings**

58.    Headings utilized herein are for convenience and reference only, and shall not constitute a part of the Plan or this Order for any other purpose.

**Z.      Reversal**

59.     If any or all of the provisions of this Order are hereafter reversed, modified or vacated by subsequent Order of this Court or any other court, such reversal, modification or *vacatur* shall not affect the validity of the acts or obligations incurred or undertaken under or in connection with the Plan prior to the Liquidating Trustee's, the PT Trustee's, or the ERRT Trustee's receipt of written notice of such order.  Notwithstanding any such reversal, modification or *vacatur* of this Order, any such act or obligation incurred or undertaken pursuant to, and in reliance on, this Order prior to the effective date of such reversal, modification or *vacatur* shall be governed in all respects by the provisions of this Order and the Plan and all related documents or any amendments or modifications thereto.

**AA.    Authorization to Consummate**

60.     The Plan Proponents are authorized to consummate the Plan on any Business Day on or after the Confirmation Date on which (a) no stay of this Order is in effect, and (b) the conditions to the effectiveness of the Plan specified in Article XI of the Plan have been satisfied, or, if capable of being waived, waived in accordance with the terms of the Plan.

**BB.    Substantial Consummation**

61.     On the Effective Date, the Plan shall be deemed to be substantially consummated under sections 1101 and 1127 of the Bankruptcy Code.

**CC.    Notice of Confirmation of the Plan and Effective Date**

62.     Promptly following the occurrence of the Effective Date, pursuant to Bankruptcy Rules 2002(f)(7) and 3020(c)(2), the Debtors or the Liquidating Trust, as applicable, shall serve a notice of the entry of this Order, the establishment hereunder of bar dates for certain Claims, and the occurrence of the Effective Date on all parties that received notice of the Confirmation Hearing.  The Debtors or the Liquidating Trust, as applicable, are also directed to

01:21931081.1

make copies of this Order and any notice of the Effective Date available on the Prime Clerk

Website. Compliance with this provision of this Order shall constitute good and sufficient notice

under the particular circumstances and in accordance with the requirements of Bankruptcy Rules

2002 and 3020 and no other or further notice of Confirmation or the occurrence of the Effective

Date is necessary.

**DD.    Effect of Non-Occurrence of Conditions to Effective Date**

63.    If the Effective Date does not occur, the Plan shall be null and void in all

respects and nothing contained in the Plan or the Disclosure Statement shall: (a) constitute a

waiver or release of any claims by or Claims against or Equity Interests in the Debtors; (b)

prejudice in any manner the rights of the Debtors, the Debtors' Estates, any Holders, or any other

Entity; or (c) constitute an admission, acknowledgment, offer, or undertaking by the Debtors, the

Debtors' Estates, any Holders, or any other Entity in any respect.

**EE.    Modifications or Amendments to the Plan, Plan Supplement, and Ancillary Documents**

64.    Notwithstanding anything to the contrary in the Plan or this Order, subject

to the requirements set forth in section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019

and those restrictions on modifications set forth in the Plan, the Plan Proponents are authorized

to alter, amend, or modify the Plan one or more times, after Confirmation in accordance with

Article XIII of the Plan, provided, however, that such alterations, amendments or modifications

are filed with the Court. A Holder of a Claim or Equity Interest that has accepted the Plan shall

be deemed to have accepted the Plan, as altered, amended, modified, or supplemented, if the

proposed alteration, amendment, modification, or supplement does not materially and adversely

change the treatment of the Claim or Equity Interest of such Holder.

01:21931081.1

-40-

**FF.    Retiree Benefits**

65.    Notwithstanding any other provision of the Plan or order of this Court, the Debtors and the Retiree Committee may agree in writing to amend the Modification Agreement at any time prior to the Effective Date, and such amended agreement shall be effective and binding without further order of this Court, provided, however, that the Debtors shall provide notice to any affected Retiree of any such amendment.

**GG.    Dissolution of Official Committees**

66.    On the Effective Date, the Creditors' Committee and the Retiree Committee shall dissolve and the members thereof shall be released from all rights and duties from or related to the Chapter 11 Cases, except the Creditors' Committee and the Retiree Committee shall remain intact solely with respect to the preparation, filing, review, and resolution of applications for Professional Fee Claims or expense claims of the members of such committees.

**HH.    Retention of Jurisdiction**

67.    Pursuant to sections 105(a) and 1142 of the Bankruptcy Code, and notwithstanding entry of this Order and the occurrence of the Effective Date, as provided in Article XIV of the Plan, this Court shall retain jurisdiction as provided in the Plan over all matters arising out of, or related to, the Chapter 11 Cases, the Debtors, the Liquidating Trust, the Property Trust, the ERRT, and the Plan, to the fullest extent permitted by applicable laws.

**II.    Closing the Chapter 11 Cases**

68.    The Liquidating Trustee shall seek authority from the Bankruptcy Court to close the Chapter 11 Cases in accordance with the Bankruptcy Code and the Bankruptcy Rules, provided, however, that the Liquidating Trustee may keep one or more of the Debtors' cases open, if necessary, in order to sell any Properties, to resolve any Disputed Claims or to pursue

01:21931081.1

Causes of Action or until the Liquidating Trust has been terminated and all remaining Liquidating Trust Assets have been distributed. For the avoidance of doubt, the Chapter 11 Cases may be closed prior to termination of the Liquidating Trust, the Property Trust, and the ERRT, the resolution of any Disputed Claims or the sale of the Properties.

## JJ.    Miscellaneous

69.    <u>Seismic Data</u>. Notwithstanding anything in the Plan, any Plan Supplement or this Order to the contrary, (a) all Executory Contracts, including, but not limited to, all Master Licensing Agreements and all supplements, amendments, schedules and attachments thereto (collectively, the "<u>Seitel Agreements</u>") between any of the Debtors, on the one hand, and any of Seitel Data, Ltd., Seitel Data Corp., Seitel Delaware, Inc., Seitel Offshore Corp., and Seitel Canada Ltd. f/k/a Olympic Seismic Ltd., their affiliated companies, and any of their joint ventures, including, without limitation, Digitel Data Joint Ventures (individually and/or collectively, as appropriate, "<u>Seitel</u>"), on the other hand, shall be and hereby are rejected pursuant to section 365 of the Bankruptcy Code and terminated as of the date of entry of this Order; (b) to the extent necessary, the automatic stay under section 362 of the Bankruptcy Code is hereby modified to permit the termination of the Seitel Agreements; and (c) the Debtors shall comply with all confidentiality provisions, destruction of data and verification of destruction of data provisions required by the Seitel Agreements. Seitel shall have no claim resulting from the rejection of the Seitel Agreements.

70.    <u>Andrews Kurth Kenyon LLP</u>. Notwithstanding anything contained in the Plan, Andrews Kurth Kenyon LLP ("<u>AKK</u>") is authorized to setoff the $53,123.09 prepetition retainer (the "<u>AKK Retainer</u>") it holds from Tierra Solutions, Inc. against AKK's prepetition claim against Tierra Solutions, Inc. of $57,464.43 as further described and evidenced by proof of claim #185 filed by AKK on October 28, 2016 against Tierra Solutions, Inc. (the "<u>AKK Claim</u>").

01:21931081.1

After application of the AKK Retainer, the AKK Claim will be reduced and allowed as a general unsecured claim in the amount of $4,341.34.

71.    <u>Lakeview Bluffs, LLC and Hemisphere Corporation</u>.    Notwithstanding anything contained in the Plan, the Property Trust, the PT Agreement, the Liquidating Trust, the Liquidating Trust Agreement, or any other document ancillary to the Plan, including the *Final Order Pursuant to Sections 362, 363 and 364 of the Bankruptcy Code and Rule 4001 of the Federal Rules of Bankruptcy Procedure (A) Authorizing the Debtors to Obtain Postpetition Financing and (B) Granting Related Relief* [Docket No. 268] and the *Final Order Pursuant to Sections 362, 363 and 364 of the Bankruptcy Code and Rule 4001 of the Federal Rules of Bankruptcy Procedure (A) Authorizing the Debtors to Obtain Replacement Postpetition Financing and (B) Granting Related Relief* [Docket No. 1252] or this Order to the contrary, the compromise, settlement, and agreement by and among the Plan Proponents, Lakeview Bluffs, LLC ("<u>Lakeview</u>"), Hemisphere Corporation, and OCC, which is set forth in Article XV.R of the Plan, resolves Lakeview's filed Plan and contract assumption objections [Docket Nos. 1342, 1407], is incorporated herein in its entirety, and is approved in all respects.

72.    <u>Repsol Entities</u>.    Notwithstanding anything to the contrary set forth in the Plan, the Plan Supplement or this Order, nothing contained therein or herein (other than the provisions of Article XI.D and XI.E of the Plan and any correlative provisions of this Order, and Article XIV of the Plan with respect to the Court's jurisdiction to enforce such provisions of Article XI.D and XI.E of the Plan) shall have any precedential, preclusive or other effect against any of the Repsol Entities in any litigation, including with respect to any Cause of Action preserved under the Plan and any environmental litigation pending in the courts of the State of

01:21931081.1

New Jersey, and the rights, claims and defenses of the Repsol Entities and all other parties to any such litigation are specifically preserved.

Dated: Wilmington, Delaware
_____May 22_____, 2017

_____
HON. CHRISTOPHER S. SONTCHI
UNITED STATES BANKRUPTCY JUDGE

73. NOTWITHSTANDING Anything to the Contrary in the Plan or this Order, nothing set forth herein shall grant or be deemed to grant the Debtors with a discharge pursuant to 11 U.S.C. § 1141(d).

01:21931081.1

-44-