## IN THE UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re | ) | Chapter 11 |
| | ) | Case No. 16-11501 (CSS) |
| MAXUS ENERGY CORPORATION, | ) | |
| et al., | ) | Jointly Administered |
| | ) | |
| Debtors. | ) | |
| _____ | ) | |
| MAXUS LIQUIDATING TRUST, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Adv. Pro. No.: 18-50489 (CSS) |
| | ) | |
| YPF S.A., YPF INTERNATIONAL S.A., | ) | |
| YPF HOLDINGS, INC., CLH | ) | |
| HOLDINGS, INC., REPSOL, S.A., | ) | |
| REPSOL EXPLORATION, S.A, REPSOL | ) | |
| E&P USA, INC., REPSOL OFFSHORE | ) | |
| E&P USA, INC., REPSOL E&P T&T | ) | |
| LIMITED AND REPSOL SERVICES | ) | |
| COMPANY. | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | **)** | |

## OPINION

MORRIS, NICHOLS, ARSHT
& TUNNELL LLP
Robert J. Dehney
Curtis S. Miller (Argued)
Daniel B. Butz
1201 North Market Street
Wilmington, Delaware 19899

-and-

WEIL, GOTSHAL & MANGES LLP
Robert Lemons
767 Fifth Avenue

FARNAN LLP
Brian E Farnan
Michael J. Farnan
919 North Market Street
12th Floor
Wilmington, DE  19801

-and-

WHITE & CASE LLP
J. Christopher Shore (Argued)
Thomas MacWright
1221 Avenue of the Americas

New York, New York 101053                         New York, NewYork 10020

    -and-                                    Counsel for the Liquidating Trust

Edward Soto
Brickell Avenue, Suite 1200
Miami, Florida 33131
1155 Avenue of the Americas

Counsel for Defendants Repsol
S.A., Repsol Exploration S.A., Repsol
USA Holdings Corp., Repsol E&P USA, Inc.,
Repsol Offshore E&P USA, Inc., Repsol E&P
T&T Limited and Repsol Services Company


Dated: February 25, 2019

Sontchi, C.J._____

## INTRODUCTION

Scores of entities have found themselves made parties to this matter. Innumerable claims have been made. A procession of attorneys has come and gone. Yet still, the matter "drags its weary length before the Court." [1]

Though Maxus lacks the longevity and complexity of *Jarndyce and Jarndyce*, it is gaining on *Stern v. Marshall*, the seminal case whose facts inspired C.J. Roberts to quote this passage from Bleak House.

---

[1] *Stern v. Marshall*, 564 U.S. 462, 468, 131 S. Ct. 2594, 2600, 180 L. Ed. 2d 475 (2011), quoting C. Dickens, Bleak House, in 1 Works of Charles Dickens 4–5 (1891).

Before the Court is a motion ("Motion") for abstention directed at a complaint ("Complaint") spawned by the environmental liabilities of a bankrupt energy firm Maxus Energy Corporation ("Maxus" or "Debtor").

In the mid-1980s, Debtor sold its chemicals business to Occidental Chemical Corporation ("OCC") through a stock sale ("Stock Sale"). The business was sold amidst health concerns about Debtor's plant in northern New Jersey. Just a few years earlier, the EPA declared that plant – and three other related locations – a superfund site and placed the site on its National Priorities List.[2] Dioxin, a byproduct of the Agent Orange the plant manufactured, had been contaminating the area.[3] Mindful of the circumstances and keen to protect itself, OCC sought indemnification through the Stock Sale. The clean-up effort was ongoing when, in 2005, the State of New Jersey sued Maxus, its parents, and OCC in New Jersey Superior Court (New Jersey Court) for their role in polluting the site ("New Jersey Litigation"). OCC cross-claimed against Maxus for indemnification under the Stock Sale. Maxus, arguing that it was being scapegoated, impleaded hundreds of entities for polluting the site and contributing to its degradation. After nearly ten years, New Jersey settled with the parties. OCC agreed to pay $190 million.[4] And several courts have sided with OCC on the indemnification issue. But this is nowhere near the end of the Maxus saga.

---

[2] 1990 EPA Consent LEXIS 210, *5.

[3] *Id*. at *8.

[4] D.I. 34-11, at ¶ 23. (Unless otherwise noted, all "D.I."'s refer to Adv. Pro. 18-50489 in Del. Bankr. 16-11501.)

OCC cross-claimed against Maxus grandparent Repsol YPF, S.A. and parent YPF, S.A. and their affiliates.[5] It asserted that for twenty years they colluded to rob Maxus of its assets and stick taxpayers with the bill for its environmental liabilities. Specifically, it articulated counts for unjust enrichment, alter ego, fraudulent transfers, and conspiracy – among others. A few years later, Maxus filed for bankruptcy in this Court, with OCC being its largest creditor.[6] This Court ruled that the Maxus Liquidating Trust ("Trust") was now the proper party to pursue OCC's claims in the New Jersey Litigation. The Trust successfully intervened in New Jersey. However, a few days later the New Jersey Court entered final judgment on its pre-intervention orders dismissing OCC's claims, including those for unjust enrichment, alter ego, fraudulent transfers, and conspiracy. The Trust appealed and the appeal is pending. This appeal has vanquished the trial court's jurisdiction over the matter.[7] Thus, the Trust is blocked from litigating on the facts unless the appellate court remands and revives jurisdiction.[8] Now, the Trust brings substantially similar claims here. These claims are against YPF S.A., YPF International S.A., YPF Holdings, Inc. and CLH Holdings, Inc. ("YPF"), as well as Repsol S.A., Repsol

---

[5] The cross-claim was also against Maxus and its affiliate Tierra Solutions, Inc. ("Tierra").

[6] Maxus filed on June 17, 2016 ("Petition Date"). Tierra was one of its co-debtors.

[7] *See* N.J. Ct. R. 2:9-1(b); *see also Manalapan Realty, L.P. v. Twp. Comm. of Twp. of Manalapan*, 658 A.2d 1230, 1235 (N.J. 1995) ("The ordinary effect of the filing of a notice of appeal is to deprive the trial court of jurisdiction to act further in the matter unless directed to do so by an appellate court, or jurisdiction is otherwise reserved by statute or court rule.") and *Kiernan v.Kiernan*, 809 A.2d 199, 200-01 (N.J. Super. Ct. App. Div. 2002).

[8] *See N.J. Dep't of Envtl. Prot. v. Huber*, 63 A.3d 197, 218 (N.J. 2013) ("Ordinarily, an issue may not be raised on appeal if not raised in the proceedings below."); *see also State v. Micelli*, 72 A.3d 235, 240 (2013) (noting that New Jersey appellate rules "permit[] appellate courts to exercise original jurisdiction but only with great frugality, to end perpetual or lengthy litigation, but not to weigh evidence anew or make independent factual findings") (quotations omitted).

Exploración, S.A., Repsol USA Holdings, Corp., Repsol E&P USA, Inc., Repsol Offshore E&P USA, Inc., Repsol E&P T&T Limited and Repsol Services Company ("Repsol"). The Trust brings the fraudulent transfer claims ("544 Claims") under both state law and its 11 U.S.C. §544 and §550 powers as creditor- successor, but brings the other related claims ("Non-544 Claims") only under state law.

Repsol asks this Court to: (1) mandatorily abstain from the Non-544 Claims, (2) permissively abstain from the Complaint, and (3) to abstain due to its lack of jurisdiction under the *Rooker-Feldman* doctrine. YPF has neither joined this Motion nor filed its own. For the reasons set forth below, the Court will deny Repsol's Motion in its entirety.

First, the Court finds that mandatory abstention is not applicable because the required state court action has not been commenced. The New Jersey suit does not suffice because OCC only sought relief for wrongs committed against itself. Here, the Trust sues on behalf of all creditors for "all damages" that they have sustained.[9] While the state suit may eventually be enlarged to cover the relief sought here, such change is speculative. Thus, for purposes of mandatory abstention, a state action had not been commenced.

Second, the Court will not apply permissive abstention because it would complicate and potentially compromise the creditors' recovery. Were the Court to abstain, the Trust would have to wait and see if it could litigate the alter ego, unjust enrichment, and conspiracy claims in New Jersey. And if the New Jersey appellate court

---

[9] Del. Bankr. 16-11501 D.I. 2030, at ¶¶ 18, 232, 476, and 485.

does not remand, the Trust may be unable to do so. Therefore, abstention would stymie the Trust's efforts to recover for creditors.

Third, *Rooker-Feldman* is a narrow doctrine concerned only with prohibiting federal courts from reviewing state court decisions. Such "review differs from mere attempts to litigate in federal court a matter previously litigated in state court."[10] Because Repsol's position boils down to this sort of re-litigation argument, the Court finds that *Rooker-Feldman* is not applicable.

## JURISDICTION & VENUE

This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (H).

## PROCEDURAL HISTORY

For nearly a dozen years prior to the Petition Date, Maxus had been mired in litigation concerning the superfund site. In 2005, the State of New Jersey sued Maxus, its parents and affiliates, and OCC, for their role in polluting the site. OCC crossclaimed against Maxus in 2008, claiming that Maxus had indemnified OCC from harm through the Stock Sale. OCC also alleged that Maxus, Tierra, YPF S.A. (parent of Maxus) and Repsol S.A. (grandparent of Maxus) were alter egos of each other and constituted a "Cohesive Economic Unit." All in all, Maxus asserted various causes of action based on: (1) alter ego (declaratory relief); (2) breach of contract and contractual indemnification,

---

[10] *In re Philadelphia Entm't & Dev. Partners*, 879 F.3d 492, 500 (3d Cir. 2018) (internal quotations and citation omitted.)

(3) fraudulent transfers, (4) unjust enrichment, (5) tortious interference with contract, (6) civil conspiracy, (7) statutory contribution for environmental liabilities; and (8) fiduciary duty-based claims (collectively "New Jersey Claims".)[11] The following year, Maxus argued that it was being scapegoated for the pollution of many others and impleaded hundreds of parties who it claimed shared the blame for the site's condition.[12] By 2014, New Jersey settled with all its defendants.[13] But other litigation was unabated.

On January 29, 2015, the New Jersey Court dismissed all OCC's claims against Repsol, except for its alter ego claims.[14]  The next year, the New Jersey Court granted Repsol summary judgment on the New Jersey Claims.[15] Maxus soon filed for bankruptcy and the New Jersey Claims were removed to the United States Bankruptcy Court for the District of New Jersey and transferred here. Repsol moved this Court to abstain from hearing the New Jersey Claims and remand those proceedings to the New Jersey Court. This Court granted Repsol's motion and held that the alter ego-based claims are property of the Debtors' estates and later clarified that the Trust had standing to sue on them.[16] On November 1, 2017, the Trust moved to intervene in the New Jersey Court as of right under

---

[11] D.I. 34-8 and D.I. 34-2.

[12] *New Jersey Dep't of Envir. Prot. v. Occidental Chem. Corp.*, No. A-0067-11T2, 2012 WL 1392597, at *3 (N.J. Super. Ct. App. Div. Apr. 24, 2012)

[13] D.I. 34-9, D.I. 34-10, and D.I. 34-11.

[14] D.I. 34-17.

[15] D.I. 34-22.

[16] *In re Maxus Energy Corp.*, 560 B.R. 111, 121 (Bankr. D. Del. 2016); *In re Maxus Energy Corp.*, 571 B.R. 650, 658 (Bankr. D. Del. 2017).

New Jersey Rule 4:33-1.[17] On November 17, 2017, the New Jersey Court granted the motion, ordering that the Trust "shall be treated as a party in this matter for all purposes."[18] Immediately thereafter, on November 22, 2017, the New Jersey Court entered final judgment on all of the New Jersey Claims in favor of Repsol.[19] On January 8, 2018, the Trust appealed, among others, the Final Judgment.[20]

Six months later, the Trust filed the Complaint against Repsol and YPF. Like OCC earlier, the Trust asserted that for twenty years Maxus's parents ganged together to rob Maxus of its assets and leave third parties and taxpayers on the hook for its environmental liabilities. Specifically, it alleged numerous counts for fraudulent transfer under the Uniform Fraudulent Transfer Act ("UFTA") of several states and under sections 544 and 550 of the Code. It also alleged counts for unjust enrichment, alter ego, and conspiracy. Repsol moved for mandatory, permissive, and *Rooker-Feldman* abstention. It argued that the Court should not hear the Complaint because the Trust is using it to get around or disturb a state court's judgment on state law.

## STATEMENT OF FACTS

Fishing and crabbing are popular past-times in the mid-Atlantic. Enthusiasts may spend hours catching bass, eels, and crabs to eat. However, for decades, fishing and crabbing have been risky pursuits in northern New Jersey. Toxic chemicals once seeping

---

[17] D.I. 34-24.

[18] D.I. 34-26.

[19] D.I. 34-27.

[20] D.I. 34-28.

from the nearby factories have helped make consumption dangerous. Eating certain creatures from these waters has become so unsafe that New Jersey has prohibited their harvest. This ban is one consequence of many from the long-running pollution of the area.

In 1951, Diamond Alkali Company began operating a chemical plant in northeast New Jersey. Diamond Alkali manufactured numerous chemicals, among them Agent Orange. One byproduct of the operation was dioxin, a potent poison. The company knew that it was releasing dioxin, but continued its operations.[21] In 1984, the EPA declared the area a superfund site and placed it on the National Priorities List. Two years later, Diamond Alkali, which had since renamed itself Diamond Shamrock Corporation, sold its chemicals business to OCC. Soon, Diamond Shamrock changed its named to Maxus Energy Corporation, a name it retained until it filed for bankruptcy. When it did, OCC was its largest unsecured creditor.

## ANALYSIS

### A.  MANDATORY ABSTENTION

Repsol moves for mandatory abstention of the Non-544 Claims. (These claims are for unjust enrichment, alter ego, and civil conspiracy.)

A bankruptcy court must abstain from a proceeding when (1) the motion to abstain was timely brought; (2) the underlying action or proceeding pending in federal court is based upon a state law claim or cause of action; (3) the proceeding is non-core, such that it is related to a bankruptcy proceeding, but neither arises under Title 11 nor in a case

---

[21] *Diamond Shamrock Chemicals Co. v. Aetna Cas. & Sur. Co.,* 258 N.J. Super. 167, 212, 609 A.2d 440, 462 (App. Div. 1992).

under Title 11; (4) section 1334 is the sole basis for federal jurisdiction; (5) an action is

commenced in state court; and (6) the action can be timely adjudicated in state court.[22]

Section 1334(c)(2) reflects a congressional judgment that parties wishing to litigate a state

claim in state court, but finding themselves in bankruptcy court purely "because the

controversy is related to a bankruptcy, should be able to insist upon a state adjudication

if that will not adversely affect the bankruptcy proceedings."[23]

    1.  *The Motion is timely.*

The parties do not dispute that this Motion was timely brought.

    2.  *The underlying action is based upon state law.*

The underlying actions are based on state law claims or causes of action. The Non

544 Claims concern unjust enrichment, conspiracy, and alter ego claims. These claims

sound in state law. They neither invoke any section of the Bankruptcy Code nor require

its interpretation in order to grant relief.

    3.  *The claims are core.*

Whether a proceeding is a "core" proceeding that "arises under" title 11 depends

upon whether the Bankruptcy Code creates the cause of action or provides the

substantive right invoked.[24] Claims that "arise in" a bankruptcy case are those "that by

their nature, not their particular factual circumstance, could only arise in the context of a

---

[22] 28 U.S.C. § 1334(c)(2).

[23] *Stoe v. Flaherty*, 436 F.3d 209, 214 (3d Cir. 2006), as amended (Mar. 17, 2006).

[24] *Halper v. Halper*, 164 F.3d 830, 836–37 (3d Cir.1999).

bankruptcy case."[25] For example, this Circuit held in *Halper* that a state law claim for breach of pre-bankruptcy contract to which debtor was not party is not a core claim.[26] And the Circuit later held in *Stoe* that a state wage claim against debtor's non-debtor officers did not "arise in" bankruptcy merely because the bankruptcy caused the debtor to stop paying wages.[27] When determining whether an action is core, the Third Circuit has adopted a claim by claim approach and scrutinizes each count individually, rather than the proceeding as a whole.[28]

In the 544 Claims, the plaintiff invokes its §544 powers and asserts the UFTA of several states. Under 28 U.S.C. §157(b)(2)(H), these claims are core, as they seek to "determine, avoid, or recover fraudulent conveyances". Moreover, though state law supplies the substance of the claim, the power to bring the claim in the first place arises under federal law.[29] Similarly, the alter ego, unjust enrichment, and conspiracy counts are core.

---

[25] *Stoe,* 436 F.3d at 218 (3d Cir. 2006). *See also Halper,* 164 F.3d at 836 (proceeding is "core" "if it is a proceeding that, by its nature, could arise only in the context of a bankruptcy case") (quotation omitted); 1 Collier on Bankruptcy § 3.01[4][c][iv] at 3–31 (noting that "administrative matters" such as allowance and disallowance of claims, orders in respect to obtaining credit, determining the dischargeability of debts, discharges, confirmation of plans, orders permitting the assumption or rejection of contracts, are the principal constituents of "arising in" jurisdiction, and that "[i]n none of these instances is there a 'cause of action' created by statute, nor could any of the matters illustrated have been the subject of a lawsuit absent the filing of a bankruptcy case)."

[26] *Halper,* 164 F.3d at 838.

[27] *Stoe,* 436 F.3d at 218.

[28] *Halper,* 164 F.3d at 839; *In re Exide Techs.,* 544 F.3d 196, 206 (3d Cir. 2008).

[29] *See e.g. In re Bridge,* 18 F.3d 195, 200 (3d Cir. 1994) (writing that although state law governs the scope of 544(a)'s avoidance powers, it is clear that "the trustee's strong arm powers arise under federal law.").

When coupled with allegations of another wrong, such as a breach of fiduciary duty or a fraudulent conveyance, alter ego can constitute an independent claim.[30] Under the Third Circuit's decision in *In re Emoral, 740 F.3d 875 (3d Cir. 2014)* and this Court's ruling in Maxus, *571 B.R. at 660*, the alter ego claims of the Debtor's creditors are property of the estate and may only be pursued by the Trust.

Unlike the actions in *Stoe* and *Halper*, which concern contract and employment law and involve neither debtors nor trusts, the alter-ego, conspiracy, and unjust enrichment claims are not nearly so tenuously connected to the bankruptcy. They arise under the same events as the 544 Claims and are intimately connected to them. Allegations of alter-ego, unjust enrichment, and conspiracy are part of the same story as the core fraudulent transfer claims.

4. *§1334 is the sole basis for jurisdiction.*

The Court does not have diversity jurisdiction and does not clearly have federal question jurisdiction over these issues independent of 28 U.S.C. § 1334(c)(1). Diversity jurisdiction requires complete diversity between named parties. In other words, no named plaintiff can be a citizen of the same state as any named defendant. Additionally, no defendant may be a citizen of the forum state and the amount in controversy must exceed $75,000. For these purposes, a corporation is a citizen of "every State and foreign

---

[30] *In re Maxus Energy Corp.*, 571 B.R. at 660 (Bankr. D. Del. 2017) ("a trustee possesses standing to bring — and by logical extension, settle and release — an alter ego claim on behalf of a creditor of the debtor, as long as the claim qualifies as a 'general' claim.") (quoting *In re Alper Holdings USA, Inc.*, 398 B.R. 736, 759 (S.D.N.Y. 2008)). *See also Harrison v. Soroof Int'l, Inc.*, 320 F.Supp. 602, 613 (D. Del. 2018); and *Duke Energy Trading & Mktg., L.L.C. v. Enron Corp.*, 2003 WL 1889040 at *3 (Bankr. SDNY Apr. 17, 2003).

state by which it has been incorporated and of the State or foreign state where it has its principal place of business."[31] And a trust's citizenship is determined by its trustee.[32] Here, the Trust's trustee is a Delaware citizen and none of the named Repsol defendants are Delaware citizens.[33] However, defendant YPFH is a Delaware citizen. In a twist, the Trust ignores YPFH's citizenship – presumably because YPFH would not be affected by Repsol's Motion on its own behalf. The Trust argues that because it could have brought its claims against Repsol in federal court, diversity jurisdiction exists.[34] Indeed, the Trust could have brought claims against Repsol based upon diversity jurisdiction. However, it could not have brought the Complaint in federal court because its claims against YPFH destroy diversity. And the Trust does not explain why a motion's diversity analysis should differ from that of its underlying complaint.

Courts are split on whether 544 claims present a federal question.[35] Because of this divergence in authority, the rule on federal question jurisdiction is unsettled. However, the Non-544 Claims present do not present any federal questions and do not give rise to federal question jurisdiction.

---

[31] 28 U.S.C. § 1332(c)(1).

[32] *See Gavin/Solmonese LLC v. D'Arnaud-Taylor*, 68 F. Supp. 3d 530, 543 (S.D.N.Y. 2014), aff'd, 639 F. App'x 664 (2d Cir. 2016) ("Generally, when claims are assigned to a trust, the relevant citizenship for the purposes of 28 U.S.C. § 1332(a) is that of the trustee rather than the beneficiaries.").

[33] D.I. 36, at ¶ 37 and D.I. 42, at p. 21 and Exhibit A. Some of the Repsol entities had been Delaware citizens when the Complaint was filed, but have since changed their citizenship.

[34] D.I. 42, at p. 20.

[35] *See e.g. Hopkins v. Plant Insulation Co.*, 342 B.R. 703, 713 (D. Del. 2006) (discussion of case law).

5.  *An action has not been commenced in state court.*

This requirement presents an issue over the interpretation of "an action." Though the Code itself does not articulate the kind of state court action that satisfies this criterion, any action will not do. For example, this Court has denied abstention when the state action does not "parallel…the substance of the adversary proceeding."[36] Other courts interpreting this provision consider whether the federal proceeding could afford relief that the state proceeding could not.[37] And this Court has since embraced the principle that state actions offering less relief than the federal action do not require abstention.[38] Even when the state action could "theoretically" be enlarged to mirror the federal proceeding, without the actual change the state action does not mandate abstention.[39]

An appropriate action in state court has not been commenced. Repsol is right that it is already fighting similar alter ego, unjust enrichment, and conspiracy claims in New Jersey appellate court. However, that suit cannot provide the relief sought here. In New Jersey, OCC sought monetary relief only for itself and its own damages. Here, the Trust seeks to recover for *all* creditors. While the ongoing state action may be further amended to mirror the federal proceeding, this enlargement is hypothetical and has not happened yet. The amendments to date do not transform it enough. Though the Trust has replaced OCC as the party to bring the state appeal, its scope is still limited to OCC's remedies. A

---

[36] *Matter of Total Tech. Servs., Inc.*, 142 B.R. 96, 100 (Bankr. D. Del. 1992).

[37] *In re Nationwide Roofing & Sheet Metal, Inc.*, 130 B.R. 768, 778–79 (Bankr. S.D. Ohio 1991) (denying mandatory abstention when the federal case had different parties and could provide additional relief).

[38] *In re SemCrude, L.P.*, 428 B.R. 82, 101 (Bankr. D. Del. 2010).

[39] *River Homes v. Wilmington Trust Co.*, 1993 U.S. Dist. LEXIS 2521, *6-7.

win for the Trust would not yield multi-creditor recovery. The Trust has never commenced or litigated a state court action on behalf of all creditors. Indeed, the Trust only intervened in the New Jersey Litigation days before the New Jersey Court entered the Final Judgment the Trust is appealing. And the New Jersey Court entered this judgment's underlying orders (dismissing the alter ego, unjust enrichment, and conspiracy claims) before the Trust even existed. Unable to litigate at the trial level in New Jersey, the Trust should not be deprived of the chance to do so here. The Trust's late-stage intervention and appeal do not render the New Jersey Litigation capable of providing relief to all creditors – not just OCC. Because the New Jersey litigation is confined to remedying OCC for its harm and cannot offer the more expansive remedy sought here, it does not support mandatory abstention.

6. *The action cannot be timely adjudicated in state court.*

The party requesting mandatory abstention must show that the state court may timely adjudicate the claims. Though the Third Circuit has not articulated a test for this prong, courts consider a variety of factors, including "(1) the backlog of the state court's calendar, (2) the status of the bankruptcy proceeding, (3) the complexity of the issues presented, and (4) whether the state court proceeding would prolong the administration of the estate."[40] Here, the Court does not have information concerning the state court backlog. As to the second factor, this Court is ready to proceed with the Complaint. Finally, the factual complexity and development of legal issues on appeal threaten to prolong the

---

[40] *Calascibetta v. J.H. Cohn LLP*, No. CIV.A. 11-1743 SRC, 2011 WL 2224179, at *2 (D.N.J. June 6, 2011); *Lichtenfels v. Electro-Motive Diesel, Inc.*, No. CIV. A. 09-1590, 2010 WL 653859, at *8 (W.D. Pa. Feb. 22, 2010).

bankruptcy's administration. Abstention would require this Court to wait for the resolution of an appeal and potentially a remand. Importantly, because such suits constitute practically the sole source of creditor recovery, this Court would be tying its own hands as to the fate of when its own case would be resolved.

## B. PERMISSIVE ABSTENTION

Repsol has moved for the Court to permissively abstain from the Complaint.

The Third Circuit has identified twelve factors when considering whether permissive abstention is appropriate. These factors include the: (1) effect or lack thereof on the efficient administration of the estate, (2) extent to which state law issues predominate over bankruptcy issues, (3) difficulty or unsettled nature of the applicable state law, (4) presence of a related proceeding commenced in state court or other non-bankruptcy court, (5) jurisdictional basis, if any, other than 28 U.S.C. § 1334(c)(1), (6) degree of relatedness or remoteness of the proceeding to the main bankruptcy case, (7) substance rather than form of an asserted "core" proceeding, (8) feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court, (9) burden of the court's docket, (10) likelihood that the commencement of the proceeding in a bankruptcy court involves forum shopping by one of the parties, (11) existence of a right to a jury trial, and (12) presence in, the proceeding of non-debtor parties.[41] This test originated from *In re Republic Reader's*

---

[41] *N.J. Dept. of Envtl. Protection v. Occidental Chem. Corp.; In re Maxus Energy Corp.,* 560 B.R. at 124–25 (citing *Off. Comm. of Unsecured Creditors v. Elkins (In re Integrated Health Servs., Inc.),* 291 B.R. 615, 619 (Bankr. D. Del. 2003)), reconsideration denied, 571 B.R. 650 (Bankr. D. Del. 2017).

*Serv., Inc.,* a 1987 bankruptcy case in Texas. Permissive abstention is not formulaic and involves an equitable consideration of the circumstances and weighing of the factors.

1. *Abstention would negatively impact the administration of the bankruptcy.*

Proceedings related to the bankruptcy are pending or ongoing both here and in New Jersey. However, pursuant to New Jersey law, no court may have jurisdiction over the Trust's claims. The claims cannot go to the trial court because an appeal strips the trial court of jurisdiction, which it does not regain until remand. And the appellate court does not have jurisdiction to entertain a new claim. Thus, abstention would leave the Trust waiting for a remand that may not come. This could deprive the Trust of the opportunity to bring its claims on behalf of the creditors. Moreover, the Motion only requests abstention for claims against Repsol – not YPF. So even if the Trust can eventually file in New Jersey against Repsol, YPF would still be in Delaware. Granting the Motion would require two separate courts to consider a similar set of operative facts concerning related defendants and with respect to similar issues. This would neither conserve judicial resources nor avoid the possibility of inconsistent rulings – traditional arguments for abstention.

This factor weighs heavily against abstention.

2. *State issues predominate.*

All 23 counts in the Complaint implicate state law and most counts also include sections 544 and 550 of the Bankruptcy Code. However, these provisions primarily serve to grant the trustee its debtor's rights to avoid transfers under certain circumstances and

to articulate the corresponding transferee's rights. Alone, neither is a basis for recovery. Each relies on outside law to decide which rights are involved. The sections merely preserve those rights in bankruptcy and allow the trustee to proceed on behalf of a collective. And because the vivifying law determines an entity's rights, different debtors may have drastically different rights. As a result, the invocation of the same section in different cases may result in dramatically different requirements and options for relief.

This weighs in favor of abstention.

3.  *The state law at issue is not difficult or unsettled.*

Clearly, the facts here are complex. And the state laws at hand are not easy. In addition to alter ego, unjust enrichment, and conspiracy, there are several claims pursuant to state versions of the UFTA. Nevertheless, such laws are generally not unsettled or unfamiliar to this Court. Because such issues abound in bankruptcy, they are in this Court's wheelhouse.

This factor is neutral.

4.  *A related proceeding is progressing through state court.*

Bankruptcy courts sometimes abstain in favor of awaiting an outcome from a state appellate court. However, the unique circumstances of this case would send one defendant to New Jersey while the Trust waits for an opportunity to file and leave the other here ready for trial. As discussed in the first prong, this would neither conserve judicial resources nor avoid the possibility of inconsistent rulings – traditional arguments for abstention. Additionally, as discussed in the mandatory abstention section, the related proceeding cannot afford the relief sought here.

This factor weighs against abstention.

5. *There is no other clear jurisdictional basis.*

The mandatory abstention section addresses this factor. It weighs in favor of abstention.

6. *This matter is closely related to the bankruptcy and vital to its denouement.*

To a certain extent, continuing "trusts by their nature maintain a connection to the bankruptcy even after the plan has been confirmed."[42] The relevant inquiry is how close the nexus is. "Matters that affect the interpretation, implementation, consummation, execution, or administration of the confirmed plan will typically have the requisite close nexus."[43] But the possibility of impact the trust res is not enough to constitute closeness. A key question is whether a bankruptcy court would be "required to construe and enforce provisions of the Plan to resolve a post-confirmation dispute."[44] Here, though the Plan expressly preserves the Trust's rights to pursue causes of action, neither the Plan nor this clause is at issue. No party contests the Trust's ability to bring this suit and no count in the Complaint requires this Court to interpret the Plan.[45]

However, there is more to the closeness inquiry. When determining the nexus, courts are motivated to avoid the specter of unending bankruptcy jurisdiction over these

---

[42] *In re Resorts Int'l, Inc.*, 372 F.3d 154, 167 (3d Cir. 2004).

[43] *Id.*

[44] *Id.*

[45] The 129-page Complaint mentions the Plan nine times – typically as factual background.

trusts.[46] Declining to find a close nexus between a trust's malpractice claim against its accounting firm and the bankruptcy, the Third Circuit wrote in *In re Resorts* that the "mere possibility of a gain or loss of trust assets" does not confer post-confirmation jurisdiction. This differs markedly from the matter before this Court. Far from being a one-off malpractice issue coming up post-confirmation, this Complaint brings the sort of claims contemplated pre-confirmation. In fact, such claims against the parents were contemplated during the bankruptcy.[47] Moreover, the Court is not grappling with a res's possible diminution or augmentation. The matter before it may determine the population of nearly the entire res.[48] Because of the circumstances of the state trial and the Court's role in overseeing the res's disbursement, the exercise of jurisdiction would expedite the determination of the res. This would conclude the bankruptcy more quickly and guard against indefinite jurisdiction.

This counsels strongly against abstention.

7. *The core claims would in substance be about state law.*

This prong does not turn on whether a claim is core. Instead, it is animated by the concern that plaintiffs can disguise state law actions as bankruptcy issues by cloaking them in the Code.[49] Even indisputably core claims may involve little more than

---

[46] *Resorts*, 372 F.3d 167 (3d Cir. 2004).

[47] Del. Bankr. 16-11501 D.I. 1475, at 8:18-23.

[48] *Id.*

[49] *In re Republic Reader's Serv., Inc.*, 81 B.R. 422, 427 (Bankr. S.D. Tex. 1987) (discussing how a core claim under 28 U.S.C. §157 is in substance a state law claim). This is the case that articulated the permissive abstention standard the Third Circuit adopted.

application of state law. Thus, though parties dispute which claims are core, the Court does not weigh-in now. Whether any claims are core, in practice all claims implicate mostly or only state law. (This has been discussed in the second prong.)

This factor favors abstention.

8. *It would be unfeasible to sever the core (§ 544) claims from the state law claims.*

The separation of core claims, which concern fraudulent transfers, from alter ego, unjust enrichment, and civil conspiracy claims would be – at best – messy to the extent that it is possible. For example, the Trust alleges that some fraudulent transfers occurred in furtherance of and as part of a conspiracy.[50] This Court may be unable to rule on the fraudulent transfer claims without a vetting of the other claims. Additionally, both sides agree that the 544 Claims are not severable from the Non-544 Claims.[51]

In light of mandatory abstention not applying here, this factor disfavors abstention.

9. *Denying the Motion would not substantially burden the Court.*

The Court is already familiar with much of the case's background. Besides, even if it were to abstain, the claims against YPF would remain on its docket and require it to tackle the Complaint.

This factor disfavors abstention.

---

[50] Del. Bankr. 16-11501 D.I. 2030, at ¶¶ 245 and 481.

[51] D.I. 36 ¶ 63.; D.I. 42, at p. 39.

10. *The likelihood of forum-shopping is unlikely.*

Both this Court and New Jersey would be appropriate, as both forums have strong ties to the litigation. In such a case, the selection of either forum does not give rise to the traditional forum-shopping concern that plaintiff is trying to rope in a favorable forum with tenuous connections to the case. It makes sense that the Trust would bring claims for the benefit of Maxus's creditors to the forum that oversaw Maxus's bankruptcy. However, proceeding in New Jersey would also be appropriate. Appeals are moving forward there after an intensive and extensive related litigation against Repsol – in which the Trust has intervened. The Trust itself states that it is bringing the claims here at least in part because it is unable to do so in New Jersey, at least for the time being.

This weighs against abstention.

11. *There may be a right to a jury trial that could be impairing by proceeding in Delaware.*

Repsol does not point to any authority recognizing its right to a jury trial on the 544 Claims, which rely on the UFTAs of various states. However, case law does suggest that suits to recover fraudulent transfers are suits of law, not equity and therefore trigger the right to a jury trial.[52] Thus, it may be possible that Repsol has a right to a jury trial by virtue of one of the state laws. Repsol itself asserts a right to a jury trial on all the claims.[53] This Court can not conduct jury trials without the consent of all parties and the district

---

[52] *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 44, 109 S. Ct. 2782, 2791, 106 L. Ed. 2d 26 (1989).

[53] D.I. 36, at ¶ 66.

court's designation. Previously, this Court has abstained when jury trials were even a possibility.[54]

Repsol is likely not entitled to a jury on the alter ego, unjust enrichment, and civil conspiracy claims, which are creatures of equity. No jury right attaches to equitable claims.[55] "The alter ego doctrine is a tool of equity."[56] Likewise, unjust enrichment is a traditional principle of equity.[57] Civil conspiracy is also an equitable action.[58]

Because it would be difficult to sever the claims, this weighs in favor of abstention.

12. *Non-debtors are party to this suit.*

Though non-debtors are parties to this proceeding, all parties are closely connected to the Debtor. (The Trust is the plaintiff and Debtor's parents are defendants.)

This factor is neutral.

As stated above, permissive abstention is not formulaic and involves an equitable consideration of the circumstances and weighing of the factors. While some of the factors favor abstention, the majority of the factors (6-4-2) and equity favor a finding that permissive abstention is not appropriate.

---

[54] *In re Maxus Energy Corp.*, 560 B.R. at 128.

[55] *Billing v. Ravin, Greenberg & Zackin, P.A.*, 22 F.3d 1242, 1245 (3d Cir. 1994); *Cox v. Keystone Carbon Co.*, 861 F.2d 390, 392 (3d Cir. 1988); *Granfinanciera,* 492 U.S. at 41, 109 S.Ct. 2790.

[56] *Trustees of Nat. Elevator Indus. Pension, Health Benefit & Educ. Funds v. Lutyk*, 332 F.3d 188, 193 (3d Cir. 2003) (internal quotations and citation omitted).

[57] *QVC, Inc. v. OurHouseWorks, LLC*, 649 F. App'x 223, 228 (3d Cir. 2016); *ATACS Corp. v. Trans World Commc'ns, Inc.*, 155 F.3d 659, 669 (3d Cir. 1998).

[58] *Riverside Mem'l Mausoleum, Inc. v. UMET Tr.*, 581 F.2d 62, 64 (3d Cir. 1978); *Black & Yates, Inc. v. Mahogany Ass'n, Inc.*, No. 7561, 1942 WL 53456, at *1 (3d Cir. June 10, 1942).

## C. *ROOKER-FELDMAN* DOCTRINE

The *Rooker-Feldman* doctrine was created to prevent federal courts – other than the Supreme Court – from sitting in review of state court decisions without Congressional authorization. After years of unchecked expansion in the lower courts, in 2005 the Supreme Court reigned in the *Rooker-Feldman* doctrine to cover only "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the federal district court proceedings commenced and inviting district court review and rejection of those judgments."[59] The following year, the Supreme Court again emphasized the narrowness of the doctrine and its application only to limited circumstances.[60] The Court reiterated that the doctrine does not impact preclusion or other doctrines governing a federal court's actions in deference to state courts.[61] Its purpose is to restrain state court losers from using federal courts to overturn state court judgments.[62] In light of this admonition, the Third Circuit pared down on the use of its pre-*Exxon Rooker-Feldman* test.[63] That test asked if the federal and state suits were

---

[59] *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 281, 125 S. Ct. 1517, 1520, 161 L. Ed. 2d 454 (2005).

[60] *Lance v. Dennis*, 546 U.S. 459, 464–66, 126 S.Ct. 1198, 163 L.Ed.2d 1059 (2006)

[61] *Id.; Exxon* 544 U.S. at 281, 125 S. Ct. 1520. The Supreme Court singled out preclusion as a doctrine frequently conflated with *Rooker-Feldman*. However, *Rooker-Feldman* implicates jurisdictional concerns. Preclusion does not.

[62] *Exxon*, 544 U.S. at 288, 125 S. Ct. 1524.

[63] *Gary v. Braddock Cemetery*, 517 F.3d 195, 200 (3d Cir.2008).

"inextricably intertwined" – a phrase that appears only three times in *Exxon*.[64] Now, the Third Circuit considers this term a descriptive label without legal significance.[65]

Instead, breaking down *Exxon,* the Third Circuit in *Western Mining* has promulgated four requirements that "must be met for the Rooker–Feldman doctrine to apply: (1) the federal plaintiff lost in state court; (2) the plaintiff complains of injuries caused by the state-court judgments; (3) those judgments were rendered before the federal suit was filed; and (4) the plaintiff is inviting the district court to review and reject the state judgments." [66] *Western Mining* also reiterated *Exxon's* distinction between prohibited appellate review and permissible re-litigation. More to the point, it noted that trying a state matter anew in federal court does not constitute the sort of appellate review *Rooker-Feldman* contemplates. Even the potential to obviate the state court's judgment or contradict its legal conclusion is not enough where its bona fides are not challenged.[67]

Repsol argues that *Rooker-Feldman* bars the "copycat" Complaint because its claims are so "inextricably intertwined with the state court adjudication" that this Court can only rule that plaintiff is right if it concludes that the state court was wrong.[68] As explained, this is an incorrect and outdated view of the doctrine. It invents a re-litigation prohibition and relies on a test from which the Third Circuit has backed away.

---

[64] *Id.*

[65] *Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 170 (3d Cir. 2010).

[66] *W. Mining*, 615 F.3d at 166 (internal quotation marks and citation omitted).

[67] *In re Philadelphia Entm't*, 879 F.3d at 500; *W. Mining*, 615 F.3d at 169.

[68] D.I. 36, at ¶¶ 65, 75, and 76.

1. *The federal plaintiff lost in state court.*

The Trust argues that it is not a loser, but an appellant. The Court does not accept this logic, for two reasons. First, the Trust *did* lose. (Hence the appeal.) Allowing state court losers to proceed in federal court just because they've appealed in state court strikes at the heart of *Rooker-Feldman*'s prohibition on federal courts sitting in review of state judgments. It would allow federal courts to overturn a state court judgment just because a state court is also being asked to overturn it. But the state court's review does not lift the prohibition on federal courts. Second, drawing such lines between losers who appeal and losers who do not encourages litigants to game the system. It incentivizes parties to appeal state decisions just to get into federal court. Not only would this clog state and federal dockets, but it would eviscerate *Rooker-Feldman* and decay its federalist underpinnings.

2. *Plaintiff does not complain of injury caused by the state court judgment.*

The Trust's alleged injury stems from the defendants' conduct. The Complaint echoes many of the allegations against defendants in the New Jersey Litigation.[69] It asks the Court to rule against defendants, not to evaluate the state court's refusal to do so. In the Third Circuit, such complaints do not fulfill the second prong, even when they seek to deny a state court's legal conclusion or to make compliance with its judgment impossible.[70]

---

[69] D.I. 36, at pp. 19-20.

[70] *W. Mining*, 615 F.3d at 167; *In re Philadelphia Entm't*, 879 F.3d at 500.

3. *The state court rendered these judgments before the federal suit was filed.*

New Jersey entered the Final Judgment on November 22, 2017. This case was filed on June 14, 2018.

4. *The plaintiff does not ask this Court to review and reject the state judgment.*

Appellate review consists of reviewing the proceedings of a lower "tribunal to determine whether it reached its result in accordance with law."[71] This differs from re-litigation, where "a party attempts to litigate in federal court a matter previously litigated in state court."[72] *Rooker-Feldman* is concerned with the former, not the latter. Even when such an attempt requires the federal court to reach a contradicting legal conclusion or makes compliance with the state court impossible, *Rooker Feldman* does not keep federal courts from exercising their subject-matter jurisdiction.[73] Here, the Trust is not "contending that the state-court decisions were incorrect."[74] It merely asserts that the Bankruptcy Court is fit to determine the size of the bankruptcy estate.

Thus, the *Rooker-Feldman* doctrine does not require abstention.

## CONCLUSION

For the reasons above, the Court will deny the Motion in its entirety.  An order will be entered.

---

[71] *W. Mining*, 615 F.3d at 169 (quotations and citation omitted).

[72] *Id. See also Exxon*, 544 U.S. at 125 S. Ct. 1527.

[73] *Id.*

[74] *W. Mining*, 615 at 172; D.I. 42, at pp. 44-45.