# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE



**CHRISTOPHER S. SONTCHI**
**CHIEF JUDGE**

**824 N. MARKET STREET**
**WILMINGTON, DELAWARE**
**(302) 252-2888**

February 8, 2021

**VIA CM/ECF**

Brian E. Farnan
Michael J. Farnan
Farnan LLP
919 North Market Street
12th Floor
Wilmington, DE 19801
   -and-
J. Christopher Shore
Thomas MacWright
WHITE & CASE LLP
1221 Avenue of the Americas
New York, New York 10020

Adam G. Landis
Matthew B. McGuire
Landis Rath & Cobb LLP
919 Market Street
Suite 1800
Wilmington, DE 19801
   -and-
John J. Kuster
Jessica C. Knowles Boelter
Sidley Austin LLP
One South Dearborn Street
Chicago, Illinois 60603

      RE:    Maxus Energy Corporation, et al., 16-11501
               Maxus Liquidating Trust v. YPF, et al., 18-50489

Dear Counsel,

      Before the Court is a discovery dispute[1] between (i) the Maxus Liquidating Trust, the plaintiff (the "Trust"), and (ii) defendants YPF S.A., YPF International S.A., YPF Holdings, Inc. and CLH Holdings, Inc. (collectively, "YPF"). The main question is whether a confidential memorandum that was sent by YPF's counsel to a YPF employee who served as a director and subsequently officer of YPF's subsidiary, Maxus, must be produced. Based on the Court's *in camera* review of the document, the Court finds that the memorandum was subject to the attorney client privilege of YPF and that the privilege was waived because the employee was a director and, ultimately, officer of Maxus. While

---

[1] Adv. D.I. 275, 279. 282, 288, and 295 (each a "Letter," and collectively, the "Letters").

case law might support a finding that YPF's privilege was preserved, in this case, based on the content of the communication and the obviously adverse positions of YPF and Maxus at the time, YPF's decision to appoint its employee as a director and officer of Maxus waived the privilege. Thus, the memorandum must be produced and the attempt to claw back its production is moot.

This adversary action was commenced by the Trust on June 18, 2018.[2] In the last 2 ½ years, the defendants have pursued numerous motions and interlocutory appeals. Also, extensive discovery has occurred. Relevant to the current dispute, on June 23, 2020, the Court issued its Opinion[3] and Order[4] regarding a discovery dispute in this adversary proceeding ("Opinion" and "Order"). In that Opinion, the Court rejected the "two-hat" basis for withholding production of documents and communications based on privilege claimed by YPF. More specifically, the Court held that YPF had failed to establish that YPF employees that were simultaneously acting as employees of its subsidiary, Maxus, were nonetheless receiving privileged communications (many sent to their Maxus email addresses) solely in their capacity as employees of YPF. Through its Order, the Court required the production of the "two-hat" documents. After the Court issued its Opinion and Order, the Court entered an *Amended Case Management Plan and Scheduling Order Scope of Discovery* ("Case Scheduling Order"),[5] pursuant to which the current dispute now arises.

Following issuance of the Opinion and Order, YPF produced approximately 7,000 documents to the Trust. Included in the production was an executive summary of a much more extensive memorandum that was prepared by YPF's outside counsel, Chadbourne & Park LLP and shared via email with a director of Maxus. The Trust requested that YPF produce a complete copy of the underlying memorandum. In response, YPF sent a series of three "claw back" requests pursuant to the Case Scheduling Order.

Included in the claw-back requests were two Spanish-language memoranda prepared by Chadbourne & Park:

a) an executive summary of a memorandum dated September 4, 2012 prepared by attorneys from Chadbourne & Park and addressed to Rodrigo Cuesta, Eduardo Pigretti and Mariano José Oteiza of YPF[6] ("Executive Summary"); and

---

[2] Adv. D.I. 1.

[3] *Maxus Liq. Trust v. YPF S.A. (In re Maxus Energy Corp.)*, 617 B.R. 806 (Bankr. D. Del. 2020).

[4] Adv. D.I. 228.

[5] Adv. D.I. 230.

[6] YPF_MAXUS_PRIV_0000002149.

b) a memorandum dated February 24, 2013 prepared by the same Chadbourne & Park lawyers and addressed to the same three YPF recipients shown on the Executive Summary but adding as well as Francisco García Tobar[7] ("Jazz 2013 Memo," and, with the Executive Summary, the "Memos").

Mr. Tobar was Controller for International Business for YPF, S.A. from December 14, 2012 through August 1, 2013, during which time he received the Jazz 2013 Memo. While Mr. Tobar served as a director of Maxus and Tierra from December 2012 through July 2014 (again, during which time he received the Jazz 2013 Memo), it was not until August 1, 2013 (after he received the Jazz 2013 Memo) that Mr. Tobar became Chief Financial Officer of YPFH, Maxus and Tierra. Thus, Mr. Tobar was a **director** of Maxus as of December 14, 2012, and the cover correspondence of the copies of the Memos YPF produced reflects that Mr. Tobar received the Memos from Chadbourne & Park on February 24, 2013, and forwarded them to Fernando Giliberti (then YPF's director of strategy and business development) on February 26, 2013.[8] Mr. Tobar thereafter became an **officer** of Maxus (CFO) on August 1, 2013, and continued to receive transmissions of Chadbourne's Project Jazz[9] related legal advice after that date.

In the Court's previous Opinion relating to "two-hat discovery," the issue involved "shared" employees, which included "the Debtors' management, including their ex-Chief Executive Officers, Chief Financial Officers, treasurer, comptroller, Human Resources director, and Debtors' successive general counsels."[10] YPF argues that the Court's previous ruling is not controlling because Mr. Tobar was not a shared employee, rather, at the time, he was a YPF employee and a Maxus director, not a Maxus employee. The Court finds that YPF's argument is based on a distinction without a difference. The point is that privileged information was shared with a person that was acting (either as an employee or a director) on behalf of separate entities. As such, it is YPF's burden to establish that even though Mr. Tobar was a director of Maxus he was only receiving the privileged information in his capacity as a YPF employee. This they have not done and, based upon the Court's *in camera* review of the Memos, this they cannot do.[11] Because

---

[7] YPF_MAXUS_PRIV_0000002141.

[8] YPF_MAXUS_PRIV_0000002140.

[9] "Project Jazz" was the legal and operational "Strategy" adopted by YPF that involved installation of "independent directors" at Maxus.

[10] *Maxus Energy Corp.*, 617 B.R. at 817 (emphasis added).

[11] As the Court finds there is no difference between and employee and a director in this instance it need not address the effect, if any, of Mr. Tobar's subsequent position with Maxus as an employee.

3

the Memos are subject to production under the Court's previous Opinion and Order the claw back requests are moot.[12]

The other question, which was raised by supplemental letters,[13] involves the deposition of Roberto Fernando Segovia who served as an employee and officer of one or more of the debtors from 2011 through the effective date of the plan in July 2017. Importantly, after the effective date, Mr. Segovia was hired by YPF and currently works for YPF in Bolivia. At his deposition he was represented by YPF's counsel in this matter. At Mr. Segovia's deposition, he was instructed by counsel to YPF not to answer questions regarding certain substantive matters related to his employment by the debtors as well as his deposition preparation. As a former employee of the debtors, Mr. Segovia cannot be prevented from testifying by YPF as to any matters related to his employment by the debtors. Nor can counsel for YPF shield Mr. Segovia's deposition preparation related to his employment by the debtors. What is protected - and all that is protected - is any information about Mr. Segovia's current employment with YPF and any deposition preparation related solely to his current status as an employee of YPF.

The parties are directed to consult upon an agreeable order and to submit it under certification of counsel. If the parties cannot reach an agreement, they may submit dueling orders under certification of counsel.

Sincerely,

Christopher S. Sontchi, Chief Judge
United States Bankruptcy Court

---

[12] The claw back requests are, in effect, a motion for reconsideration of the Court's Opinion based on a change in interpretation of the Court's decision. Neither are legitimate. Obviously, a motion for reconsideration requires an actual motion and would be untimely in any event. Also, a claw back for inadvertent production cannot be based on a change of interpretation. A clever argument contrived after the fact is not sufficient to constitute inadvertent production.

[13] Adv. D.I. 288 and 295.