# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE



**CHRISTOPHER S. SONTCHI**  
**CHIEF JUDGE**

**824 N. MARKET STREET**  
**WILMINGTON, DELAWARE**  
**(302) 252-2888**

March 11, 2021

**VIA CM/ECF**

Brian E. Farnan  
Michael J. Farnan  
FARNAN LLP  
919 North Market Street  
12th Floor  
Wilmington, DE  19801  
    -and-  
J. Christopher Shore  
Matthew L. Nicholson  
WHITE & CASE LLP  
1221 Avenue of the Americas  
New York, New York 10020

Adam G. Landis  
Matthew B. McGuire  
LANDIS RATH & COBB LLP  
919 Market Street  
Suite 1800  
Wilmington, DE  19801  
    -and-  
John J. Kuster  
Martin B. Jackson  
Andrew P. Propps  
SIDLEY AUSTIN LLP  
787 Seventh Avenue  
New York, NY  10019

    RE:    Maxus Energy Corporation, et al., 16-11501  
             Maxus Liquidating Trust v. YPF, S.A., et al., 18-50489

Dear Counsel,

    Before the Court is an on-going discovery dispute between (i) the Maxus Liquidating Trust, the plaintiff (the "Trust"), and (ii) defendants YPF S.A., YPF International S.A., YPF Holdings, Inc. and CLH Holdings, Inc. (collectively, "YPF"). The question is whether three confidential documents protected by attorney-client privilege must be produced by YPF to the Trust. This is a follow-up to the Court's letters of February 8, 2021, and March 8, 2021, in which the Court held that two documents, defined as the "Executive Summary" and the "Jazz 2013 Memo," collectively, the "Produced Documents," must be produced to the Trust as the attorney-client privilege was waived because a YPF employee to which the Produced Documents were given was also a

director and, ultimately, an officer of Maxus.[1]  This letter deals with the related issue of whether a third document (the "Memorandum"), which is referenced in the Executive Summary mentioned above, but was *not* shared with a Maxus employee or director must, nonetheless, be produced because the sharing of the Produced Documents with Maxus's director and officer resulted in a subject matter waiver of the attorney-client privilege as to the issues discussed in the Memorandum.  The Court has reviewed the Produced Documents and Memorandum *in camera* and finds that a subject matter waiver has, indeed, occurred and the Memorandum must be produced.

In *Citadel Holding Corp. v. Roven, t*he Delaware Supreme Court analyzed a similar situation under the "rule of partial disclosure."

> It is clear that the disclosure of even a part of the contents of a privileged communication surrenders the privilege as to those communications. However, such a waiver does not open to discovery all communications between attorney and client. The so-called "rule of partial disclosure" limits the waiver to the subject matter of the disclosed communication. The exact extent of the disclosure is guided by the purposes behind the rule: fairness and discouraging use of the attorney-client privilege as a litigation weapon.[2]

*Doe 1 v. Baylor University*,[3] is also instructive on this point.  In *Baylor University*, female students who were sexually assaulted while enrolled as students at the university brought an action against the university, asserting claims that the university's policy of discouraging them from reporting that they had been sexually assaulted, and failing to investigate adequately each of the assaults created a harassing education environment that deprived them of a normal college education.  The students moved to compel the production of work product related to an investigation and the implementation of the university's reforms.  The university had hired a law firm to conduct an independent and external review of the university's institutional responses and compliance issues.

---

[1] The Court issued a letter, D.I. 333, and an order, D.I. 340, setting forth its previous ruling.  On March 7, 2021, YPF filed a motion for leave to file an interlocutory appeal from the Court's decision. D.I. 358.  On March 8, 2021, pursuant to Del. Bankr. LR 8003-2, the Court issued a revised letter to clarify and to supplement its ruling of February 8, 2021. D.I. 359.

[2] *Citadel Holding Corp. v. Roven*, 603 A.2d 818, 825 (Del. 1992) (citations omitted) (allowing for discovery related to very "nub of the claim" which was whether attorneys' fees and expenses were reasonable and in compliance with the parties' agreement).  *See also E. Commer. Realty Corp. v. Fusco*, C.A. No. 95C-OC-92, 1987 Del. Super. LEXIS 1110, at *7 (Del. Super. Ct. Apr. 13, 1987) ("It is the rule where a client discloses a communication protected by the attorney/client privilege, he waives the privilege with respect to matters that directly relate to the subject matter encompassed by the disclosed communication.")

[3] *Doe 1 v. Baylor University*, 320 F.R.D. 430 (W.D. Tex 2017).  *Cf. Welded Construction, L.P. v. The Williams Companies, Inc.*, Case No. 19-50194 (CSS), Memorandum Order at ¶¶18-20 (Bankr. D. Del. Feb. 15, 2021) (applying *Baylor University* in finding waiver of attorney-client privilege).

The *Baylor University* court found that the university had waived the attorney-client privilege by making repeated disclosures regarding the law firm's investigation. Having so decided, the court turned to the consideration of the scope of the waiver. The court held that the university has waived attorney-client privilege with respect to the whole of its communications with the law firm regarding the investigation by disclosing a subset of information as it would not be fair to the parties seeking production to allow the university to protect the remaining undisclosed details on the issue.[4]

Here, the Executive Summary and the Memorandum are inextricably linked. Indeed, the first 26 pages of the Memorandum are entitled "Executive Summary" and are virtually, if not entirely, *word-for-word* the text of the Executive Summary for which the Court has ruled the attorney-client privilege was waived. The reminder of the 111-page Memorandum provides *an extraordinarily detailed and thorough analysis of the precise facts and issues disclosed in the Executive Summary*, including a 20-page analysis of potential fraudulent conveyance claims and a 9-page analysis of piercing the corporate veil/alter ego claims against YPF, which, combined, are the crux of the complaint in this case.[5] Considering what has already been produced due to the waiver of the attorney-client privilege, requiring production of the Memorandum is squarely in-line with *Baylor University* and the other cases requiring production of documents under the partial disclosure rule.

YPF's argument to the contrary is unavailing. First, YPF argues, in effect, that since it was sought an interlocutory appeal of the Court's decision requiring production of the Produced Documents, requiring production of the Memorandum is premature. While it is true that the waiver of attorney-client privilege with regard to the Produced Documents is a condition precedent to requiring production of the Memorandum, it does not follow that the Court should indefinitely stay production pending the decision on an appeal that may not even be allowed. In addition, if a higher court reverses this Court's decision regarding the Produced Documents then this Court can authorize YPF to claw-back production of the Memorandum.

Second, YPF argues "what's good for the goose is good for the gander" and cites to this Court's previous opinion in this case in which the Court held that the Trust had not waived attorney-client privilege by mentioning a 196-page report twice in a 485-

---

[4] *Baylor University* at 440. *See also Net2Phone, Inc. v. Ebay, Inc.*, No. 06-2469, 2008 WL 8183817, at *11–13 (D.N.J. June 26, 2008) (privilege waiver found where plaintiff disclosed and disseminated conclusions of report); *Ryan v. Gifford*, No. 2213-CC, 2007 WL 4259557, at *3 (Del. Ch. Nov. 30, 2007) (presentation by counsel for special committee to complete board effected waiver as to all communications between counsel and special committee).

[5] Appendix A to the Memorandum is a 35-page overview of U.S. bankruptcy law and Exhibit B is a more specific, 10-page analysis of the potential discharge of environmental claims against Maxus under the Bankruptcy Code.

paragragh complaint.[6]  This situation is entirely different.  With regard to the previous opinion, "[t]he only mention of substance [from the report] is a conclusion, which is the same as the alleged counts in the Complaint. As a result, there is nothing to be gleaned from the reference in the Complaint that is not subject of the Complaint in and of itself – there is no rationale, or facts, or anything other than a conclusion."[7]  The Executive Summary, however, is taken virtually word for word from the Memorandum and the Memorandum discusses in detail the facts and issues raised in the Executive Summary.  Moreover, YPF argues that this instance is somehow more favorable to YPF than with regard to the expert report because the contents of the Produced Documents and Memorandum were not publicly disclosed for YPF's advantage, whereas the Trust referenced the report in its publicly filed complaint.  The issue is not whether the disclosure of attorney-client privilege was or was not public.  The issue is the extent of the disclosure and whether fairness would allow for the document to remain privileged.  The disclosure in connection with the Produced Documents may not have been public, but it was extensive and purposeful, i.e., not inadvertent.  YPF chose to share the Produced Documents with one or more Maxus fiduciaries, triggering the waiver of attorney-client privilege.  This is a very different situation from the Court's previous decision and the facts and circumstances here compel a different result.  Fairness dictates that, having waived attorney-client privilege as to the Executive Summary, the entire Memorandum from which the Executive Summary was lifted virtually word for word must be produced.

        Thus, the Court will require production of the Memorandum (including the appendices) to the Trust.  The Court directs the parties to submit an order under certification of counsel.  If the parties cannot agree they may submit dueling orders under certification of counsel.

Sincerely,

Christopher S. Sontchi
Chief United States Bankruptcy Judge

CSS/cas

---

[6] *Maxus Liquidating Trust v. YPF S.A., et al.*, 617 B.R. 806, 818-20 (Bankr. D. Del. 2020).

[7] *Id.* at 820.