UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>MAXUS ENERGY CORPORATION, et al.[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 16-11501 (CSS)<br><br>(Jointly Administered) |

**NOTIFICATION AND CORRECTION REGARDING
PROOF OF CLAIM OF THE UNITED STATES OF AMERICA, ON BEHALF OF THE
UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, THE UNITED
STATES DEPARTMENT OF COMMERCE AND THE
UNITED STATES DEPARTMENT OF THE INTERIOR**

1. On December 15, 2016, the United States filed proofs of claim, on behalf of the United States Environmental Protection Agency ("EPA"), the United States Department of Commerce acting through the National Oceanic and Atmospheric Administration ("NOAA"), and the United States Department of the Interior acting through the Fish and Wildlife Service ("DOI"), asserting nearly identical claims against Debtors Tierra Solutions, Inc. ("Tierra") and Maxus Energy Corporation ("Maxus") (collectively the "Debtors"). These two claims - Claims 474 and 476 - are attached to the Declaration of Alice Yeh ("Yeh Decl.") at Exhibits A and B and are collectively referred to herein as the Proof of Claim. The Proof of Claim included, among other things, claims against the Debtors related to their liability under Section 107(a) of the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. § 9607(a), at the Diamond Alkali Superfund Site ("Site") in New Jersey, including the

---

[1] The Debtors, along with the last four digits of each Debtor's federal tax identification number, are: Maxus Energy Corporation (1531), Tierra Solutions, Inc. (0498), Maxus International Energy Company (7260), Maxus (U.S.) Exploration Company (2439), and Gateway Coal Company (7425. The address of each of the Debtors is 10333 Richmond Avenue, Suite 1050, Houston, Texas 77042.

Lower Passaic River Study Area ("LPRSA"), the Newark Bay Study Area, and the Lister Avenue Property. Yeh Decl. ¶ 2.

2. Paragraph 25 of the Proof of Claim asserted a claim in the amount of $9,205 for post-petition oversight costs incurred by EPA in connection with a 1990 consent decree related to the Lister Avenue Property.

3. Paragraph 39 of the Proof of Claim stated:

> As of August 31, 2015, EPA has incurred over $42.6 million investigating the Lower Passaic River Study Area and selecting a remedy for the Lower 8.3 miles. This amount does not include oversight costs that EPA has billed to parties performing work under the above referred judicial and administrative settlements including the 2016 Remedial Design AOC and 17.4 Mile AOC. Accordingly, the United States asserts a general unsecured claim against Tierra and Maxus of $42.6 million for unreimbursed past response [costs] related to the Diamond Alkali Superfund Site.

4. The past cost figure of $42.6 million set forth in Paragraph 39 of the Proof of Claim was a rounding down from an amount calculated to be $42,680,806.99. In calculating this $42,680,806.99 figure, EPA tallied its response costs incurred since 2000 in connection with the LPRSA. EPA did not include response costs that it had billed as oversight costs related to the LPRSA under various settlement agreements that had been or were expected to be paid by the parties to those agreements or by other persons. As such, recoveries of these oversight costs were not deducted from the claim amount. Yeh Decl. ¶ 5.

5. Paragraphs 29 and 30 of the Proof of Claim asserted a total claim of $1.545 billion for the estimated future costs of the remedy selected for Operable Unit 2 of the Site and the remedial design for that remedy. Paragraph 33 of the Proof of Claim asserted a claim in the range of $22 million to $4.4 billion for the estimated cost of the remedy for the Newark Bay Study Area. Paragraph 35 of the Proof of Claim asserted a claim in the range of $10 million to

$400 million for the estimated cost of the remedy for Operable Unit 4 (Lower Passaic River Study Area).

6. The Proof of Claim included a Summary of Claims Table that specified the United States' claim on behalf of EPA for the Site. These claims included: Past Response Costs in the amount of $42,609,205; and Future Response Costs in the range of $1,577,000,000 to $6,345,000,000. Thus, the United States' total combined claim for EPA's past and future response costs at the Site ranged from $1,619,609,205 to $6,387,609,205.[2]

7. On May 22, 2017, the Court issued an order confirming the Amended Chapter 11 Plan of Liquidation Proposed by Maxus Energy Corporation, *et al.* and the Official Committee of Unsecured Creditors dated May 20, 2017 ("Plan"). Under the Plan, the United States, on behalf of EPA, DOI and NOAA, has an allowed Class 4 claim relate to the Site in the amount of $145 million and an allowed Class 5 claim related to the Site in the amount of not less than $61 million. Plan Article I.A.208 and I.A.209. The Plan also sets forth a waterfall for the payment of monies recovered by the Liquidating Trust, Plan Article VI.D, as well as for the use of funds allocated under the Liquidating Trust waterfall to the Environmental Response/Restoration Trust. Plan Article IX.B.

8. We are hereby notifying the Court and the parties that certain monies received by EPA in connection with the Site prior to the filing of the Proof of Claim were not accounted for in the past cost figure and/or the future cost estimates in the Proof of Claim. These recoveries – in the amount of $33,915,327.57 - were distributions made to EPA in connection with claims that

---

[2] The Proof of Claim also included a claim on behalf of DOI and NOAA in the amount of at least $5,520,300,051 with respect to natural resource damages and assessment costs at the Site, Proof of Claim ¶¶ 40-45, as well as a claim on behalf of EPA in the amount of $33,740,903 with respect to the Milwaukee Solvay Superfund Site, Id. at ¶¶ 46-58.

EPA had filed against debtors in several unrelated bankruptcy proceedings asserting that the debtors were liable under CERCLA in connection with the Site. Yeh Decl. ¶ 8. These recoveries should have been deducted from the United States' past cost figure and/or the future cost estimates in the Proof of Claim.

9. As a result of the failure to deduct these costs, the United States' total combined claim of past and future response costs for the Site was inadvertently overstated by $33,915,327.57. Id. ¶ 9. In addition, EPA has determined that the cost figures used to calculate the past cost claim in the Proof of Claim were incorrect for the costs incurred during the period from September 2, 2010 to June 30, 2011. Id. The costs for that period were inadvertently overstated by $1,485,649.52. Id. Considering both the bankruptcy recoveries and the incorrect cost calculation discussed above, which total $35,400,977.09, the corrected range of the United States' claim for combined past response costs (response costs through August 31, 2015 and recoveries through December 15, 2016) and future response cost at the Site, is $1,584,208,227.91 to $6,352,208,227.91. Id. The United States regrets these errors in its Proof of Claim.

10. In addition to the $33,915,327.57 in bankruptcy recoveries discussed above, EPA received an additional $467,768.01 in bankruptcy recoveries related to the Site prior to December 15, 2016 that were either (a) deducted from EPA's past cost claim prior to the filing of the Proof of Claim or (b) used or expected to be used as a credit against EPA oversight costs which, as discussed above, were not included in either the past cost claim or the future cost estimates. Yeh Decl. ¶ 10. As a result, these additional recoveries do not need to be deducted from the claim set forth in the Proof of Claim.

11.     The information in Paragraphs 1-10 above relating to EPA's past costs as of August 15, 2015, as well as EPA's recoveries through December 15, 2016, is provided to the Court and the parties as notification of an omission from and correction to the United States' Proof of Claim. In addition, the United States sets forth below certain information concerning costs incurred and recoveries received since the dates referred to above, as well as information concerning the cost estimate for the OU4 remedy, based on a recently approved feasibility study report. This additional information is being provided to more fully inform the Court and the parties concerning this matter.

12.     From August 31, 2015 to December 31, 2019, EPA incurred an additional $10,537,004.40 in costs (other than oversight costs being paid by parties to various settlement agreements). Yeh Decl. ¶ 11.[3] Since December 15, 2016, EPA has recovered an additional $2,228,934.44 in bankruptcy recoveries related to the Site (50% of which have been or will be applied to oversight costs) as well as $4,209,000 in a cost recovery settlement related to the Site (50% of which have been or will be applied to oversight costs), for a total of $6,437,934.44. Id. Finally, EPA has revised its estimate of the future cost of the remedy for Operable Unit 4 based on the Feasibility Study Report for the upper nine miles of the LPRSA that EPA conditionally approved on December 11, 2020. Id. EPA is currently evaluating three remedial alternatives that would achieve the remedial action objectives for an interim remedy identified in the Feasibility Study Report. These three alternatives are estimated to cost $420 million, $441 million, and $468 million, respectively. The Feasibility Study also includes a fourth alternative that would not achieve the remedial action objectives and a "no action" alternative. The range of

---

[3] The $9,205 amount claimed with respect to the Lister Avenue Property has been reimbursed by Occidental Chemical Corporation.

costs for the OU4 remedy set forth in the Proof of Claim was $10 million to $400 million. In view of the information in the Feasibility Study, EPA's current view of the range is from $420 million to $468 million. (This does not include any additional work that may be needed following completion of the OU4 interim remedy, if one is selected.) EPA is expected to propose a preferred alternative for the OU4 interim remedy in the near future. Id.

13.     In view of the information in Paragraph 12 above, if the United States' claims on behalf of EPA related to the Site were being filed today, as opposed to in December 2016, there would be an increase in the total of the past and future costs for the Site that would be well in excess of the $35,400,977.09 figure discussed above.

14.     As noted above, the Proof of Claim also included claims on behalf of the federal natural resource trustees, NOAA and DOI, for natural resource damages and assessment costs related to the Site. Those claims were in the amount of: at least $5.5 billion for natural resource damages; $300,051 for NOAA unreimbursed assessment costs as of July 9, 2016 (DOI did not assert a claim for past assessment costs); and at least $10 million for future NOAA assessment costs and at least $10 million for future DOI assessment costs. After recent investigations of the matter, DOI and NOAA reported as follows. With respect to NOAA, the $300,051 claim for past unreimbursed assessment costs is equal to or less than the amount of unreimbursed assessment costs when past assessment costs as of July 9, 2016 and recoveries though December 15, 2016 are taken into account. Declaration of Reyhan Mehran ¶ 3.[4] As noted above, DOI did

---

[4] At the time of the filing of the Proof of Claim, DOI and NOAA had received $702,655.35 in payments related to the Diamond Alkali Site in connection with In re Lyondell Chemical Co., No. 09-10023(REG) (Bankr. S.D.N.Y.). These payments were made with respect to a joint allowed claim held by DOI and NOAA. All of the funds were paid into a DOI account. DOI and NOAA have not yet determined how the funds should be allocated between DOI and NOAA, and DOI has not paid any portion of the funds into NOAA accounts. As a result, the

not assert a claim for past assessment costs. DOI has determined that its bankruptcy recoveries in connection with the Site, as of December 15, 2016, exceeded its past assessment costs by $434,312.98. Declaration of Clay Stern ¶ 4.

15. The undersigned DOJ counsel are available to respond to any questions the Court may have concerning this matter.

          Respectfully submitted,

          Nat Douglas
          Deputy Section Chief
          Environmental Enforcement Section
          Environment and Natural Resources Division

          /s/ David L. Gordon
          David L. Gordon
          Senior Counsel

          /s/ Donald G. Frankel
          Donald G. Frankel
          Senior Counsel

          Environmental Enforcement Section
          Environment and Natural Resources Division
          U.S. Department of Justice
          P.O. Box 7611
          Washington, D.C. 20044-7611
          david.l.gordon@usdoj.gov
          202-514-3659
          donald.frankel@usdoj.gov
          617-748-3512

---

entire $702,655.35 amount is being treated as funds received by DOI. Declaration of Clay Stern ¶ 4 n. 2.

## CERTIFICATE OF SERVICE

I certify that today, March 18, 2021, I electronically filed foregoing Notification and Correction, as well as the three declarations in support (Stern, Yeh and Mehran) using the CM/ECF system. Notice of this filing will be sent to counsel of record in this matter through the Court's CM/ECF system.

*/s/ Donald G. Frankel*
DONALD G. FRANKEL
