UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| _____ ) | Chapter 11 |
| ) | |
| In re: ) | Case No. 16-11501 (CSS) |
| ) | |
| MAXUS ENERGY CORPORATION, et al., ) | (Jointly Administered) |
| ) | |
| Debtors. ) | |
| _____ ) | |

### DECLARATION OF ALICE YEH

1. I am a Remedial Project Manager in the Superfund and Emergency Management Division of Region 2 of the United States Environmental Protection Agency ("EPA"). Since 2003, I have been a Remedial Project Manager for the Diamond Alkali Superfund Site ("Site"). The Site includes four operable units: the properties at 80 and 120 Lister Avenue in Newark, New Jersey, also referred to collectively as the Lister Avenue Property, are Operable Unit 1; the lower 8.3 miles of the Lower Passaic River stretching from the river's confluence with Newark Bay to River Mile 8.3 near the border between the City of Newark and Belleville Township, New Jersey, is Operable Unit 2; the Newark Bay Study Area, which includes Newark Bay and portions of the Hackensack River, the Arthur Kill, and the Kill van Kull is Operable Unit 3; and the Lower Passaic River Study Area ("LPRSA") is the 17.4 mile stretch of the Passaic River from its confluence with Newark Bay to the Dundee Dam (Operable Unit 4 includes the lower 8.3 miles of the Lower Passaic River, Operable Unit 2, as well as an additional 9.1-mile stretch of the Lower Passaic River to Dundee Dam).

2. On December 15, 2016, the United States filed proofs of claim, on behalf of the EPA, the United States Department of Commerce acting through the National Oceanic and Atmospheric Administration, and the United States Department of the Interior acting through the

Fish and Wildlife Service, asserting nearly identical claims against Debtors Tierra Solutions, Inc. ("Tierra") and Maxus Energy Corporation ("Maxus") (collectively the "Debtors"). These two claims - Claims 474 and 476 - are attached hereto at Exhibits A and B and are collectively referred to herein as the Proof of Claim. The Proof of Claim included, among other things, claims against the Debtors related to their liability under Section 107(a) of the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.SC. § 9607(a), at the Diamond Alkali Superfund Site ("Site") in New Jersey, including the Lower Passaic River Study Area, the Newark Bay Study Area, and the Lister Avenue Property.

3. Paragraph 25 of the Proof of Claim asserted a claim in the amount of $9,205 for post-petition oversight costs incurred by EPA in connection with a 1990 consent decree related to the Lister Avenue Property.

4. Paragraph 39 of the Proof of Claim stated:

> As of August 31, 2015, EPA has incurred over $42.6 million investigating the Lower Passaic River Study Area and selecting a remedy for the Lower 8.3 miles. This amount does not include oversight costs that EPA has billed to parties performing work under the above referred judicial and administrative settlements including the 2016 Remedial Design AOC and 17.4 Mile AOC. Accordingly, the United States asserts a general unsecured claim against Tierra and Maxus of $42.6 million for unreimbursed past response [costs] related to the Diamond Alkali Superfund Site.

5. The past cost figure of $42.6 million set forth in Paragraph 39 of the Proof of Claim was a rounding down of an amount calculated to be $42,680,806.99. In calculating this $42,680,806.99 figure, EPA tallied its response costs incurred since 2000 in connection with the LPRSA. EPA did not include response costs that it had billed as oversight costs related to the LPRSA under various settlement agreements that had been or were expected to be paid by the parties to those agreements or by other persons. As such, recoveries of these oversight costs were not deducted from the claim amount.

6. Paragraphs 29 and 30 of the Proof of Claim asserted a total claim of $1.545 billion for the estimated future costs for the remedy selected for Operable Unit 2 of the Site and for the remedial design for that remedy. Paragraph 33 of the Proof of Claim asserted a claim in the range of $22 million to $4.4 billion for the estimated cost of the remedy for the Newark Bay Study Area. Paragraph 35 of the Proof of Claim asserted a claim in the range of $10 million to $400 million for the estimated cost of the remedy for Operable Unit 4 (Lower Passaic River Study Area). In estimating the cost of these future remedies, EPA did not include EPA oversight costs.

7. The Proof of Claim included a Summary of Claims Table that summarized the United States' claim on behalf of EPA for the Site as Past Response Costs in the amount of $42,609,205 and Future Response Costs in the range of $1,577,000,000 to $6,345,000,000. Thus, the United States' total combined claim for EPA's past and future response costs at the Site ranged from $1,619,609,205 to $6,387,609,205.

8. As of December 15, 2016, the date of the filing of the Proof of Claim, EPA had recovered $33,915,327.57 in connection with bankruptcy proceedings related to the Site that were not properly accounted for in the Proof of Claim. These recoveries were distributions made to EPA in connection with claims that EPA had filed against debtors in several bankruptcy proceedings asserting that the debtors were liable under CERCLA in connection with the Site. These proceedings and the amounts recovered on or before December 15, 2016 are shown in the table below:

| Bankruptcy Case | Amount Recovered Prior to December 15, 2016 |
|---|---|
| In re Marcal Paper Mills, Inc., No. 06-21886 (Banrk. D.N.J.) | $1,080,000.00 |
| In re Chemtura Corp., No. 09-11233(REG) (Bankr. S.D.N.Y.) | $7,327,850.00 |
| In re Lyondell Chemical Co., No. 09-10023(REG) (Bankr. S.D.N.Y.)[1] | $22,189,931.33 |
| In re Motors Liquidation Co., No. 09-50026 (REG) (Banrk. S.D.N.Y.) | $3,317,546.24 |
| TOTAL | $33,915,327.57 |

9.     The $33,915,327.57 amount discussed above was inadvertently not deducted from EPA's past or future cost claims for the Site in the Proof of Claim. As a result, EPA's total combined past and future cost claim for the Site was overstated by $33,915,327.57. In addition, EPA has determined that the cost figures used to calculate the past cost claim in the Proof of Claim were incorrect for the costs incurred during the period from September 2, 2010 to June 30, 2011. The costs for that period were overstated by $1,485,649.52. Considering both the bankruptcy recoveries and the incorrect cost calculation discussed above, which total $35,400,977.09, the corrected range of the United States' claim for combined past response costs

---

[1] An additional amount of $400,000 was recovered in connection with the Lyondell bankruptcy prior to December 15, 2016, as discussed in Paragraph 10 below.

(response costs through August 31, 2015 and recoveries through December 15, 2016) and future response cost at the Site is $1,584,208,227.91 to $6,352,208,227.91.

10. In addition to the bankruptcy recoveries discussed above, EPA received additional bankruptcy recoveries related to the Site prior to December 15, 2016 that were properly accounted for at the time of the filing of the Proof of Claim. These recoveries include a $67,768.01 recovery for the Site in connection with In re Hercules Chemical Co., No. 08-27822-MS (Bankr. D.N.J.) and an additional $400,000 recovery for the Site in connection with In re Lyondell Chemical Co. No. 09-10023(REG) (Bankr. S.D.N.Y.). With respect to the $67,768.01 recovery in the Hercules bankruptcy, the Settlement Agreement in that proceeding, attached hereto as Exhibit C, specifically set forth how monies recovered in that proceeding would be allocated. The Settlement Agreement provided that (a) 60% of the amount recovered ($40,660.81) would be applied to reduce the liability of the Potentially Responsible Parties at the Site (other than the debtor) for unreimbursed response costs incurred by EPA, (b) 10% of the funds recovered ($6,776.80) would be applied as a credit against the cost of overseeing the remedial action feasibility study being performed by the Cooperating Parties Group ("CPG") for the LPRSA, and (c) 30% of the recovery ($20,330.40) would be applied as a credit toward oversight costs incurred by EPA in connection with a consent decree for remedial design and/or remedial action for the LPRSA or, if no such consent decree were ultimately entered into, EPA would apply this 30% to its unreimbursed past response costs. Settlement Agreement ¶ 2. EPA deducted the $40,660.81 portion of the Hercules recovery from its past cost claim. EPA did not deduct the $6,776.80 or the $20,330.40 portions of the Hercules recovery, or the $400,000 additional Lyondell recovery, from its past cost claim or its future cost estimates. The $6,776.80 portion of the Hercules payment and the $400,000 Lyondell payment were credited by EPA to

oversight costs that would otherwise have been paid by the CPG pursuant to an administrative settlement agreement and order on consent prior to the filing of the Proof of Claim. The $20,330.40 amount is expected to be allocated as a credit towards future oversight costs for a remedial action performed under a consent decree for OU2. As discussed above, oversight costs were not included in EPA's past cost claim of $42.6 million or its future cost estimates.

11. From August 31, 2015 to December 31, 2019, EPA incurred an additional $10,537,004.40 in costs in connection with the LPRSA (other than oversight costs being paid by parties to various settlement agreements).[2] Since December 15, 2016, EPA has recovered an additional $2,228,934.44 in bankruptcy recoveries related to the Site (50% of which have been or will be applied to oversight costs) as well as $4,209,000 in a cost recovery settlement related to the Site (50% of which have been or will be applied to oversight costs), for a total of $6,437,934.44. Finally, EPA has revised its estimate of the future cost of the remedy for Operable Unit 4 based on the Feasibility Study Report for the upper nine miles of the LPRSA that EPA conditionally approved on December 11, 2020. EPA is currently evaluating three remedial alternatives that would achieve the remedial action objectives for an interim remedy identified in the Feasibility Study Report. These three alternatives are estimated to cost $420 million, $441 million, and $468 million, respectively. The Feasibility Study also includes a fourth alternative that would not achieve the remedial action objectives and a "no action" alternative. The range of costs for the OU4 remedy set forth in the Proof of Claim was $10 million to $400 million. In view of the information in the Feasibility Study, EPA's current view of the range is from $420 million to $468 million. (This does not include any additional work

---

[2] The $9,205 amount claimed with respect to the Lister Avenue Property has been reimbursed by Occidental Chemical Corporation.

that may be needed following completion of the OU4 interim remedy, if one is selected.) EPA is expected to propose a preferred alternative for the OU4 interim remedy in the near future.

I declare under penalty of perjury that the foregoing is true and correct to the best of my information and belief.

/s/ Alice Yeh        3/16/21<br>Alice Yeh            Date