# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE



**CHRISTOPHER S. SONTCHI**　　　　　　　　　　　　　　　**824 N. MARKET STREET**
**JUDGE**　　　　　　　　　　　　　　　　　　　　　　　　**WILMINGTON, DELAWARE**
　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　**(302) 252-2888**

September 16, 2021

**VIA CM/ECF**

| | |
|---|---|
| Brian E. Farnan | Adam G. Landis |
| Michael J. Farnan | Matthew B. McGuire |
| FARNAN LLP | LANDIS RATH & COBB LLP |
| 919 North Market Street | 919 Market Street |
| 12th Floor | Suite 1800 |
| Wilmington, DE 19801 | Wilmington, DE 19801 |
| -and- | -and- |
| J. Christopher Shore | Jeffrey A. Rosenthal |
| Matthew L. Nichols | Ari D. MacKinnon |
| WHITE & CASE LLP | Mark E. McDonald |
| 1221 Avenue of the Americas | CLEARY GOTTLIEB STEEN |
| New York, New York 10020 | & HAMILTON LLP |
| | One Liberty Plaza |
| | New York, New York 10006 |
| | -and- |
| | John J. Kuster |
| | SIDLEY AUSTIN LLP |
| | 787 Seventh Avenue |
| | New York, NY 10019 |

　　　　RE:　Maxus Energy Corporation, et al., 16-11501
　　　　　　　Maxus Liquidating Trust v. YPF, S.A., et al., 18-50489

Dear Counsel,

　　　　Before me is the YPF Defendants' Motion to Stay And Extend The Deadline For YPF Defendants' Compliance With The August 19, 2021 Discovery Order (D.I. 492) (the "Stay Motion"). On August 19, 2021, I entered the Order Regarding the Court's August

16, 2021 Opinion (D.I. 490) (the "Discovery Order").  Subject to a provision not relevant here, the Discovery Order provided that "[t]he YPF Defendants shall produce to the Trust, within seven business days of entry of this Order, all unredacted documents dated from May 28, 2012 through the Petition Date (June 17, 2016) contained within Categories 10, 11 and 17 of the YPF Defendants' Categorical Privilege Log to the extent previously withheld or produced in redacted form based on Categories 10, 11 and 17."[1]  The 7th business day from entry of the Discovery Order was August 30, 2021.  The YPF Defendants did not produce the documents on August 30th.  Rather, on that day, they filed the Stay Motion.  On September 1, 2021, I convened a status conference in which I set a briefing schedule and set a hearing for September 13th, which was ultimately held on September 14th.  This is my decision on the Stay Motion.

Under the Supreme Court's decision in *Mohawk Industries, Inc. v. Carpenter*, "the collateral order doctrine does not extend to disclosure orders adverse to the attorney-client privilege."[2]  In *Mohawk*, the Supreme Court made a policy decision, rooted in the applicable statues and rules, that delaying review until the entry of final judgment of disclosure orders adverse to the attorney-client privilege would not sufficiently imperil a substantial public interest or some particular value of a high order so as to provide for application of the collateral order doctrine, which would allow an immediate appeal from an interlocutory decision of a court.[3]  The Supreme Court has made it clear "that the class of collaterally appealable orders must remain 'narrow and selective in its membership.'"[4]

The Third Circuit has consistently applied the principles underlying *Mohawk* and has plotted the proper path to appellate review of an order compelling production of attorney-client privileged documents.

> When a district court orders a witness—whether a party to an underlying litigation, a subject or target of a grand jury investigation, or a complete stranger to the proceedings—to testify or produce documents, its order generally is not considered an immediately appealable "final decision[ ]" under § 1291.  It is well settled that a witness who "seeks to present an objection to a discovery order immediately to a court of appeals must refuse compliance, be held in contempt, and then appeal the contempt order."  A district court's contempt order is itself immediately appealable because it is a final judgment imposing penalties on the willfully disobedient witness in what is effectively a separate proceeding.[5]

---

[1] Discovery Order ¶1.

[2] *Mohawk Industries, Inc. v. Carpenter,* 558 U.S. 100, 114 (2009).

[3] *Id.* at 106-113.

[4] *Id.* at 113 (quoting *Will v. Hallock*, 546 U.S. 345, 350 (2006)).

[5] *In re Grand Jury*, 705 F.3d 133, 142-43 (3d Cir. 2012) (internal citations omitted).

The YPF Defendants' attempt to distinguish *Mohawk* is unavailing. The appeal does not involve "new legal questions" and/or "special consequence[s]" regarding an adverse privilege ruling as to which courts "should not hesitate to certify an interlocutory appeal."[6] I made a factual finding, based on a robust record, that the Project Jazz documents were not confidential and, thus, the attorney client privilege never attached. I did not create novel legal authority nor ignore Third Circuit precedent. The YPF Defendants' argument to the contrary is based on a deliberate misreading of my decision.

It is black letter law that the attorney-client privilege protects communications between a client and an attorney where the communications are intended to be and remain confidential. The record established that there was nothing confidential about Project Jazz as between YPF and Maxus. Moreover, I did not rule that the attorney client communications about Project Jazz were not confidential simply because persons outside YPF knew of the existence of Project Jazz. Rather, the uncontroverted evidence established that *all aspects* of Project Jazz were shared between YPF and Maxus to such an extent that *no element* of Project Jazz could be considered confidential, even attorney client communications. As such, the waiver cases that I purportedly ignored are irrelevant. Since the communications were not confidential, the privilege never attached.

As to "special consequences," *Mohawk* holds that "postjudgment appeals generally suffice to protect the rights of litigants and assure the vitality of the attorney-client privilege. Appellate courts can remedy the improper disclosure of privileged material in the same way they remedy a host of other erroneous evidentiary rulings: by vacating an adverse judgment and remanding for a new trial in which the protected material and its fruits are excluded from evidence."[7] The very situation (and its repercussions) caused by not allowing the collateral appeal of the Discovery Oder, under which the YPF Defendants claim they will be "irreparably harmed" and "irremediably disadvantaged" in this "bet-the company proceeding," were specifically *considered and rejected* by the Supreme Court in *Mohawk*.[8]

---

[6] *Mohawk*, *supra,* at 111.

[7] *Id.* at 109.

[8] As to the YPF Defendants' mantra that this is a "bet-the company proceeding," I would remind them that they are in bankruptcy court. I have presided over countless bet-the-company issues for both debtors and creditors. I take them all seriously, regardless of whether the amount at issue is in the thousands or the billions. Moreover, while it might be a bet-the-company case for the YPF Defendants, it is also a hugely significant case for the creditors of Maxus (many of which are government entities funded by taxpayers) that are looking to this suit as the only means of providing at least a partial recovery on their significant claims.

Thus, the YPF Defendants must await entry of a final order, which the Discovery Order is not, to appeal my ruling requiring the production of purportedly privileged documents.[9]

"In considering whether to grant a stay pending appeal, courts consider the following four factors: (1) whether the appellant has made a strong showing of the likelihood of success on the merits; (2) will the appellant suffer irreparable injury absent a stay; (3) would a stay substantially harm other parties with an interest in the litigation; and (4) whether a stay is in the public interest."[10]  The Third Circuit has identified the first two factors as the most critical in determining whether to grant a stay pending appeal.[11]  In weighing those critical factors, it has adopted a sliding scale, i.e., "if the chance of success on the merits [is only] better than negligible and the possibility of irreparable injury is low, a stay movant's request fails.  Likewise, even if a movant demonstrates irreparable harm that decidedly outweighs any potential harm to the [stay opponent] if a stay is granted *[it] is still required to show, at a minimum, serious questions going to the merits.*"[12]

> To sum up, all four stay factors are interconnected, and thus the analysis should proceed as follows. Did the applicant make a sufficient showing that (a) it can win on the merits (significantly better than negligible but not greater than 50%) *and* (b) will suffer irreparable harm absent a stay? If it has, we "balance the relative harms considering all four factors using a 'sliding scale' approach. However, if the movant *does not make the requisite showings on either of these [first] two factors*, the inquiry into the balance of harms [and the public interest] is unnecessary, *and the stay should be denied without further analysis.*"[13]

At the very least, the YPF Defendants must make a "significantly better than negligible" showing of a likelihood of succeeding on the merits in the appeal.  This they cannot do.  Under *Mohawk*, the YPF Defendants may not take an interlocutory appeal

---

[9] *Mohawk* involved an appeal from a district court to the court of appeals.  Nonetheless, the rule in *Mohawk* applies to an appeal from a bankruptcy court to the district court. *See, e.g., Bullard v. Blue Hills Bank*, 575 U.S. 496 (2015) (applying principles underlying *Mohawk* in determining that order denying confirmation of plan is not a final order); and *In re Maxus Energy Corporation*, 611 B.R. 532, 538 (D. Del. 2019) ("This Court has jurisdiction to hear appeals 'with leave of the court, from interlocutory orders and decrees, of bankruptcy judges entered in cases and proceedings referred to the bankruptcy judges under section 157 of this title.' 28 U.S.C. § 158(a)(3) . . . Section 158(a) does not identify the standard district courts should use in deciding whether to grant such an interlocutory appeal . . . '*Typically, however, district courts follow the standards set forth under 28 U.S.C. § 1292(b), which govern interlocutory appeals from a district court to a court of appeals.*'") (quoting *In re AE Liquidation, Inc.*, 451 B.R. 343, 346 (D. Del. 2011)) (emphasis added).

[10] *In re Revel, Inc.*, 802 F.3d 558, 565 (3d Cir. 2015).

[11] *Id*. at 568.

[12] *Id*. at 570 (internal citations and quotation marks omitted) (emphasis added).

[13] *Id*. at 571 (emphasis added).

from a disclosure order adverse to the attorney-client privilege, i.e., the Discovery Order, which compels the production of documents the YPF Defendants assert are protected by attorney-client privilege. Thus, *as a matter of law*, the YPF Defendants have a zero possibility of succeeding on the merits of their appeal and the Stay Motion must be denied. No further analysis is necessary.

On a related note, in the Stay Motion, the YPF Defendants asserted that "[p]ursuant to Local Rule 9006-2, the time for compliance with the Discovery Order is automatically extended."[14] At the status conference and the September 14th hearing, counsel for the YPF Defendants asserted that, pursuant to Local Rule 9006-2, his clients were not required to comply with the Discovery Order pending my resolution of the Stay Motion. At no time have I entered an order staying the YPF Defendants' obligations under the Discovery Order.

The YPF Defendants' argument is without justification based on both the purpose of the rule and its plain meaning. Thus, since August 30, 2021, the YPF Defendants have been in violation of the Discovery Order.

Local Rule 9006-2 reads as follows:

> **Bridge Orders Not Required in Certain Circumstances**. Unless otherwise provided in the Code or in the Fed. R. Bankr. P., if a motion to extend the time to take any action is filed before the expiration of the period prescribed by the Code, the Fed. R. Bankr. P., these Local Rules or Court order, the time shall automatically be extended until the Court acts on the motion, without the necessity for the entry of a bridge order.[15]

Local Rule 9006-2 was adopted to address an uncertainty in the law and to abrogate a wasteful and time-consuming practice that had been adopted to address the uncertainty. The uncertainty involved the expiration of a period under the Code, such as exclusivity or the time to assume or to reject leases. The question was: if a motion to extend a period such as exclusivity was filed prior to the period's expiration but the court did not enter the order until after the expiration date then did the period irrevocably

---

[14] Stay Motion at p. 11 n. 6.

[15] Fed. R. Bankr. P. 9006(b), from which Local Rule 9006-2 is derived, provides that "[e]xcept as provided in paragraphs (2) and (3) of this subdivision, when an act is required or allowed to be done at or within a specified period by these rules or by a notice given thereunder or by order of court, the court for cause shown may at any time in its discretion (1) with or without motion or notice order the period enlarged if the request therefor is made before the expiration of the period originally prescribed or as extended by a previous order or (2) on motion made after the expiration of the specified period permit the act to be done where the failure to act was the result of excusable neglect."

expire on the expiration date, notwithstanding the pending motion to extend the period and its subsequent approval.[16]

To address this uncertainty a practice developed in Delaware where the party facing such an expiration would file both a motion to extend the period and an emergency motion for a bridge order extending the expiration date until the court ruled on the underlying motion to extend the period. This led to a voluminous number of emergency applications, which burdened the court.[17]

Local Rule 9006-2 was implemented to eliminate the practice of obtaining bridge orders. Indeed, the title of the rule specifically references bridge orders. As such, the rule provides that "if a motion *to extend the time* to take any action is filed *before the expiration of the period prescribed* . . . the time shall automatically be extended until the Court acts on the motion, *without the necessity for the entry of a bridge order*."[18] Note that the rule does not reference "a motion *to stay the time* to take any action." The plain meaning of the rule (consistent with its purpose) makes it clear that it only applies to extend an expiration date until the court may rule on the motion to extend the period to avoid the necessity for a bridge order. That is consistent with its universal use since its inception. It cannot and does not apply to a motion for a stay pending appeal from an order requiring production of documents by a date certain.

Indeed, even if it did apply to a motion for stay pending appeal (which it does not) that would be an illegitimate exercise of the court's rule making authority.[19] The YPF Defendants are, in effect, arguing that Rule 9006-2 is a *local rule* that imposes an automatic temporary restraining order (akin to the automatic stay created by statute) that arises

---

[16] *See, e.g.*, *In the Matter of Coastal Industries, Inc.*, 58 B.R. 48 (Bankr. D.N.J. 1986) (request for extension of 60-day period during which lease of nonresidential real property may be assumed or rejected was untimely as request was made outside original period).

[17] At the time this practice evolved, the Delaware Bankruptcy Court was severely understaffed. It was difficult to get a hearing and even the mildest increase in the huge paper flow was overwhelming to the judges.

[18] Del. Bankr. L.R. 9006-2 (emphasis added).

[19] *See* Fed. R. Bankr. P. 9029(1) ("Each district court acting by a majority of its district judges may make and amend rules governing practice and procedure in all cases and proceedings within the district court's bankruptcy jurisdiction which are consistent with--but not duplicative of--Acts of Congress and these rules and which do not prohibit or limit the use of the Official Forms. Rule 83 F.R.Civ.P. governs the procedure for making local rules. A district court may authorize the bankruptcy judges of the district, subject to any limitation or condition it may prescribe and the requirements of 83 F.R.Civ.P., to make and amend rules of practice and procedure which are consistent with--but not duplicative of--Acts of Congress and these rules and which do not prohibit or limit the use of the Official Forms. Local rules shall conform to any uniform numbering system prescribed by the Judicial Conference of the United States."). The Delaware District Court has authorized the Delaware Bankruptcy Court to promulgate local rules and reviews any proposed rule change before it is implemented. *See also* Del. Bankr. L.R. 1001-1(b) ("These Local Rules shall be followed insofar as they are not inconsistent with the Bankruptcy Code and the Federal Rules of Bankruptcy Procedure.").

from filing a stay motion.  That automatic TRO would then excuse the movant/appellant from complying with a court order until the court decides the stay motion.  Of course, the entry of *any stay* pending appeal requires the movant/appellant to file a motion and to satisfy the standard injunction factors.[20]  Moreover, Rules 7065 and 8007 (not 9006) of the Federal Rules of Bankruptcy Procedure govern motions for stay pending appeal.[21]  This court lacks the authority to establish any local rule abrogating binding Third Circuit precedent or the Federal Rules of Bankruptcy Procedure.[22]

Thus, Local Rule 9006-2 did not excuse the YPF Defendants from producing the documents on August 30, 2021, and they were and continue to be in violation of the Discovery Order.  This violation of the Discovery Order has been prejudicial to the plaintiff and the interests of justice.

The YPF Defendants shall comply with all their obligations under the Discovery Order by no later than September 27, 2021, at 4:00 p.m. EST, and no further extension of this period will be granted.  I will hold a hearing on October 5, 2021, at which time I will consider: (1) whether to impose sanctions on the YPF Defendants for violation of the Discovery Order; (2) whether to hold the YPF Defendants in contempt if they fail to comply with all their obligations under the Discovery Order by no later than September 27, 2021, at 4:00 p.m. EST.; and (3) if the YPF Defendants are held in contempt, what sanction to impose.

Sincerely,

*[signature]*

Christopher S. Sontchi
United States Bankruptcy Judge

---

[20] *See Revel, supra,* at 565.

[21] I have been unable to locate a single case where a federal court has applied Bankruptcy Rule 9006 to trump Bankruptcy Rules 7065.  The few cases that consider Rule 9006 and Rule 7065 in tandem do so for the limited purpose of determining what notice period is appropriate when considering a request for an injunction.  *See, e.g., In re Eisen*, 2006 WL 6810928 at *5 (9th Cir. BAP Dec. 28, 2006).

[22] *See, e.g., Baylson v. Disciplinary Bd. of Supreme Court of Pennsylvania*, 975 F.2d 102, 107 (3d Cir. 1992) ("The Supreme Court, pursuant to 28 U.S.C. § 2072(a), is vested with the authority to prescribe rules of practice and procedure for the federal courts. The federal district and circuit courts may, however, pursuant to 28 U.S.C. § 2071(a), prescribe local rules of practice *so long as these rules are consistent with the rules of practice and procedure promulgated by the Supreme Court under section 2072.*") (emphasis added).