# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| MAXUS ENERGY CORPORATION, *et al.*, | ) | Case No. 16-11501 (CSS) |
| | ) | (Jointly Administered) |
| Debtors. | ) | |
| _____ | ) | **Related Docket No.: 2413** |

## <u>OPINION</u>[1]

**FARNAN LLP**
Brian E. Farnan
Michael J. Farnan
919 N. Market St., 12th Floor
Wilmington, DE 19801
    -and-
**WHITE & CASE LLP**
J. Christopher Shore (admitted *pro hac vice*)
1155 Avenue of the Americas
New York, NY 10036-2787

Counsel for the Liquidating Trust

**MONTGOMERY McCRACKEN
WALKER & RHODES LLP**
Marc J. Phillips
1105 N. Market St., Suite 1500
Wilmington, DE 19801
    -and-
Edward L. Schnitzer
437 Madison Ave.
New York, NY 10022

Counsel for Arcina Risk Group, LLC


Dated: March 22, 2022

Sontchi, J. _____

---

[1] The parties agreed to having the Court resolve the issues discussed herein on the basis of the standard provided by Fed. R. Civ. P. 12(b)(6). *See* Feb. 2, 2022 Letter from Marc J. Phillips and Michael J. Farnan. "The court is not required to state findings or conclusions when ruling on a motion under Rule 12 . . . ." Fed. R. Civ. P. 52(a)(3), *adopted by* Fed. R. Bankr. P. 7052. Accordingly, the Court herein makes no findings of fact and conclusions of law pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure.

**INTRODUCTION**[2]

Before the Court is Arcina Risk Group, LLC's ("Arcina") *Motion for Allowance and Payment of Administrative Expense Claim* (the "Motion").[3]  By its Motion, Arcina seeks payment of an administrative expense claim in the amount of $5.25 million, which it claims is due and owing pursuant to a 15% contingency fee as set forth in the ARS Consulting Agreement.  The parties have requested that the Court determine threshold issues and legal questions for purposes of avoiding or streamlining discovery and evidentiary proceedings in connection with this Motion.  Having heard arguments on these threshold issues and legal questions on February 15, 2022, the Court now issues its opinion.

The Court concludes that Arcina has failed to establish that the relevant Bar Dates are inapplicable to its claim, the doctrines of judicial and/or equitable estoppel apply to bar the Trust from arguing that Arcina was terminated or never retained as an Ordinary Course Professional, this Motion is an amendment to an informal proof of claim, and its failure to file a timely proof of claim was the result of excusable neglect.  The remaining arguments are moot.[4]

---

[2] Terms used but not defined herein shall have the meaning ascribed to them *infra*.

[3] D.I. 2413.

[4] Because Arcina never filed a proof of claim and has not established grounds for recovery notwithstanding same, the Court need not, and will not, discuss whether Arcina would have been entitled to its 15% contingency fee under the ARS Consulting Agreement or payment at an hourly rate.

## JURISDICTION AND VENUE

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper before the United States Bankruptcy Court for the District of Delaware pursuant to 28 U.S.C. §§ 1408 and 1409.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2) and, thus, this Court has the authority to enter final orders.

## STATEMENT OF FACTS AND PROCEDURAL HISTORY

### A.    The Prepetition Agreements

On August 9, 2012, Maxus Energy Corporation ("Maxus") and Aon Risk Insurance Services West, Inc. ("Aon West") entered into the ARS Consulting Agreement (the "ARS Consulting Agreement")[5] whereby Arcina (the mass tort specialty and archeology services unit for Aon Global Consulting, a separate division within the "Aon" corporate umbrella)[6] was to: (a) locate, notify and seek the participation of certain identified insurers in connection with various environmental claims against Maxus and a former saline disposal site in Louisiana; and (b) collect from those insurers.[7]  In exchange for Arcina's services, Maxus agreed to pay Arcina 15% of any funds ultimately recovered from the insurers.[8]

---

[5] D.I. 2413 at Ex. A. (Consulting Agreement by and between Maxus Energy Corporation and Aon Risk Insurance Services West, Inc.).

[6] *See id.* at p. 4 n.2 ("Aon West has assigned all of its right, title, and interest in and to the ARS Consulting Agreement to Arcina, including the right to payment.").

[7] *Id.* ¶ 3.

[8] *Id.*

Also, around November 6, 2015, Kasowitz, Benson, Torres & Friedman LLP ("Kasowitz")[9] retained Aon Global Risk Consulting ("Aon Global") on behalf of Maxus (the "Bedivere Agreement") in connection with a lawsuit captioned *Bedivere Insurance Company, et al. v. Maxus Energy Corporation* (the "Bedivere Litigation").[10]  Pursuant to the terms of the Bedivere Agreement, the parties mutually acknowledged that "Aon has and will continue to perform other services for Maxus concerning insurance related services," and agreed that "[t]his Agreement is not intended to apply to the work Aon performs separately for Maxus, but only to the discrete services requested by [Kasowitz] for purposes of assisting … in the *Bedivere* case …."[11]  That being said, Aon Global agreed to "maintain separate files and cost[s] for the consulting work contemplated by the [Bedivere] Agreement,"[12] be paid for its work on an hourly basis,[13] and acknowledged that "its fees are not contingent on the final resolution of the [Bedivere Litigation] …."[14]

The work performed under the Bedivere Agreement was done by Arcina and was invoiced and paid on an hourly basis; Arcina does not seek to "double-dip" on the work done and paid under the Bedivere Agreement.[15]  However, Arcina nevertheless argues

---

[9] *See* D.I. 172. Prior to the Petition Date (defined *infra* at p. 5), the lead attorney for Maxus in the Bedivere Litigation switched firms and went to McKool Smith PC ("McKool").  After the Petition Date, McKool was retained as Special Counsel for the Debtors in connection with insurance litigation.

[10] No. 15-06-06279 (Tex. Dist. Cit. Montgomery Cnty.).

[11] *See* D.I. 2413 at Ex. B ¶ 2. (Consulting Retainer Agreement for *Bedivere Insurance Co., et al. v. Maxus Energy Company* between Kasowitz, Benson, Torres & Friedman LLP, on behalf of Maxus Energy Company, and Aon Global Risk Consulting).

[12] *Id.*

[13] *Id.* ¶ 4(a).

[14] *Id.*

[15] Salem Aff. ¶¶ 14-15.

that the invoices paid under the Bedivere Agreement did not include hundreds of hours of work performed under the ARS Consulting Agreement, which formed the basis of the litigation against Bedivere, and for which it did not bill under the Bedivere Agreement.[16]

## B.   Events in the Chapter 11 Cases

On June 17, 2016 (the "Petition Date"), the Debtors filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code in this Court.  Following the Petition Date, and through 2020, Arcina continued to provide insurance services to the Debtors pursuant to the ARS Consulting Agreement as well as the Bedivere and Greenstone Agreements,[17] discussed *infra*.[18]

### a.   Relevant Bar Dates

#### i.   General and Rejection Bar Dates

On August 25, 2016, the Court entered an *Order (A) Establishing Deadlines for Filing Proofs of Claim and the Procedures Relating Thereto and (B) Approving the Form and Manner of Notice Thereof* (the "Prepetition Claims Bar Date Order").[19]  The Prepetition Claims Bar Date Order required, among other things, all entities (except those specified therein)[20] to file proofs of claim with respect to prepetition claims against the Debtors by the General Bar Date (the "General Bar Date"), and established a Rejection Bar Date as the date by

---

[16] *Id.* ¶¶ 15-16.

[17] *Id.* ¶ 8.

[18] *See infra* pp. 16-17.

[19] D.I. 289.

[20] *See id.* ¶ 2(l). Arcina does not suggest that it falls into one of the categories of entities that did not need to file a proof of claim pursuant to the Prepetition Claims Bar Date Order.

which entities must file proofs of claim with respect to rejection damages claims (the "Rejection Bar Date").

The General Bar Date by which entities were to file proofs of claim with respect to prepetition claims was set for 5:00 p.m. EST on or before October 31, 2016.[21]  The Rejection Bar Date provision provides, in pertinent part,

> [a]ny person or entity asserting a claim against any of the Debtors that arises from the rejection of an executory contract … must file a Proof of Claim … on or before the later of (i) thirty (30) days following the entry of the Court approving such rejection … (ii) the applicable Bar Date; or (iii) such other date as the Court may fix in the applicable order authorizing such rejection ….[22]

Further, the Prepetition Claims Bar Date Order states that, "[a]ny person or entity whose prepetition claim … is (x) not listed in the Schedules or (y) listed as either disputed, contingent or unliquidated in the Schedules … must file a Proof of Claim by the appliable Bar Date."[23]  The Prepetition Claims Bar Date Order goes on to state that, "[a]ny holder of a prepetition claim … that is required to file a Proof of Claim … but fails to do so on or before the applicable Bar date, shall not be treated as a creditor with respect to such claim for the purposes of … distribution …."[24]  Neither Arcina nor Aon West ever filed a proof of claim for a prepetition claim (including a rejection damages claim) during the Debtors' Chapter 11 cases.

---

[21] *Id*. ¶ 2(a).

[22] *Id*. ¶ 2(c).

[23] *Id*. ¶ 2(e).

[24] *Id*. ¶ 3.

ii.        **Administrative Expense Claim Bar Dates**

On February 21, 2017, the Court entered an *Order (I) Establishing a Bar Date for Filing Administrative Expense Claims and (II) Approving the Form and Manner of Notice Thereof* (the "Administrative Claims Bar Date Order").[25]  Pursuant to the Administrative Claims Bar Date Order, any entity asserting an administrative expense claim that arose against the Debtors between June 17, 2016 through February 28, 2017 was to file a proof of claim by 5:00 p.m. EST on April 3, 2017.[26]  Administrative expense claims that arose on or after March 1, 2017 through July 14, 2017 (the "Effective Date") were to be filed by August 14, 2017 (the "Supplemental Administrative Expense Claims Bar Date").[27]  The Administrative Claims Bar Date Order further provides that, "[a]ny potential holder of an Administrative Expense Claim that fails to file … by the Administrative Expense Claims Bar Date shall not be permitted to receive payment from the Debtors' estates or participate in any distribution under the Plan …."[28]

The Administrative Claims Bar Date Order required the Debtors to mail a Mailing Notice by March 1, 2017, and to publish a Publication Notice in the *New York Times* by March 1, 2017, in order to sufficiently notify potential holders of administrative expense claims of their obligation to timely file a proof of claim.  The Mailing Notice was sent to AON Premium Finance, LLC, Aon Risk Services Southwest, and AON RISK SERVICES

---

[25] D.I. 920.

[26] *Id.* ¶ 2.

[27] D.I. 1701. The Court's Confirmation Order (defined *infra* at p. 12) set forth a Supplemental Administrative Expense Claims Bar Date.

[28] D.I. 920 ¶ 6.

7

SOUTHWEST INC on February 24, 2017.[29]   The Mailing Notice was also mailed to Arcina.[30] The Publication Notice ran in the *New York Times* on February 27, 2017.[31] Neither Arcina nor Aon West ever filed a proof of claim in connection with an administrative expense claim during the Debtors' Chapter 11 cases.

### b.    Ordinary Course Professionals

On July 12, 2016, the Court entered an *Order Authorizing the Debtors to Retain, Employ, and Compensate Certain Professionals Utilized by the Debtors in the Ordinary Course of Business* (the "OCP Order").[32]   The OCP Order permitted the Debtors to employ and retain Ordinary Course Professionals whom were listed in Exhibit 1 to the OCP Order, and also allowed the Debtors to retain additional Ordinary Course Professionals not listed in Exhibit 1 by filing and serving a list of supplemental Ordinary Course Professionals upon the "Notice Parties."[33]

The OCP Order further provides that, "[e]ach additional Ordinary Course Professional shall file and serve upon this Court and the Notice Parties an Affidavit … 45 days after the Supplemental Notice,"[34] setting forth, among other things, a description of the scope of services and the rate(s) proposed to be charged for said services. (the "OCP

---

[29] D.I. 982 at Ex. B (Mar. 2, 2017 Aff. of Service).

[30] *Id*.

[31] *See* D.I. 2418, Nicholson Decl. at Ex. A.

[32] D.I. 147.

[33] *Id*. ¶ 7.

[34] *Id*.

Disclosure Affidavit").[35]  Notice Parties were given ten days to object to the retention of such Ordinary Course Professional(s).[36]  While the OCP Order permitted the Debtors to pay the fees and expenses of Ordinary Course Professionals up to a certain cap[37] without a formal application to the Court, it prevented the Debtors from paying any Ordinary Course Professional that failed to file the OCP Disclosure Affidavit.[38]

In accordance with the OCP Order, on August 19, 2016, the Debtors filed a *Notice of Filing of Supplemental Notice Pursuant to Order Authorizing the Debtors to Retain, Employ, and Compensate Certain Professionals Utilized by the Debtors in the Ordinary Course of Business* (the "Supplemental Notice"),[39] which included Aon West as an insurance consultant.[40]

However, neither Aon West nor Arcina ever filed the required OCP Disclosure Affidavit as set forth in both the OCP Order and the Supplemental Notice.  Instead, on May 18, 2017, more than 45 days after the Supplemental Notice, Mark Cervi, counsel to the Debtors, sent an email to Richard Janish, Arcina's Founding Principal ("Janish"), informing him that he was "meant to file [the] OCP affidavit," and that Aon West was specifically added as an Ordinary Course Professional in August 2016.[41]  The next day,

---

[35] *See id*. ¶¶ 4-5.

[36] *Id*. ¶ 6.

[37] *Id*. ¶ 9 ("The Debtors are authorized to pay, without formal application … the fees and expenses of Ordinary Course Professionals not exceeding (a) $25,000 in the aggregate for any calendar month … and (b) $200,000 in the aggregate for any twelve month period ….").

[38] *Id*. ¶ 5.

[39] D.I. 266.

[40] *Id*. at Ex. 1.

[41] D.I. 2413 at Ex. D.

Janish prepared and sent Mark Cervi the OCP Disclosure Affidavit "in the event it is not too late to submit."[42]

At Aon West's request, the Debtors (not Arcina or Aon West)[43] filed Arcina's untimely OCP Disclosure Affidavit on May 22, 2017,[44] the same day that the Court confirmed the Debtors' Chapter 11 Plan of Liquidation.  However, on May 31, 2017, the Debtors withdrew the OCP Disclosure Affidavit,[45] and the Notice Parties were served with notice of the withdrawal on June 2, 2017.[46]

### c.   Debtors' Amended Disclosure Statement and Chapter 11 Plan

On December 19, 2016, the Debtors filed their *Disclosure Statement For The Chapter 11 Plan of Liquidation Proposed By Maxus Energy Corporation, et al*. (the "Disclosure Statement").[47]  After the Official Committee of Unsecured Creditors (the "Committee") objected to the Disclosure Statement, counsel for the Debtors wrote to Arcina explaining that, "[a]s part of the Disclosure Statement, I'd like to include a section that discusses potential insurance coverage claims that might be able to be pursued,"[48] and requested that Arcina provide relevant information for that purpose.

---

[42] *Id*.

[43] Although the OCP Order required Ordinary Course Professionals to file their own OCP Disclosure Affidavit, the Debtors filed many Disclosure Affidavits on behalf of Arcina and other Ordinary Course Professionals.  *See* D.I. 2432 ¶ 4; *see also* D.I. 179; 191; 304; 379; 487; 1126; and 1136.

[44] D.I. 1469.

[45] D.I. 1503.

[46] D.I. 1524.

[47] D.I. 698.

[48] Salem Aff. ¶ 20.

On March 28, 2017, in resolution of the Committee's objection, the Debtors and the Committee filed their *Amended Disclosure Statement For The Amended Chapter 11 Plan Of Liquidation Proposed By Maus Energy Corporation, et al. And The Official Committee Of Unsecured Creditors*.[49]   Among other changes, the "Insurance Policies and Litigation" section was expanded to specifically identify Arcina and the insurance recoveries that it was handling.[50]

Another *Amended Disclosure Statement For The Amended Chapter 11 Plan Of Liquidation Proposed By Maus Energy Corporation, et al. And The Official Committee Of Unsecured Creditors* was filed on April 19, 2017 (the "Amended Disclosure Statement").[51] This Amended Disclosure Statement was nearly if not exactly identical with respect to Arcina's services.[52] It explained, among other things, the relationship between Maxus and Arcina and informed parties that, in exchange for Arcina's services, Maxus had agreed to pay it a percentage of funds recovered from insurers.   It also went on to explain that Arcina was still undertaking additional efforts to locate liability coverage.[53]

On May 1, 2017, the Debtors contacted Arcina to explain that they would be filing a Plan Supplement which would identify potential causes of action that the Maxus Liquidating Trust (the "Liquidating Trust") may be able to pursue for the benefit of

---

[49] D.I. 1058.

[50] *Id*. Art. II (B)(6)(a).

[51] D.I. 1232.

[52] *Compare* D.I. 1058 Art. II (B)(6)(a) *with* D.I. 1232 Art. II (B)(6)(a).

[53] D.I. 1232 Art. II (B)(6)(a).

creditors, including coverage claims identified by Aon West.[54]  That same day, Arcina

provided the Debtors with the requested information,[55] and on May 2, 2017, the Debtors

filed their *Plan Supplement to The Amended Chapter 11 Plan of Liquidation Proposed by Maxus

Energy Corporation, et al. and the Official Committee of Unsecured Creditors* (the "Plan

Supplement"),[56] which identified nine "Potential Insurance Coverage Actions" and one

"Pending Insurance Litigation."[57]  These potential causes of action were all related to

claims identified by Arcina.[58]

On May 20, 2017, the Debtors filed the *Amended*[59] *Chapter 11 Plan of Liquidation

Proposed by Maxus Energy Corporation, et al. and the Official Committee of Unsecured Creditors*

(the "Plan").[60]  Two days later, on May 22, 2017, the Court entered the *Order Confirming

Amended Chapter 11 Plan of Liquidation Proposed by Maxus Energy Corporation, et al. and the

Official Committee of Unsecured Creditors Pursuant to Chapter 11 of the Bankruptcy Code* (the

"Confirmation Order").[61]  The Plan, attached to the Confirmation Order at Exhibit A,

explains the repercussions for a party's failure to file a proof of claim.[62]

---

[54] Salem Aff. ¶ 22.

[55] *Id.* ¶ 23.

[56] D.I. 1328.

[57] *Id.*, Ex. E.

[58] D.I. 2413 ¶ 20 ("The Potential Insurance Coverage Actions and Pending Insurance Litigation, as set forth in the Plan Supplement, all related to claims identified by Arcina, through their work pursuant to the ARS Consulting Agreement, through their pre and post-petition Date efforts.").

[59] The Debtors filed their original Chapter 11 Plan of Liquidation on December 29, 2016, *see* D.I. 697.

[60] D.I. 1451.

[61] D.I. 1460.

[62] *See id.* Art. II (C)-(E).

On July 17, 2017, the Debtors filed a *Notice of (I) Entry of Order Confirming Amended Chapter 11 Plan of Liquidation, (II) Occurrence of Effective Date, and (III) Related Bar Dates* (the "Effective Date Notice").[63]  The Effective Date Notice informed the parties, *inter alia*, that the Court confirmed the Plan on May 22, 2017 and that the Effective Date was July 14, 2017.

### i.        Rejection of the ARS Consulting Agreement

The Confirmation Order and Plan permitted the Debtors to remove Executory Contracts or Unexpired Leases from their Assumption Schedule and to reject same pursuant to the terms of the Plan up until the Effective Date.[64]  That being said, the Confirmation Order required "any Proofs of Claim based on the rejection of the Debtors' Executory Contracts or Unexpired Leases … [to be filed] … no later than thirty (30) days after the Effective Date.[65]

On July 11, 2017, the Debtors filed a *Notice of (I) Sixth Amendment to Chapter 11 Schedules of Maxus Energy Corporation, (II) Amended Schedules Bar Date, and (III) Rejection of Unexpired Leases and Executory Contracts* (the "Rejection Notice").[66]  Schedule E/F of the Rejection Notice listed Aon Risk Insurance Services, Inc. as having an unsecured, contingent, unliquidated claim for a "Potential Contingency Fee associated with the

---

[63] D.I. 1701.

[64] D.I. 1460 ¶ 19.

[65] *Id*. ¶ 20.

[66] D.I. 1679.

Claims Recovery Consulting Agreement" for an unknown amount.[67]  Schedule G listed Aon Risk Insurance Services Inc. as an Executory Contract which the Debtors were rejecting.[68]

The Rejection Notice informed the entities listed on Schedule E/F that they had until August 10, 2017 to file a proof of claim[69] and the entities listed on Schedule G that they had until July 21, 2017 to file an objection to the Rejection Notice.[70]  The Rejection Notice was sent to Aon Risk Insurance Services, Inc. by First Class Mail on July 11, 2017.[71]

Furthermore, the Effective Date Notice filed on July 17, 2017 set a Supplemental Administrative Expense Claims Bar Date of August 14, 2017 for administrative expense claims arising on or after March 1, 2017 but prior to the Effective Date, required final requests for professional claims to be filed by September 12, 2017, and explained that any party previously having received the Rejection Notice had until August 14, 2017 to file a

---

[67] *Id*. at Ex. A (Schedule E/F).

[68] *Id*. at Ex. A (Schedule G).

[69] *Id*. ¶ 3.

[70] *Id*. ¶ 13.

[71] D.I. 1699 (Jul. 14, 2017 Aff. of Service). At oral argument, counsel for Arcina argued that the Rejection Notice is invalid because it was sent to the wrong entity (Aon Risk Insurance Services, Inc., not Aon Risk Insurance Services West, Inc.) and to the wrong address.  *See* D.I. 2482 (Feb. 15, 2022 Hearing Transcript ("Hr'g Tr.")) at 46:17-47:11.  Notwithstanding Arcina's alleged failure to receive service of the Rejection Notice, counsel conceded that Arcina did get proper notice of the Prepetition Claims Bar Date Order, which contains the General Bar Date and Rejection Bar Date provision, referenced above, as well as the Effective Date Notice, which informed parties that they had until August 14, 2017 to file a proof of claim arising from the rejection of an Executory Contract, *see id*. at 48:7-10.  Assuming Arcina was not properly served with the Rejection Notice, it is nonetheless clear that Arcina had actual notice of the ARS Consulting Agreement's rejection.

*See* Salem Decl. ¶ 13 ("Arcina continued to perform work for the Debtors and Liquidating Trust, at their request, *even after the ARS Consulting Agreement was rejected.  Arcina continued this work under the belief that they would be taken care of with regard to the payment of the contingency fee should any insurance proceeds be recovered, as that is what they were told by the Debtors' general counsel*.").

proof of claim arising from the rejection.  The Effective Date Notice provides that, if a party who is required to file a proof of claim fails to do so, their claim will be "automatically disallowed, forever barred, and unenforceable …."[72]  The Effective Date Notice was served on Arcina, Aon Premium Finance, LLC, Aon Risk Insurance Services, Inc., Aon Risk Services Southwest, AON RISK SERVICES SOUTHWEST, INC., and Aon UK, Ltd. via First Class Mail on July 17, 2017.[73]

However, despite continuing to perform work after the ARS Consulting Agreement was rejected,[74] and after its OCP Disclosure Affidavit was withdrawn, neither Aon West nor Arcina filed a proof of claim in respect of a rejected Executory Contract, a request for a professional claim, an administrative expense claim, nor did they file an objection to the Rejection Notice.

### ii.        Creation of Liquidating Trust

On the Effective Date, the Liquidating Trust was formed for the purpose of "liquidating and distributing the Liquidating Trust Assets …."[75]  The Confirmation Order vests "exclusive authority to: (a) [f]ile, withdraw, or litigate to judgment, objections to Claims,"[76] in the Liquidating Trust and provides that the "Liquidating Trust shall have

---

[72] D.I. 1701 ¶ 5.

[73] D.I. 1718. (Jul. 20, 2017 Aff. of Service).

[74] Salem Decl. ¶ 13.

[75] D.I. 1460, Art. VI.

[76] *Id.*, Art. X.C.

and shall retain any and all rights and defenses that the Debtors had with respect to any Claim …."[77]

## C.    The Parties' Postpetition Relationship

As discussed previously, on May 30, 2017, the Debtors notified Janish that the OCP Disclosure Affidavit was being withdrawn because the Committee, or certain members of the Committee, did not approve of Arcina's retention, such that the Debtor was being prevented from receiving the approvals it needed at its upcoming confirmation hearing.[78] However, the Debtors' General Counsel, Javier Gonzalez ("Gonzalez" or the "Debtors' General Counsel"), allegedly advised Janish "not to worry about these procedural steps, as Maxus has assets and there would be plenty of funds distributed … to cover the contingency of [their] post-petition insurance recovery efforts …."[79]

In April 2020, the Liquidating Trust engaged Arcina directly to provide consulting services and litigation support in connection with litigation pending in the United States District Court for the Eastern District of Texas (the "2020 Greenstone Agreement").[80] Arcina agreed to receive compensation under the 2020 Greenstone Agreement on an hourly basis, not contingent on final resolution of the litigation pending in the Eastern District of Texas, and the parties agreed that this service was "in addition to, and not

---

[77] *Id.*, Art. X.B.

[78] Janish Proffer ¶ 7.

[79] *Id.*; *see* Salem Decl. ¶ 27 ("Javier Gonzalez … told representatives of Arcina on numerous occasions that there was no need to file the Disclosure Affidavit or a proof of claim as there would be money to pay Arcina for all of its work and not to worry about getting paid.").

[80] *Maxus Liquidating Trust v. Greenstone Assurance Ltd.*, No. 2:19-cv-401 (E.D. Tex. 2019).

replacing," the ARS Consulting Agreement.[81]  Arcina asserts that the work performed under the 2020 Greenstone Agreement was invoiced and paid on an hourly basis, and Arcina does not seek to "double-dip" on this work.[82]

That being said, Arcina nevertheless argues that the invoices paid under the 2020 Greenstone Agreement did not include hundreds of hours of work which formed the basis of the litigation against Greenstone and for which it did not bill under the 2020 Grenstone Agreement.[83]  In fact, Arcina argues that at least 689 hours of work were performed and not billed to the Debtors or the Liquidating Trust under either the Bedivere or Greenstone Agreements.[84]

Ultimately, to date, the Liquidating Trust recovered roughly $35 million in insurance proceeds,[85] allegedly based on the services provided by Arcina, both pre-and-

---

[81] Salem Aff. ¶ 13.

[82] Salem Decl. ¶¶ 14-15; *but see* D.I. 2418 ¶ 26 ("The Greenstone Invoice was ultimately not paid, as the relevant professional claim and administrative expense bar dates had passed by the time the Trust received the invoice.").

[83] *Id.* ¶¶ 15-16.

[84] *Id.* ¶ 6.

[85] *See* D.I. 2418 ¶ 29:

> The Debtors' and Trust's only insurance recoveries have been in respect of (1) the Greenstone Litigation, in respect of which the Trust recovered a settlement in the amount of $25 million on March 25, 2021, (2) the Bedivere Litigation, in respect of which the Trust recovered settlement payments totaling approximately $9.5 million between November 2017 and April 2018, and (3) claims regarding an EPA Notice of Potential Liability at the Former Milwaukee Solvay Coke & Gas Co. Plant site, as to which Debtors were reimbursed under policies held by Picklands Mather & Company as of May 9, 2019 and March 3, 2020, in the amounts of $309,320.67 and $25,569.04, respectively.

post-petition, for which Arcina has not been paid its contingency fee and for which it claims it is due $5.25 million.[86]

## STANDARD OF REVIEW

Although Arcina's Motion seeks payment on account of an administrative expense claim, the parties have stipulated, for purposes of resolving the issues set forth herein, to having the Court analyze the issues on the basis of the standard provided by Fed. R. Civ. P. 12(b)(6), with the Motion and Reply serving as the equivalent of a complaint, and the Liquidating Trust's Opposition serving as the motion to dismiss.[87]

Fed. R. Civ. P. 12(b)(6) sets forth the familiar standard on a motion to dismiss for failure to state a claim upon which relief may be granted. "A Rule 12(b)(6) motion is designed to test the legal sufficiency of the complaint, and thus, does not require the court to examine the evidence at issue."[88] To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."[89] A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[90]

---

[86] D.I. 2482 (Feb. 15, 2022 Hr'g Tr.) at 11:24-12:5.

[87] Feb. 2, 2022 Letter from Marc J. Phillips and Michael J. Farnan.

[88] *In re Ditech Holding Corp.*, 2021 WL 5225840 at *8 (Bankr. S.D.N.Y. Nov. 9, 2021).

[89] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[90] *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

Courts generally assess whether a complaint is sufficient "in light of the pleading requirements in Rule 8 of the Federal Rules of Civil Procedure[,]" which requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief."[91]  The "short and plain statement" called for in Fed. R. Civ. P. 8 "must provide enough facts to state a claim to relief that is plausible on its face."[92]  Thus, the issue on a Rule 12(b)(6) motion is "not whether a plaintiff is likely to prevail ultimately, but whether the claimant is entitled to offer evidence to support the claims."[93]

## ANALYSIS

Irrespective of whether Arcina's would-be claim is an administrative expense claim under 11 U.S.C. § 503(b)(1), or a prepetition claim,[94] it is nonetheless barred for the reasons set forth below.[95]  Namely, Arcina's claim, whatever its classification may be and regardless of its amount, is barred because Arcina did not file a proof of claim by either the General or Rejection Bar Dates (for any potential prepetition claim), nor did it file a

---

[91] *Ditech Holding Corp*. 2021 WL 5225840 at *9.

[92] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007).

[93] *Ditech Holding Corp*. 2021 WL 5225840 at *8 (citing *Branham v. Meachum*, 77 F.3d 626, 638 (2d Cir. 1996)) (internal quotations omitted).

[94] D.I. 2482 (Feb. 15, 2022 Hr'g Tr.) at 48:24-49:12. Although Arcina's Motion solely focuses on an administrative expense claim, at oral argument, counsel for Arcina asked the Court to consider whether Arcina may be entitled to a prepetition claim should its administrative expense claim be barred.  The Court noted that the relief sought by Arcina's Motion was solely for an administrative expense claim, but that Arcina's prayer for relief contained "catch-all" language, requesting that the Court "grant such other and further relief as is just and proper." *See* D.I. 2413 ¶ 92.

[95] Under these circumstances, it is irrelevant whether Arcina's claim is properly classified as an administrative expense claim or a prepetition claim; under either scenario, Arcina fails to establish that it is entitled to payment.  Thus, the Court will not engage in an analysis of whether Arcina's claim is a prepetition claim, as argued by the Liquidating Trust, or an administrative expense claim, as argued by Arcina.

proof of claim for any potential administrative expense claim by either of the Administrative Expense Claim Bar Dates.[96]  Not having done so, Arcina's path to any monetary recovery is extremely narrow and must fit within the confines of specific exceptions.  Because the Court finds that Arcina has not sufficiently established that any of those exceptions apply, Arcina is barred from asserting a claim, whether it be a prepetition claim or an administrative expense claim.

## A.    Whether the Bar Dates Apply to Arcina's Claim

The law surrounding the need to file a proof of claim is well settled.  Pursuant to Fed. R. Bankr. P. 3003, "[a]ny creditor … whose claim … is not scheduled or scheduled as disputed, contingent, or unliquidated shall file a proof of claim … within the time prescribed …."[97]  "[A]ny creditor who fails to do so shall not be treated as a creditor with respect to such claim for the purposes of voting and distribution."[98]  Moreover, a claims bar date "operates as a federally created statute of limitations, after which the claimant loses all of [its] right to bring an action against the debtor."[99]  A bar date means "a drop-dead date"[100] that bars claimants who fail to file a proof of claim by such date as set by the court from seeking payment from debtors.

---

[96] Arcina also failed to file a proof of claim for any professional claim by September 12, 2017.

[97] Fed. R. Bankr. P. 3003(c)(2).

[98] *Id.*

[99] *In re Grand Union Co.*, 204 B.R. 864 (Bankr. D. Del. 1997).

[100] *Berger v. Trans World Airlines, Inc. (In re Trans World Airlines, Inc.)*, 96 F.3d 687, 690 (3d Cir. 1996).

It is undisputed that Arcina had notice of the relevant Bar Dates and never filed a proof of claim.[101]  Arcina's position is that it could not have filed an administrative expense claim by any of the relevant Bar Dates because, pursuant to the terms of the ARS Consulting Agreement, its right to payment did not materialize until the Debtors' Estate recovered insurance proceeds from its insurers, which did not occur until *after* the relevant Bar Dates had passed.

Arcina is not only wrong as a matter of law, but Arcina ignores the plain language set forth in the Court's Orders establishing the relevant Bar Dates.  First, 11 U.S.C. § 101(5) defines a "claim" as a "right to payment, whether or not such right is reduced to judgment, liquidated, *unliquidated*, fixed, *contingent*, matured, *unmatured*, disputed, undisputed, legal, equitable, secured, or unsecured …."  Accordingly, Arcina had a "claim" before the Estate recovered insurance proceeds and before the relevant Bar Dates, albeit an unliquidated, contingent, and unmatured claim, for which it needed to file a proof of claim.

The facts here are similar to *In re SunCruz Casinos LLC*,[102] where a creditor received a notice fixing administrative expense bar dates to which it did not respond and to which

---

[101] As discussed at oral argument:

> THE COURT: [Y]our client should have done the common sense thing and filed a proof of claim in – either a rejection claim or a regular proof of claim or an admin. claim in a timely fashion, none of which happened.

> MR. PHILLIPS: Right, Your Honor. And you know, we don't dispute that, you know, they didn't file a proof of claim.

D.I. 2482 (Feb. 15, 2022 Hr'g Tr.) at 13:9-15.

[102] 342 B.R. 370 (Bankr. S.D. Fla. 2006).

it did not file a proof of claim.  Its reason for not responding or filing a proof of claim was that it only had a "theoretical" claim because its claim was contingent and unliquidated at the time it received notice of the administrative expense bar date.  In rejecting that argument, the Court held that "the fact that its prospective claim … was contingent and unmatured … does not mean that the prospective claim was not a "claim" as to which a proof of claim had to be filed by the Extended Administrative Expense Bar Date if that claim were to be preserved."[103]

Independently, to the extent that Arcina's claim under the ARS Consulting Agreement would be an administrative expense claim, the Administrative Claims Bar Date Order provides that a proof of claim for an administrative expense claim needed to be filed "whether or not such right is reduced to judgment, liquidated, *unliquidated*, fixed, *contingent*, matured, *un-matured*, disputed, undisputed, legal, equitable, secured, or unsecured."[104]  Accordingly, the fact that Arcina's right to payment did not accrue until after the Administrative Expense Claim Bar Dates is of no moment.  Arcina was required to file a proof of claim for an administrative expense claim by the appropriate Administrative Claims Bar Date regardless of the fact that it was contingent, unliquidated, and un-matured at the time.

Moreover, to the extent that Arcina's claim would be a prepetition claim, the Court's Prepetition Claims Bar Date Order states that, "[a]ny person or entity whose

---

[103] *Id*. at 379.

[104] D.I. 920 at Ex. I.

prepetition claim … is (x) not listed in the Schedules or (y) listed as either disputed, contingent or unliquidated in the Schedules … must file a Proof of Claim by the appliable Bar Date."[105]  The Prepetition Claims Bar Date Order goes on to state that, "[a]ny holder of a prepetition claim … that is required to file a Proof of Claim … but fails to do so on or before the applicable Bar date, shall not be treated as a creditor with respect to such claim for the purposes of … distribution …."[106]

Thus, by the plain language in the Prepetition Claims Bar Date Order, it is clear that a prepetition claim may be listed in a debtor's schedules as "disputed, contingent, or unliquidated," and, if it is, the creditor whose claim it is must file a proof of claim.  The same logic applies conversely to a creditor – if a creditor has a claim, whether that claim be disputed, contingent, or unliquidated, it must file a proof of claim.  Of course, this is exactly what is required by Fed. R. Bankr. P. 3003(c).

Hence, for the foregoing reasons, Arcina fails to establish that the Bar Dates do not apply to its claim.  Arcina had a claim as a matter of law, as defined by the Bankruptcy Code, prior to the Estate's recovery of insurance proceeds and was required to file a timely proof of claim to preserve its right to payment.

**B.    Estoppel**

Arcina argues that the doctrines of judicial and/or equitable estoppel apply, such that the Court should estop the Liquidating Trust from claiming that Aon West (and,

---

[105] D.I. 289 ¶ 2(e).

[106] *Id*. ¶ 3.

thus, Arcina) was either terminated or never retained as an Ordinary Course Professional. For the reasons that follow, the Court finds that Arcina has failed to sufficiently establish that either doctrine is applicable here.

### a.    Judicial Estoppel

"The basic principle of judicial estoppel … is that absent any good explanation, a party should not be allowed to gain an advantage by litigation on one theory, and then seek an inconsistent advantage by pursuing an incompatible theory."[107]  What judicial estoppel is not intended to do is to "eliminate all inconsistencies no matter how slight or inadvertent they may be."[108]

In *Montrose Medical Group*,[109] the Third Circuit identified criteria for determining when seemingly inconsistent litigation stances justify application of the doctrine of judicial estoppel.  The Court concluded:

> First, the party to be estopped must have taken two positions that are irreconcilably inconsistent. Second, judicial estoppel is unwarranted unless the party changed his or her position in bad faith – i.e., with intent to play fast and loose with the court. Finally, a district court may not employ judicial estoppel unless it is tailored to address the harm identified and no lesser sanction would adequately remedy the damage done by the litigant's misconduct.[110]

---

[107] *Krystal Cadillac-Oldsmobile GMC Truck, Inc. v. Gen. Motors Corp.*, 337 F.3d 314, 319 (3d Cir. 2003) (citing *Ryan Operations G.P. v. Santiam-Midwest Lumber Co.*, 81 F.3d 355, 358 (3d Cir. 1996)).

[108] *Id.*

[109] *Montrose Med. Grp. Participating Sav. Plan v. Bulger*, 243 F.3d 773 (3d Cir. 2001).

[110] *Id.* at 779-80.

Arcina contends that the Debtors, Committee and Liquidating Trust should all be judicially estopped from claiming that it was terminated and/or never retained as an Ordinary Course Professional because they all "touted the work done by Arcina in the Amended Disclosure Statement and filed the OCP Supplemental Notice and Disclosure Affidavit to retain Arcina."[111]  Then, "in an about-face, the Debtors and Committee attempted to terminate Arcina …."[112]  Arcina submits that these two positions are irreconcilably inconsistent and that the change was made in bad faith.

As argued by the Liquidating Trust, in order for judicial estoppel to apply, there must have been two inconsistent positions taken.  Filing the Amended Disclosure Statement, describing the work Arcina had performed and was performing, and withdrawing the OCP Disclosure Affidavit are not "positions," and, even if they are, Arcina has not sufficiently shown that they are irreconcilably inconsistent.

 As this Court explained, the purpose of a disclosure statement is "for the benefit for making sure people have the knowledge they need to vote."[113]  It is not a litigation position, and, further, the Amended Disclosure Statement does not state anywhere that the Debtors were hiring Arcina as an Ordinary Course Professional.[114]  Accordingly, Arcina has not shown how the Debtors' filing of the Amended Disclosure Statement in which they described Arcina's services, and their subsequent withdrawal of the untimely

---

[111] D.I. 2413 ¶ 57.

[112] *Id*.

[113] D.I. 2482 (Feb. 15, 2022 Hr'g Tr.) at 8:2-7.

[114] *See* D.I. 1232 Art. IV.B. (listing certain professionals retained by the Debtors).

OCP Disclosure Affidavit, are "irreconcilably inconsistent positions" for purposes of judicial estoppel.  Thus, the Court finds that Arcina has not established that the doctrine of judicial estoppel applies.

### b.    Equitable Estoppel

"Parties claiming equitable estoppel must establish that (1) a representation of fact was made to them, (2) upon which they had a right to rely and did so rely, and (3) that the denial of the represented fact by the party making the representation would result in injury to the relying party."[115]

Equitable estoppel does not serve to protect a party that unreasonably failed to protect itself.  Here, Arcina's counsel conceded that Arcina "did not file a proof of claim and didn't do what was essentially … necessary under the Bankruptcy Code to protect their rights."[116]  Nevertheless, Arcina argues that the Court should equitably estop the Liquidating Trust from arguing that Arcina was terminated or that it was never retained as an Ordinary Course Professional.

To support its position, Arcina argues that it took the Debtors' General Counsel "at their word."  Specifically, Arcina trusted Gonzalez when he informed Arcina that it would be "taken care of," as there were "plenty of assets in the debtors' estate, and they would get paid their … contingency fee."[117]

---

[115] *Wheeling-Pittsburgh Steel Corp. v. McCune*, 836 F.2d 153, 162-63 (3d Cir. 1987) (citing *Rosen v. Hotel and Restaurant Employees Union*, 637 F.2d 592, 597 (3d Cir.), *cert. denied*, 454 U.S. 898, 102 S.Ct 398, 70 L.Ed.2d 213 (1981)).

[116] D.I. 2482 (Feb. 15, 2022 Hr'g Tr.) at 13:22-14:1.

[117] *Id.* at 9:18-22; *see* Janish Proffer ¶ 7 ("On that May 30, 2017 call … the Debtors' general counsel, Javier Gonzalez, advised me "not to worry about these procedural steps as Maxus has assets and there would be

Notably, the Court questioned Arcina's counsel as to why Arcina, a sophisticated party, would rely on Gonzalez's word when he lacked the authority to unilaterally decide which parties would get paid (such payment may have been subject to avoidance),[118] and when he was being replaced by the Liquidating Trust in weeks to come (thereby undermining his actual and/or apparent authority to make such a promise).[119]

Although Arcina contends that it relied on the Debtors' representations that it would be retained as an Ordinary Course Professional, that this was its first experience dealing with a party in bankruptcy, such that it was not unreasonable for it to rely on Gonzalez's promise of payment without having to file a proof of claim after its OCP Disclosure Affidavit was withdrawn, and such that it was unaware that the Debtors' General Counsel would be replaced by the Liquidating Trust, the Court believes Arcina's arguments fall short.

First, Arcina never filed the OCP Disclosure Affidavit as required by this Court's OCP Order; Arcina's failure to file the OCP Disclosure Affidavit prevented the Debtors

---

plenty of funds distributed in the future to cover the contingency of [the] post-petition insurance recovery efforts for Maxus' benefit.").

[118] *See* 11 U.S.C. § 549(a) ("[T]he trustee may avoid a transfer of property of the estate – (1) that occurs after the commencement of the case; and … (B) that is not authorized under this title or by the court.").

[119] At oral argument, the Court's remarks were as follows:

> THE COURT: My point is you're implying that somehow the general counsel, who wasn't going to be in control in a couple of weeks, was promising and making some sort of binding promise on behalf of the estate that you would get paid or taken care of. And first of all, you can't do that because this is a bankruptcy and this was clearly a situation where he couldn't just decide to pay people, especially over the objection of creditors. Second, even if he might have had some authority, that authority disappeared weeks later.

D.I. 2482 (Feb. 15, 2022 Hr'g Tr.) at 10:17-11:1.

from paying Arcina pursuant to the explicit terms of the OCP Order.[120]  Although the

Debtors eventually and untimely filed the OCP Disclosure Affidavit, it is undisputed that

the Debtors *withdrew* the OCP Disclosure Affidavit prior to the expiration of the objection

deadline.  To that end, Arcina cannot show how it "relied" upon the Debtors' alleged

representations that it would be retained as an Ordinary Course Professional because

Notice Parties were given time to object to Arcina's retention.[121]  Otherwise stated,

Arcina's retention as an Ordinary Course Professional was never certain such that Arcina

could not have relied on the Debtors' representations concerning its retention.

Furthermore, Arcina never filed a professional claim by the September 12, 2017 deadline

as set forth in the Effective Date Notice, of which Arcina received service.

Second, as to Arcina's allegations that it reasonably relied on the representations

made by Gonzalez that it would be taken care of and that it was inexperienced in dealing

with a party in Chapter 11, both assertions lack support for several reasons.  For example,

the language set forth in the Administrative Claims Bar Date Order,[122] of which Arcina

concedes it received notice,[123] made clear that a proof of claim needed to be filed in order

---

[120] D.I. 147 ¶ 5 ("The Debtors shall not make any payments pursuant to the OCP Procedures to an Ordinary Course Professional who fails to file and serve such an Affidavit to the Notice Parties.").

[121] *Id.* ¶ 6 ("The Notice Parties shall have ten (10) days from the date of service of the Affidavit (the "Objection Period") to object to the retention of an Ordinary Course Professional.").

[122] D.I. 920.

[123] *See* D.I. 2482 (Feb. 15, 2022 Hr'g. Tr.) at 48:7-11:

> THE COURT: But if – even if they did not get proper notice of the rejection, they got proper notice of the general bar date and they got proper notice of the admin. bar date.
>
> MR. PHILLIPS: They did, Your Honor.

for payment to be possible.    Specifically, the Administrative Claims Bar Date Order states,

> [a]ny potential holder of an Administrative Expense Claim that fails to file an Administrative Expense Proof of Claim by the Administrative Expense Claims Bar Date shall not be permitted to receive payment from the Debtors' estates or participate in any distribution under the Plan or any other plan in the Chapter 11 Cases on account of such Administrative Expense Claim ….[124]

This language is unambiguous and clear such that even a party inexperienced with bankruptcy procedures could understand its implications, i.e., that the failure to file an administrative expense proof of claim would result in non-payment.

Also, as previously mentioned, the Prepetition Claims Bar Date Order states that, "[a]ny holder of a prepetition claim … that is required to file a Proof of Claim … but fails to do so on or before the applicable Bar Date, shall not be treated as a creditor with respect to such claim for the purposes of … distribution …."[125]  Consequently, *multiple* Orders issued by this Court required Arcina to file a proof of claim, whether that claim be a prepetition claim or an administrative expense claim.

Further, the language in the Court's OCP Order clearly set forth that "[t]he Debtors shall not make any payments pursuant to the OCP Procedures to an Ordinary Course Professional who fails to file and serve such an Affidavit …."[126]

---

[124] D.I. 920 ¶ 6.

[125] *See* D.I. 289 ¶ 3.

[126] *See* D.I. 147 ¶ 5

Therefore, Arcina has not shown how its reliance on Gonzalez's "promise" that it would be taken care of is reasonable in light of the language set forth in the Court's Administrative Claims Bar Date Order, the Prepetition Claims Bar Date Order, and the language prohibiting payment to an Ordinary Course Professional which does not file an OCP Disclosure Affidavit in the OCP Order.

What's more, Arcina informed the Debtors that it was in the process of "looking for bankruptcy counsel to object to the proposed change in [their] fee structure," on June 12, 2017, two months prior to the August 14, 2017 Supplemental Administrative Expense Claim Bar Date[127] and twelve days after the OCP Disclosure Affidavit was withdrawn. Accordingly, it appears as though Arcina was aware of the implications from the Debtors' withdrawal of the OCP Disclosure Affidavit and for the need to file a proof of claim, such that Arcina cannot establish grounds for why the Court should equitably estop the Liquidating Trust from arguing that Arcina was terminated, or never retained as, an Ordinary Course Professional.

For all the foregoing reasons, the Court finds that Arcina has failed to establish grounds for why the Court should equitably estop the Liquidating Trust from arguing that Arcina was terminated, or never retained, as an Ordinary Course Professional.

## C.    Informal Proof of Claim

Arcina submits that the Amended Disclosure Statement and/or the OCP Disclosure Affidavit meet the requirements for being timely informal proofs of claim, and

---

[127] *See* Email from Richard Janish (Aon Global Risk Consulting) to Jordan Wishnew (Morrison & Foerster LLP), dated June 12, 2017.

that its Motion should be deemed an amendment to an informal proof of claim.  For the

following reasons, the Court finds that Arcina has failed to establish the applicability of

the informal proof of claim doctrine.

The Third Circuit has recognized the concept of informal proofs of claim for over

one hundred years.[128]  "The informal proof of claim doctrine permits a bankruptcy court

to treat a late formal proof of claim as timely because it relates back to a document – the

informal proof of claim – filed before the bar date."[129]  In order to determine whether a

document qualifies as a valid informal proof of claim, the Third Circuit follows a five-

pronged approach:[130]

> A document constitutes an informal proof of claim if: (1) it is
> in writing; (2) it contains a demand by the creditor on the
> estate; (3) it expresses an intent to hold the debtor liable for
> the debt; (4) it is filed with the bankruptcy court; and (5) given
> the facts of the case, it would be equitable to treat the
> document as a proof of claim.[131]

When a document meets the first four requirements, bankruptcy courts are tasked with

determining "whether, given the particular surrounding facts of the case, it would be

equitable to treat the document as a proof of claim."[132]

---

[128] *See First Nat'l Bank of Woodbury v. West (In re Thompson)*, 227 F. 981, 983 (3d Cir. 1915) *superseded by In re American Classic Voyages Co.*, 405 F.3d 127 (3d Cir. 2005) (finding that bank's letter to receiver in bankruptcy did not meet requirements of informal proof of claim because letter failed to state a demand against the estate and failed to show the bank's intention to hold the estate liable).

[129] *In re Tuan*, 2013 U.S. Dist. LEXIS 152425 at *12 (D.N.J. Oct. 24, 2013) (internal citations omitted).

[130] *See In re American Classic Voyages Co.*, 405 F.3d 127, 131-132 (3d Cir. 2005).

[131] *In re Roper and Twardowsky, LLC*, 2017 WL 3311222 at *8 (Bankr. D.N.J. July 5, 2017).

[132] *American Classic Voyages Co.*, 405 F.3d at 131.

The fatal flaw with Arcina's position is that, in order for a document to qualify as an informal proof of claim, it must have been filed by the creditor itself.[133] "This is because the creditor must make a demand, not sit idly by."[134] Courts considering similar issues have ruled that "[m]ere inclusion in the Debtors' schedules does not constitute an informal proof of claim … [t]he same is true for the plan."[135] Moreover, in *In re Kinsak*,[136] the Bankruptcy Court was tasked with determining whether a disclosure statement, filed by the debtor, constituted an informal proof of claim. The Court found that "[a] disclosure statement may be deemed an informal proof of claim if filed by that creditor pursuant to the creditor's plan."[137] However, the Court "found no case where a disclosure statement filed by a debtor had met the requirements for a creditor's proof of claim."[138]

The undisputed facts here show that the Debtors, not Arcina nor Aon West, filed the Amended Disclosure Statement. Moreover, the Amended Disclosure Statement was not filed on Arcina's behalf,[139] as the Amended Disclosure Statement contains 149 pages, with only one-and-a-half pages dedicated to discussing Arcina's services.[140] The purpose

---

[133] *In re Dumain*, 492 B.R. 140, 149 (Bankr. S.D.N.Y. 2013).

[134] *Id*. (internal citations omitted).

[135] *Id*.

[136] 269 B.R. 49 (Bankr. N.D. Cal. 2001).

[137] *Id*. at 50.

[138] *Id*.

[139] *See id*. (alluding to the possibility that a document filed on behalf of a creditor may constitute an informal proof of claim).

[140] *See* D.I. 1232 pp. 21-22.

of a disclosure statement is not for a creditor to make demands on the estate, but, rather, for the debtor to provide parties with adequate information for purposes of voting on a debtor's confirmation plan.[141]  Further to this point, the Amended Disclosure Statement does not contain any demand by Arcina on the Estate.  Instead, it simply apprises the parties of the relationship between Arcina and Maxus, explains that Maxus is engaged in and exploring insurance litigation, and provides that Maxus agreed to pay Arcina a percentage of funds recovered from insurers.  Accordingly, Arcina has failed to establish that the Amended Disclosure Statement qualifies as a valid informal proof of claim.

Moving on to the OCP Disclosure Affidavit.  The Liquidating Trust raises an interesting argument surrounding the OCP Disclosure Affidavit's withdrawal.  The Liquidating Trust argues that a withdrawn document cannot serve as an informal proof of claim.[142]  The parties did not brief this issue but based on the Court's research, the Third Circuit has not addressed whether a withdrawn document can serve as an informal proof of claim.  The majority of jurisdictions apparently take the approach that a withdrawn document can serve as an informal proof of claim so long as the withdrawn document was, otherwise, an adequate informal proof of claim.[143]  However, not all courts follow this approach. The Bankruptcy Court for the Southern District of New York

---

[141] *See House Report No. 109-31, Pt. 1, 109th Cong., 1st Sess. 104 (2005).* ("Before creditors and stockholders may be solicited to vote on a chapter 11 plan, the plan proponent must file a disclosure statement that provides adequate information to holders of claims and interests so they can make a decision as to whether or not to vote in favor of the plan.").

[142] D.I. 2482 (Feb. 15, 2022 Hr'g Tr.) at 38:17-25.

[143] *See In re Integrity Directional Servs., LLC*, 613 B.R. 361, 370-71 (Bankr. W.D. Okla. 2020) (finding that stay motion alleged to constitute informal proof of claim was not an informal proof of claim and, thus, not reaching the issue of whether withdrawal of the stay motion was of any legal significance).

follows the opposite approach, holding that "[t]he minimum requirement for amendment is that there must be something timely filed with the bankruptcy court capable of being amended …."[144]

The Court is inclined to follow the approach taken by the Southern District of New York - that, in order to be amendable, there must be something to amend. Since the OCP Disclosure Affidavit was withdrawn, there is nothing for the Court to amend. As such, the withdrawn OCP Disclosure Affidavit cannot serve as the basis for a document alleged to be an informal proof of claim.

Even if that were not so, independently, the Court finds that Arcina has failed to show how the OCP Disclosure Affidavit can serve as a document alleged to be an informal proof of claim because it does not contain a demand on the Estate.[145] The OCP Disclosure Affidavit is a three-page document, the purpose of which is to inform interested parties of Arcina's proposed retention. The majority of the document affirms Arcina's disinterestedness and explains Arcina's scope of work. While the OCP Disclosure Affidavit does state that "the Firm will be paid by Debtors based on the success of its efforts," and that the Debtors agreed to pay Arcina 15% of recovered funds, this does not amount to a "demand" made by Arcina upon the Estate. Indeed, there is

---

[144] *In re Dana Corp.*, 2008 WL 2885901 at *4 (Bankr. S.D.N.Y. Jul. 23, 2008).

[145] As already discussed, the Debtors, not Aon West or Arcina, filed the OCP Disclosure Affidavit. Thus, the same flaw discussed with respect to the Amended Disclosure Statement exists, i.e., that it was not filed by Arcina. However, for purposes of analyzing whether Arcina has shown that the OCP Disclosure Affidavit satisfies the informal proof of claim doctrine, the Court will assume, without deciding, that a document filed *on behalf* of a creditor may establish entitlement to relief under the informal proof of claim doctrine.

not a scintilla of explanation as to what Arcina's claim is or what classification it is seeking.  At most, the primary purpose of the OCP Disclosure Affidavit is to explain Arcina's services and the fee arrangement between Arcina and the Debtors, as required by the OCP Order.[146]

There is similarly no explicit intention to hold the Estate liable for any claim Arcina might have had.  Instead, the OCP Disclosure Affidavit states that, "Debtors agree to pay the Firm 15% of the recovered funds for such services."  There is no language providing that Arcina overtly intends to hold the Estate liable for 15% of the funds ultimately recovered by it, only that the 15% contingency fee has been agreed to by the Debtors.

For all these reasons, the Court finds that Arcina has failed to show how either the Amended Disclosure Statement or the OCP Disclosure Affidavit are informal proofs of claim.[147]  Thus, Arcina's Motion cannot be deemed an amendment to an informal proof of claim.

## D.    Excusable Neglect

As an alternative ground for relief, Arcina requests that the Court extend the time within which it may file its proof of claim and deem the claim to be timely.  For the

---

[146] *See* D.I. 147 ¶¶ 4-5; 7. ("Each additional Ordinary Course Professional shall file and serve upon this Court and the Notice Parties an Affidavit … 45 days after the Supplemental Notice[,]" setting forth, among other things, "a description of the proposed scope of services to be provided … [and] the rate(s) proposed to be charged for the services").

[147] Arcina also argues that the Greenstone Agreement, phone calls, e-mails, and its attendance at in-person meetings may qualify as informal proofs of claim.  *See* D.I. 2482 (Feb. 15, 2022 Hr'g Tr.) at 19:25-20:6; *see also* D.I. 2413 ¶¶ 66-67.  Phone calls and in-person meetings are obviously not "documents," nor are they in writing or filed with the Court.  Similarly, neither the Greenstone Agreement nor any of the referred to e-mails were filed with the Court.  Thus, phone calls, in-person meetings, the Greenstone Agreement, and the e-mails Arcina refers to, cannot qualify as informal proofs of claim.

reasons set forth herein, the Court finds that Arcina has failed to establish a claim that its failure to file a timely proof of claim was the product of excusable neglect.

Fed. R. Bankr. P. 3003(c)(3) allows courts to extend the time for which a proof of claim must be filed "for cause shown." To that effect, Fed. R. Bankr. P. 9006 provides that,

> when an act is required or allowed to be done at or within a specified period by these rules … or by order of court, the court for cause shown may at any time in its discretion … on motion made after the expiration of the specified period[,] permit the act to be done where the failure to act was the result of excusable neglect.[148]

In *Pioneer Inv. Servs. Co. v. Brunswick Assoc. Ltd. P'ship*,[149] the Supreme Court of the United States elucidated the term "excusable neglect" as it is used in Fed. R. Bankr. P. 9006. At the outset, the Supreme Court explained that the determination of what constitutes excusable neglect "entails a correspondingly equitable inquiry."[150] An analysis into excusable neglect should take into account, "the danger of prejudice to the debtor, the length of delay and its potential impact on judicial proceedings, the reason for delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith."[151] The Third Circuit "requires consideration of the entire situation."[152]

---

[148] Fed. R. Bankr. P. 9006(b)(1).

[149] 507 U.S. 380 (1993).

[150] *Id*. at 389.

[151] *Id*. at 395 (internal citations omitted).

[152] *In re Cendant Corp. Prides Litig.*, 311 F.3d 298, 300 (3d Cir. 2002).

At the outset, the Court casts no aspersions as to Arcina's good faith.  It is evident that Arcina's failure to file a proof of claim was not somehow the product of bad faith but, rather, neglect.  That being said, a consideration of the entire situation under a "totality of the circumstances" review results in the conclusion that Arcina has not proven that its neglect was excusable.

The act of filing a proof of claim rested entirely within Arcina's control.  Arcina was provided with every opportunity to file a proof of claim and chose not to do so for over four years.  Arcina had notice of every Bar Date and the Orders establishing them, all of which explained that a creditor who must file a proof of claim, but fails to do so, will be barred from any potential recovery from the Estate.  Also, although the Estate recovered roughly $9.5 million between 2017 and 2018 as a result of Arcina's services,[153] Arcina did not choose to file a late proof of claim based on excusable neglect at that time.[154]

Moreover, the reason Arcina proffers for its delay is that it relied on Gonzalez's promise of payment and that it was inexperienced with bankruptcy procedures.  As already discussed, Arcina has not established how its reliance on Gonzalez's promise, that it would be taken care of without having to file a proof of claim, in the face of multiple Court Orders directing it to do just that, was reasonable or, in this case, excusable. Further, even assuming that Arcina was inexperienced with bankruptcy procedures, the

---

[153] *See supra* n.85.

[154] Although the Liquidating Trust reported this settlement in its *Post-Confirmation First Annual Report of Liquidating Trust* ("First Annual Report"), dated September 13, 2018, *see* D.I. 2096, Arcina is not listed as one of the parties which received service of the First Annual Report.

language set forth in all of the Court's Orders establishing Bar Dates was clear in relaying the consequences for failing to file a proof of claim.

Not only that, but Arcina informed the Debtors of its intention to retain counsel for the purposes of objecting to its fee structure in June of 2017, a short period of time after the OCP Disclosure Affidavit was withdrawn and prior to the August 14, 2017 Supplemental Administrative Expense Claim Bar Date.[155]  Ultimately, however, Arcina did not hire counsel and did not file a proof of claim despite appearing to understand the significance of doing so.

Accordingly, in consideration of the totality of the circumstances, the Court finds that Arcina has not established a plausible claim that its failure to file a timely proof of claim was the result of excusable neglect under the Supreme Court's *Pioneer* standard.

## CONCLUSION

Consistent with this Opinion, Arcina's *Motion for Allowance and Payment of Administrative Expense Claim* is denied. An order will be entered.

---

[155] *See supra* p. 30.