## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>MAXUS ENERGY CORPORATION, *et al.*,<br><br>      Debtors. | Chapter 11<br><br>Case No. 16-11501 (CTG)<br><br>Jointly Administered<br><br>**Related Docket No. 2635** |

## <u>MEMORANDUM OPINION</u>

PSE&G filed a timely proof of claim in these bankruptcy cases.[1]  It now seeks leave to amend that claim, years after the bar date has passed and after the Liquidating Trustee has achieved a settlement that has brought hundreds of millions of dollars of cash into the estate for distribution to creditors.  The motion is vigorously opposed by the Liquidating Trustee and Occidental Chemical, another creditor of the debtors.[2]

The parties clash sharply over the applicable legal standard governing a motion for leave to amend a proof of claim.  PSE&G insists that the motion is governed by Rule 15 of the Federal Rules of Civil Procedure and its "transaction or occurrence" test for determining whether an amendment to a pleading relates back to the original pleading.  The Liquidating Trustee, on the other hand, contends that in the context of a motion for leave to amend a proof of claim filed after a plan's effective date, the decision in *Exide Technologies* requires a showing a showing of

---

[1] Public Service Electric and Gas Company is referred to as "PSE&G".

[2] Joseph J. Farnan, Jr., the Liquidating Trustee for the Maxus Liquidating Trust is referred to as the "Liquidating Trustee."   Occidental Chemical Corporation is referred to as "Occidental Chemical."

"good cause" which, according to the Liquidating Trustee, means that there must be a "compelling reason."[3]

The dispute over the applicable legal standard, however, is ultimately a tempest in a teapot.  While it is true that cases articulate the standard in different ways, there really is no disagreement that once the bar date passes, a proof of claim typically cannot be amended to seek recovery of new or different amounts that were not fairly encompassed in the original (timely-filed) proof of claim.  Rather, such amendments are limited to fleshing out the details of – but not fundamentally changing – the timely-filed proof of claim.  Changing a proof of claim to add amounts that were outside the scope of the original proof of claim is treated as the filing of a new claim.  And to do that, one would be required to meet Bankruptcy Rule 9006(b)'s "excusable neglect" standard for a late-filed claim set out by the Supreme Court in *Pioneer*.[4]

While the broader procedural posture of the dispute now before the Court is complex, the parties have helpfully stipulated that the only question for the Court to decide is the relatively narrow question whether to grant PSE&G's motion for leave to amend the proof of claim that it had timely filed in the debtors' bankruptcy cases.[5]

---

[3] *In re Exide Techs.*, 601 B.R. 271 (Bankr. D. Del. 2019).

[4] *See Pioneer Inv. Servs. Co. v. Brunswick Assocs.*, 507 U.S. 380 (1993).

[5] D.I. 2679.  *See also* Claim No. 385.  PSE&G's motion [D.I. 2635] arose in the form of a "cross-motion" to the Liquidating Trustee's Fourteenth Omnibus Objection to Claims [D.I. 2629], which included an objection to PSE&G's claim asserted against debtors Maxus Energy Corporation and Tierra Solutions, Inc.  Maxus Energy Corporation and its various debtor affiliates are referred to as "Maxus."

Based on the Court's review of the proofs of claim at issue, and the evidence submitted during the August 21, 2023 evidentiary hearing, the Court reads PSE&G's original proof of claim to be limited (subject to one inapplicable exception) to recovering its share of the costs that were borne by the Lower Passaic River Study Area Cooperating Parties Group (to which the parties refer as the "CPG"), of which PSE&G was a member. The amended proof of claim, however, seeks to recover on account of costs borne by PSE&G directly that are unrelated to PSE&G's membership in the CPG.

The proposed amendment would thus expand the damages sought beyond the claim for which PSE&G's timely-filed proof of claim put the debtors and other parties on notice. It is true, as PSE&G argues, that there is some common denominator between its proofs of claim. The costs for which PSE&G seeks recovery are amounts relating to the cleanup of the Passaic River, following the discharge of dioxin, for which the debtors are alleged to be liable under various environmental laws. But that is insufficient for this purpose. At least in the context of amending a proof of claim after the bar date, that is not what is meant by a single "transaction or occurrence." Rather, just like the doctrine that otherwise governs motions for leave to amend proofs of claim, Civil Rule 15's "transaction or occurrence" test would not allow a claim to "relate back" to original filing if it seeks damages that were not fairly encompassed n the original claim. The motion for leave to amend is therefore denied.[6]

---

[6] This Memorandum Opinion sets out the Court's findings of fact and conclusions of law under Fed. R. Civ. P. 52, as made applicable to this contested matter under Fed. R. Bankr. P. 9014(c).

## Factual and Procedural Background

The debtors' bankruptcy cases, filed in June 2016, were primarily animated by their substantial environmental liabilities.  Judge Sontchi's exhaustive summary judgment opinion in the *Maxus Liquidating Trust v. YPF, S.A.* adversary proceeding describes the history of the Diamond Alkali Company, and how the debtors, Maxus and its affiliates, became legally responsible for the enormous costs borne by various parties in addressing the environmental harm caused by the discharge of dioxin and other chemicals into the Passaic River in connection with the manufacturing of Agent Orange.[7]

### 1.    The Proofs of Claim

In August 2016, the Court entered an order establishing a bar date of October 31, 2016.[8]  One of the creditors that filed a timely proof of claim was the CPG, which is described in the proof of claim it filed in the bankruptcy cases (in October 2016) as an "unincorporated association organized under the laws of the State of New Jersey."[9]  The proof of claim attaches a list of the CPG's members.  That group was comprised of 52 companies including PSE&G and a number of other major industrial companies.

According to the proof of claim, the CPG itself (as opposed to its members individually) was owed certain amounts, arising under agreements between the CPG

---

[7] 641 B.R. 467, 488-490 (Bankr. D. Del. 2022).

[8] D.I. 289.

[9] The proof of claim was admitted into evidence as Liquidating Trust Exs. 62, 64.  *See* Rider to Proof of Claim at 1 n.3.

and the debtors, various settlement agreements with the Environmental Protection Agency, and directly under state and federal environmental laws.[10]  The proof of claim sought to recover on account of certain amounts that had been liquidated (such as $14.4 million allegedly due under a contract) as well as other amounts that had not yet been liquidated (such as the debtors' share of $26.2 million in payments made by the CPG, as well as payments to be made in the future).

The CPG proof of claim, however, sought to recover against the debtors' estates only on account of liabilities that the debtors had to the CPG.  The proof of claim made clear that individual CPG members might file proofs of claim for their portion of the liability for which the CPG was seeking to recover.  "This Claim shall not prejudice the rights of any member of the CPG to file any requests for payment or proofs of claim, *including related to the Claim asserted herein.*"[11]

The CPG claim also made clear that its filing did not preclude any of its members from separately asserting whatever claims they might have that were independent of the member's involvement in the CPG.  "This Claim is in addition to, and does not supersede, any other claim filed by a member of the CPG against any Debtor or any of their affiliates."[12]

PSE&G timely filed its own proof of claim a few days later.[13]  The central question before this Court is whether that proof of claim seeks only to recover

---

[10] *Id.* at 1-3.

[11] *Id.* at 8 (emphasis added).

[12] *Id.*

[13] *See* Liquidating Trust Ex. 63.

PSE&G's portion of the costs included in the CPG proof of claim, or whether it *also* provided the debtors and other parties in interest with notice of its intent to recover PSE&G's own independent costs, unrelated to PSE&G's membership in the CPG. The Court accordingly addresses the specifics of the PSE&G proof of claim, in some detail, in Part II of this Memorandum Opinion.

### 2. The Plan

In May 2017, the Court confirmed the debtors' liquidating plan.[14]  The plan included a settlement with the CPG, reflected in Article I.A.38.  Under the settlement, the CPG received an allowed claim of approximately $14.4 million (subject to being reduced based on the amount in which the claims of certain CPG members were ultimately allowed).  The plan does not otherwise expressly address the effect of the settlement on the proofs of claim filed by other individual members of the CPG, such as PSE&G.

### 3. The YPF/Repsol Settlement

In June 2018, the liquidating trust formed under the plan brought an adversary proceeding against the prior owners of the debtors, asserting claims for veil piercing and fraudulent conveyance.  After nearly five years of litigation, in April 2023, the Liquidating Trustee sought court approval of a settlement, under which the defendants would pay approximately $570 million to the liquidating trust that would

---

[14] D.I. 1460.

be distributed to creditors under the plan.  In May 2023, this Court approved that settlement.[15]

### 4.    Objections to Claims

Thereafter, the Liquidating Trustee filed objections to various claims.  Those objections included the Fourteenth Omnibus Objection, which objects to PSE&G's claim (among others) as duplicative of the CPG claim,[16] and the Sixteenth Omnibus Objection, which objects to PSE&G's claim (among others) on the ground that parts of it remain contingent and are thus subject to disallowance under § 502(e) of the Bankruptcy Code.[17]

### 5.    PSE&G's Amended Proof of Claim

In response to the objection that its claim was duplicative of the CPG claim, PSE&G filed a cross-motion that sought leave to amend its original proof of claim .[18] The proposed amended proof of claim seeks approximately $38.7 million.  The proposed amendment then sets forth nine categories of expenses that form the basis for the claim.  The Liquidating Trustee opposed PSE&G's motion for leave to file the amended proof of claim.[19]

---

[15] D.I. 2607.

[16] D.I. 2629.

[17] D.I. 2651.

[18] D.I. 2635.

[19] D.I. 2654.

On August 14, 2023, the Court approved a stipulation, entered into among the parties, providing that the matters to be litigated at the August 21, 2023 hearing would be limited to:

> a. The PSEG Motion for Leave, the [Liquidating Trustee's] Objection, and the [joinder filed by Occidental Chemical], including the relation of PSEG's amended claim to the PSEG Original Claim and whether the Court should grant PSEG leave to file such amendment; and
>
> b. If the Motion for Leave is denied, the Court's interpretation of the language of the PSEG Original Claim and whether the language of the PSEG Original Claim limits PSEG's recovery to its portion of the CPG's recovery.[20]

As the Court understands this stipulation, the parties are not asking the Court to address the question whether the PSE&G claim is duplicative of the CPG claim or whether it should be disallowed under § 502(e), but instead have teed up only the question whether PSE&G should receive leave to file an amended proof of claim that seeks to assert amounts that are *outside* the scope of the CPG proof of claim, and if not, whether PSE&G's timely-filed, original proof of claim should be read to include amounts that are outside the CPG proof of claim.  For the reasons the Court will describe in Part I below, the Court believes that leave to file an amended proof of claim after the bar date should be granted only if the amounts sought in the amended proof of claim are fairly encompassed by the timely-filed proof of claim.  The two questions the parties have presented are therefore two sides of the same coin, in that the motion for leave to amend the proof of claim should be granted if and only if the original proof of claim seeks amounts beyond PSE&G's share of the CPG claim.

---

[20] D.I. 2679-1.

6.  **August 2023 Evidentiary Hearing**

The Court held an evidentiary hearing on August 21, 2023. The parties agreed to the admission of a number of exhibits. PSE&G also presented the live testimony of Louis Hahn, a PSE&G project manager, and Suzanne Klar, a former in-house PSE&G lawyer and the person who signed the original PSE&G claim.[21] PSE&G, the Liquidating Trust, and Occidental Chemical (in its capacity as a creditor entitled to appear and be heard under § 1109(b) of the Bankruptcy Code) had the opportunity to examine the witnesses and present argument.

## Jurisdiction

The district court has jurisdiction over this claims allowance dispute under 28 U.S.C. § 1334(b), either on the ground that it is a matter "arising under" § 502 of the Bankruptcy Code or "arising in" a bankruptcy case. That jurisdiction has been referred to this Court under 28 U.S.C. § 157(a) and the February 29, 2012 Standing Order of Reference issued by the U.S. District Court for the District of Delaware. Claims allowance disputes such as this one are core matters pursuant to 28 U.S.C. § 157(b)(2)(B).

---

[21] At the hearing, the Court took under advisement the liquidating trustee's objection to the admission of ¶¶ 5-6 of Klar's declaration. Those paragraphs offer Klar's construction of the original proof of claim and her view of how it relates to amounts sought in the amended proof of claim. While, as described below, *see* Part I.B.3, below, the Court believes that the ultimate touchstone is an *objective* reading of the operative proofs of claim, not the creditor's *subjective* view of the claim it believed it was asserting, the Court will nevertheless overrule the objection, but (for the reason described) ultimately places little if any weight on the disputed testimony.

## Analysis

This dispute ultimately boils down to a simple question:  does the amended proof of claim that PSE&G seeks leave to file assert a claim for damages that goes beyond the damages sought in the original proof of claim.  If it does, the motion for leave to file an amended proof of claim should be denied.  If it does not, then the motion should be granted – though in that case it is also unnecessary, as the original proof of claim would be sufficient to permit PSE&G to prove up, at a claims allowance hearing, the damages that are within the scope of the original proof of claim.  As set forth below, however, the Court concludes that the amended proof of claim does seek damages that are beyond those fairly encompassed by PSE&G's original proof of claim.  The motion for leave will therefore be denied.

**I.    Bankruptcy courts typically deny leave to amend proofs of claim, after the bar date, to seek recovery of amounts that were not encompassed within a timely-filed proof of claim.**

    **A.    Leave to amend a proof of claim should typically be granted, post-confirmation, only to supplement or clarify the original proof of claim, not to permit the creditor to seek to recover different or additional amounts.**

While the parties disagree about the standard governing a motion for leave to amend a proof of claim, that disagreement is more apparent than real.  The Third Circuit has explained that a "decision to allow amendments to a proof of claim is within the discretion of the Bankruptcy Court."[22]  And it quoted approvingly from a bankruptcy court's observation that, even after the bar date, "amendments to proofs of claim should be freely allowed where the purpose is to cure defects in a claim as

---

[22] *In re Ben Franklin Hotel Assocs.*, 186 F.3d 301, 309 (3d Cir. 1999).

originally filed, to describe a claim with greater particularity, or to plead new theories of recovery on facts set forth in the original claim."[23]   On this theory, at least after confirmation, amendments to proofs of claim cannot seek to recover damages that were outside the original proof of claim; they can only clarify or supplement the basis for seeking amounts within the original proof of claim.   Accordingly, on this view, the ultimate question on a motion for leave to amend a proof of claim is whether the damages sought in the proposed amendment are fairly "encompassed within the [original] proof of claim" filed before the bar date.[24]

Judge Carey's opinion in *Nortel* makes a similar point.[25]   The opinion explains that a "bar date is important to the administration of the case as it brings certainty to a debtor's case by enabling the debtor and its creditors to know the amount of claims which exist."[26]   Accordingly, while the bankruptcy court is afforded wide discretion in deciding whether to permit a proof of claim to be amended, it is "vital that the bankruptcy court make certain that the amendment is an amendment and not a new claim."[27]   To do otherwise, Judge Carey explained, would authorize an end run around   Bankruptcy Rule 9006(b)'s "excusable neglect" standard that the

---

[23] *Id.* (quoting *In re Ben Franklin Hotel Assocs.,* 1998 WL 94808, at *11 (Bankr. E.D. Pa. Oct. 31, 1997)).

[24] *Id.*

[25] *In re Nortel Networks Inc.*, 573 B.R. 522 (Bankr. D. Del. 2017).

[26] *Id.* at 527.

[27] *Id.*

Supreme Court described in *Pioneer* for the filing of a claim after the passage of the bar date.[28]

**B.    While PSE&G insists that the Rule 15 "same transaction or occurrence" test applies, even if that is right it does not alter the analysis.**

PSE&G takes issue with this analysis, arguing that the standard to be applied is the one set out in Civil Rule 15 for the amendment of a complaint. That rule states that leave to amend a complaint should be "freely give[n] … when justice so requires."[29] Such an amendment will "relate back" to the original filing (and therefore not be time barred so long as the original complaint was timely filed) when the amendment asserts a claim "that arose out of the conduct, transaction, or occurrence set out – or attempted to be set out – in the original pleading."[30]

**1.    The Third Circuit decision in *Trans World Airlines* arguably applies Rule 15 to motions for leave to amend proofs of claim.**

PSE&G points to the Third Circuit's decision in *In re Trans World Airlines, Inc.* as authority for the proposition that Rule 15 governs amendments to proofs of

---

[28] *Id.* (citing *Pioneer Inv. Servs. Co. v. Brunswick Assocs. L.P.*, 507 U.S. 380 (1993)). *See also In re G-I Holdings, Inc.,* 514 B.R. 720, 760 (Bankr. D.N.J. 2014) (applying a standard of "good cause" after the plan has been confirmed). As the court observed in *Nortel*, after the passage of the bar date, the *Pioneer* "excusable neglect" standard would apply to any effort to file a new and different proof of claim. *Exide* and other cases focus on the high bar that applies after the plan is confirmed or has become effective. *See Exide*, 601 N.R. at 293-294; *In re Nextmedia Group, Inc.*, No. 09-14463 (PJW), 2011 WL 4711997 (Bankr. D. Del. Oct. 6, 2011) (suggesting the need for "good cause" or "compelling circumstances" necessary after the effective date). That is certainly a sensible view, as the "excusable neglect" standard includes a consideration of the prejudice a late filing may cause other parties, *Pioneer,* 507 U.S. at 397, and the case for prejudice (as a result of reliance on the claims register) will typically be stronger after the plan is confirmed.

[29] Fed. R. Civ. P. 15(a)(2).

[30] Fed. R. Civ. P. 15(c)(1)(B).

claim in bankruptcy.[31]  The circumstances of that case were complicated.  The creditor there (an aircraft lessor) filed a timely motion seeking the allowance of an administrative claim but did not, by the bar date, file a proof of claim seeking the allowance of a prepetition unsecured claim.  The bankruptcy court denied the motion to have the claim treated as an administrative expense, finding that the claim was instead a valid prepetition unsecured claim.  In response to the debtor's argument that the prepetition claim should be disallowed on the ground that a proof of claim was not timely filed, the bankruptcy court treated the motion for an allowed administrative claim as sufficient to put the debtor on notice of the (alternative) argument that the creditor held an allowed prepetition unsecured claim.

On appeal, the Third Circuit affirmed the bankruptcy court's decision.  The Third Circuit noted that the debtor "does not argue that it was prejudiced by the bankruptcy court's allowance of [the creditor's] unsecured claim."[32]  Rather, the debtor made only the technical argument that "because no proper unsecured claim had been filed before the bar date, any amendment of the original claim or allowance of the unsecured claim would be improper."[33]  The Third Circuit rejected that argument, holding that the creditor had done enough to "put TWA on notice that an unsecured claim had been made against it and could be pursued."[34]

---

[31] 145 F.3d 124 (3d Cir. 1998).

[32] *Id.* at 141.

[33] *Id.*

[34] *Id.*

13

Along the way, the Third Circuit observed that "Bankruptcy Rule 7015 provides that amendments to claims shall be governed by Rule 15 of the Federal Rules of Civil Procedure … which commits the decision to grant or deny leave to amend to the trial court's sound discretion."[35]  A case could be made that this sentence, to the extent it suggests that Rule 15 applies literally, rather than by analogy, to the claims allowance process is incorrect.

A dispute in bankruptcy court is either an adversary proceeding governed by Bankruptcy Rule 7001 or a contested matter governed by Bankruptcy Rule 9014. Claims allowance disputes are contested matters – initiated by the filing of an objection to a proof of claim – rather than an adversary proceeding (which requires a summons and complaint, like ordinary civil litigation).  Bankruptcy Rule 9014(c) identifies certain of the Part VII rules (that govern adversary proceedings) that are applicable to contested matters and does not include Rule 7015 (which incorporates Civil Rule 15) among those rules.  Accordingly, because claims allowance disputes are contested matters, there is nothing in the rules themselves that would make Civil Rule 15 applicable to a motion for leave to amend a proof of claim.

That said, the point is of surpassingly little consequence.  As *Colliers* observes, in deciding whether to permit an amendment to a proof of claim, "[c]ourts have in some cases drawn analogy to Rule 15 of the Federal Rules of Civil Procedure, under which an amendment is liberally allowed where there is no evidence of undue

---

[35] *Id.*

prejudice, bad faith, or other improper motive."[36]  Against that backdrop, the Third Circuit decision in *TWA* may certainly be read to apply Rule 15 to claims allowance disputes, consistent with the Bankruptcy Rules, only by analogy rather than literally.

> **2.** **Whether Rule 15 applies literally or by analogy makes no difference, since its path leads to the same destination.**

In any event, whether Rule 15 applies as a literal matter or only as a useful analogy makes no difference here, where application of the Rule 15 standard leads to the same result.  PSE&G points to the language of Rule 15(c)(1)(B) and argues that because its proposed amended proof of claim arises out of the same "transaction or occurrence" as its original proof of claim – costs that were borne responding to the environmental contamination of the Passaic River – its amended proof of claim should relate back to its original proof of claim.

That is a misreading of what is meant by a "transaction or occurrence." Rather, in this context Rule 15 is intended to do precisely the same work as the standard (described above in Part I.A) that has developed for granting leave to amend proofs of claim in bankruptcy.  The standard typically applied when considering a motion for leave to amend a proof of claim after the passage of the bar date is to ask whether the proposed amended proof of claim seeks to recover damages that are fairly encompassed within the original proof of claim.  Additional facts can be added.  To the extent a claim that was otherwise contingent or unliquidated has become concrete, it is appropriate to update the proof of claim to provide that additional

---

[36] 4 *Collier on Bankruptcy* ¶ 502.03[10][d] (16th ed. 2023).

factual detail.  If the claimant has a new legal theory under which it seeks to recover for the same injury or loss, that can be set forth in an amended proof of claim.  But appreciating that the debtor and other parties-in-interest will have relied on the claims register to understand the total claims universe, what a creditor cannot do at this point is amend a proof of claim in a way that seeks to recover damages that were not fairly encompassed in its original proof of claim.

Properly understood, the "transaction or occurrence" test of Rule 15 is doing exactly the same thing.  Rule 15(c)(1)(B) "enunciates the basic principle that an amendment alleging a claim or defense that arises out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading will relate back to the original pleading."[37]  If however, the "plaintiff attempts to allege an entirely different transaction by amendment, Rule 15(c)(1)(B) will not authorize relation back."[38]  Accordingly, "amendments alleging the separate publication of a libelous statement, the breach of an independent contract, the infringement of a different patent, or even a separate violation of the same statute may be subject to the defense of statute of limitations because of a failure to meet the transaction standard."[39]  Otherwise put, courts "inquire into whether the opposing party has been put on notice regarding the claim or defense raised by the amended pleading."[40]  If "the alteration of the original pleading is so substantial that it cannot be said that

---

[37] 6A *Federal Practice and Procedure* § 1497 (3d ed. 2023)

[38] *Id.*

[39] *Id.*

[40] *Id.*

defendant was given adequate notice of the conduct, transaction, or occurrence that forms the basis of the new claim or defense, then the amendment will not relate back and will be time barred if the limitations period has expired."[41]

> ### 3. The standard for determining whether the amounts sought were fairly encompassed within an original proof of claim is based on an objective reading, not the creditor's subjective understanding.

Because courts look to whether the original proof of claim fairly put the debtor and other parties in interest on notice of the claim as asserted in the amended claim, the standard for granting leave to amend a proof of claim turns on an objective reading of the original proof of claim. The creditor's subjective intent to assert a broad claim is beside the point if the proof of claim, read objectively and fairly, is a narrower one.

As set forth below (in Part II), a fair and objective reading of PSE&G's original proof of claim seeks to recover (a) for PSE&G's share of the costs that relate to the Newark Bay site incurred by CPG and stated in CPG's proof of claim; and (b) independent costs directly incurred by PSE&G that relate to the Kearny site. In the language of Rule 15, then, the "transaction or occurrence" that forms the basis of PSE&G's original proof of claim are (a) the CPG's incurrence of expenses related to the Newark Bay site, and (b) PSE&G's incurrence of expenses related to the Kearny site. Accordingly, viewing the problem through the lens of Rule 15 does not change

---

[41] *Id.*

the fundamental nature of the inquiry, which asks whether the original proof of claim fairly encompasses the damages sought in the amended proof of claim.

## II.    PSE&G's amended proof of claim seeks recoveries of amounts that were not fairly encompassed in its original proof of claim.

The parties do not dispute that PSE&G's amended proof of claim seeks the recovery of costs that PSE&G allegedly incurred in connection with addressing the environmental damage to the Passaic River in Newark that were unrelated to its participation as a member of the CPG.  The Court concludes, however, based on its review, that the original PSE&G claim was limited to costs that (except for costs related to the Kearny site, which are not included in the amended proof of claim) were encompassed within the CPG proof of claim.

The original PSE&G proof of claim contains seven paragraphs.  A paragraph-by-paragraph examination makes clear that it does not include costs related to the cleanup of the Newark Bay site that are separate from those incurred by the CPG.

The first two paragraphs read as follows:

1. This proof of claim (the "Claim") is submitted by Public Service Electric and Gas Company ("Creditor") for claims against Maxus Energy Corporation ("Maxus") and Tierra Solutions, Inc. ("Tierra" and together with Maxus, the "Debtors").

2. Creditor is a member of the Lower Passaic River Study Area ("LPRSA") Cooperating Parties Group (hereinafter, the "CPG").    Creditor hereby incorporates by reference the proof of claim filed by the CPG and all the reservations contained therein (the "CPG Claim"),[2] including the reservation of the right to amend, increase, and/or supplement this Claim at any time and in any manner.[3]

And the footnotes provide:

[1]    The debtors and accompanying docket numbers are as follows: Maxus Energy Corporation   (16-11501-CSS),   Tierra   Solutions,   Inc.   (16-11502-CSS),   Maxus International Energy Company (16-11503-CSS), Maxus (U.S.) Exploration Company (16-11504-CSS), and Gateway Coal Company (16-11505-CSS).

[2]    Capitalized terms not otherwise defined herein have the meanings specified in the CPG Claim.

[3]    Without limiting the generality of the foregoing, Creditor understands that the Debtors may not have yet provided full public disclosure of their potential environmental liabilites. *See Occidental Chemical Corporation's Motion for Leave Pursuant to Federal Rule of Bankruptcy Procedures 2004 to Conduct Examination of Debtors* [Docket No. 395]. Additional disclosures may require amendment of this Claim.

In substance, these paragraphs do no more than to incorporate the CPG proof of claim and to reserve PSE&G's right to amend its proof of claim within these limits. Nothing in these paragraphs asserts a separate claim for costs independently incurred by PSE&G separate from its membership in CPG.

Paragraph 3 reads as follows:

3. As set forth in the CPG Claim, the Debtors are liable for liquidated and
   unliquidated amounts related to the so-called Newark Bay Complex.

PSE&G focuses on the language after the introductory clause and argues that this
language, "the Debtors are liable for liquidated and unliquidated amounts related to
the so-called Newark Bay Complex," means that they can now assert any claim for
damages that relates to the Newark Bay Complex.  In ordinary (as well as legal)
usage, however, the language "as set forth in the CPG Claim" is language of
limitation, expressly limiting the claim asserted thereafter.  Accordingly, nothing in
paragraph 3 asserts a claim for PSE&G's independent expenditures (meaning those
costs unrelated to what is sought in the CPG claim) related to the Newark Bay
Complex.

Paragraph 4 reads as follows:

4. The Debtors are liable to Creditor for:

   a. an unliquidated portion of the liquidated past costs specified in paragraph
      5 of the CPG Claim;

   b. an unliquidated portion of the unliquidated past costs specified in
      paragraph 6 of the CPG Claim; and

   c. an unliquidated portion of the unliquidated future costs specified in
      paragraph 7 of the CPG Claim; and

   d. the additional claims specified in paragraph 6 and 7 below.

Paragraphs 4(a), 4(b), and 4(c) all assert claims for a particular "portion" of the costs described in specific paragraphs of the CPG proof of claim. Nothing in those paragraphs seeks an amount that is *in addition to* what is asserted in the CPG proof of claim. Accordingly, the only provision that seeks to recover amounts *outside* of the CPG proof of claim is paragraph 4(d), which refers to paragraphs 6 and 7 (and will thus be addressed below).

Paragraph 5 reads as follows:

> 5. The Debtors' liability to Creditor in paragraph 4 herein arises by contract under the Organization Agreement or Letter Agreements, under the Existing EPA Settlement Agreements, by federal or state statute, and/or under common law. It includes, *inter alia*, cost recovery claims and/or contribution claims pursuant to the RI/FS Agreement, Newark Bay Chemical and Physical Water Column monitoring, RM 10.9 Agreement, and Sections 107(a), 113(f)(1), and/or 113(f)(3)(B) of CERCLA and N.J.S.A. 58:10-23.11f(a)(2), for the Debtors' share of past and future costs made pursuant thereto and for any costs related to any interim, early or final remedy and/or natural resource damages for or otherwise relating to the LPRSA.

This paragraph simply sets forth the *basis* for the claims that are set forth in Paragraph 4 and does not seek any damages that are separate from those described in that paragraph.

Paragraph 6 reads as follows:

6.  In addition to Debtors' liability to Creditor related to the LPRSA, the Debtors are liable to Creditor for an unliquidated portion of any liquidated and unliquidated past and future costs related to the following other site (the "<u>Other Site</u>"):

   a.  Diamond Kearny Site, New Jersey[4]

This paragraph *does* expressly seek the recovery of amounts that the debtors owed to PSE&G independent of PSE&G's involvement in the CPG. Indeed, Paragraph 6 makes clear that "in addition to Debtors' liability" to PSE&G that arises out of PSE&G's membership in the CPG, PSE&G is also seeking to recover on account of "Debtor's liability to Creditor" for costs related to one particular site – the one in Kearny, New Jersey.[42]

By virtue of this language, it would have been wholly appropriate for PSE&G to amend its proof of claim to further detail or itemize costs that it incurred in connection with the Kearny site, including those that may have been unliquidated as of the time it filed its original proof of claim. Counsel for PSE&G acknowledged, however, during the August 21, 2023 hearing, that none of the damages sought in the amended proof of claim relate to the Kearny site. If anything, the express inclusion of a direct and independent PSE&G claim relating to the Kearny site reinforces the conclusion that the original proof of claim does not otherwise seek to recover damages

---

[42] Further detail relating to that site is set forth in footnote 4 of the proof of claim but does not bear on the question now before this Court.

for any other site (other than to the extent they are set forth in the CPG proof of claim).

Paragraph 7 reads as follows:

> 7. The Debtors' liability to Creditor in paragraph 6 herein arises by federal or state statute, and/or under common law.  It includes, *inter alia*, any past and future costs related to the investigation and/or remediation of the Other Site and any other costs related to the same.

As with Paragraph 5, this paragraph simply sets forth the legal basis for the claim described in the prior paragraph and does not set forth any independent claim of damages.

Based on this reading, the Court concludes that a fair and objective reading of PSE&G's original proof of claim does not encompass a claim to recover costs unrelated to PSE&G's membership in the CPG, aside from costs that relate to the Kearny site. Because the amended proof of claim does not seek costs related to the Kearny site, the original proof of claim would not have put the debtors or other parties in interest fairly on notice that PSE&G sought to recover on the various claims described in the proposed amended proof of claim that are independent of the CPG claim.  The motion for leave to amend is therefore denied.

## III.    Per the parties' stipulation, the Court does not address the issues of "duplication" or "contingency."

The Liquidating Trustee's fourteenth and sixteenth omnibus claims objections also sought the disallowance of PSE&G's claim on the ground that it is duplicative of

the CPG claim and on the ground that it seeks to recover on contingent claims on which PSE&G is co-liable with the debtors, and thus subject to disallowance under § 502(e).  In accordance with the stipulation of the parties approved by this Court, the Court will not address those issues at this time.

## Conclusion

For the foregoing reasons, PSE&G's cross-motion for leave to file an amended proof of claim will be denied.  The parties are directed to settle an appropriate order.

Dated: August 28, 2023

_____
CRAIG T. GOLDBLATT
UNITED STATES BANKRUPTCY JUDGE